UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

14-1380

|  |  |  |
|---|---|---|
|  | ) |  |
| MARLON WALKER | ) | Appeal from the |
| Plaintiff-Appellant | ) | U. S. District Court |
|  | ) | District of Colorado |
| v. | ) | Case No. 13-cv-2142 |
|  | ) | Matsch, D.J. |
| SUSAN WHITE, et al | ) |  |
| Defendants-Appellees. | ) |  |

_____

**APPELLANT'S OPENING BRIEF**
_____

Alison Ruttenberg
PO Box 19857
Boulder, CO  80308
(720) 317-3834
Fax:  (888) 573-3153
Ruttenberg@me.com

**Attorney for the Applicant-Appellant**

**THE APPLICANT-APPELLANT WAIVES ORAL ARGUMENT**

**Pursuant to 10th Cir.R. 28.2, the Plaintiff states that this appeal is related to Case Number 14-1248, Gross v. Samudio *et al*.  The two cases involve some of the same Defendants and the same issue.**

## TABLE OF CONTENTS

Table of cases, statutes and other authority cited                3

Statement of subject and Appellate Jurisdiction                4

Certificate of Compliance                4

Statement of issue presented for review                4

Statement of the case and facts                5

Summary of the Argument                17

Argument                17

Conclusion                40

Attachment A:  August 18, 2014 Order entered by Judge Matsch

# TABLE OF CASES, STATUTES AND OTHER AUTHORITY CITED

*Alvarado v. KOB-TV, LLC*, 493 F.3d 1210 (10th Cir. 2007)………………..  17

*Anderson v. Creighton,* 483 U.S. 635 (1987)…………………………………  39

*Basch v. Sumiec,* 139 F.Supp.2d 1029 (E.D. Wisc. 2001)…………………..  23, 34

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………..  17

*Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984)……………………  36

*Breed v. Jones*, 421 U.S. 519 (1975)…………………………………………  32-33

*Butler v. Compton*, 482 F.3d 1277 (10th Cir. 2007)…………………………  22, 27

*Drollinger v. Milligan,* 552 F.2d 1220 (7th Cir. 1977)………………………  36

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003)…………………  17

*Griffin v. Strong*, 983 F.2d 1544 (10th Cir. 1993)…………………………..  35-37

*Heck v. Humphrey,* 512 U.S. 477 (1994)…………………………….21, 23, 27-28

*Hope v. Pelzer,* 536 U.S. 730 (2002)…………………………………………  39

*McKune v. Lile*, 536 U.S. 24 (2002)…………………………………………  29

*Miranda v. Arizona,* 384 U.S. 486 (1966)……………………………………  29

*Moore v. City of East Cleveland,* 431 U.S. 494 (1977)………………………  35

*NAACA v. Alabama,* 357 U.S. 449 (1958)……………………………………  34

*Nonnette v. Small,* 316 F.3d 872, 874 (9th Cir. 2002)………………………  28

*Overton v. Bazzetta*, 539 U.S. 126 (2003)……………………………………34

*People v Macrander,* 756 P.2d 356, 359 (1988)……………………………   12, 17

*Powers v. Hamilton County*, 501 F.3d 592, 598 (6th Cir. 2007)……………   28

*Rivera v. Marcus,* 696 F.2d 1016 (2d Cir. 1982)………………………………   36

*Robbins v. Dep't of Human Servs.*, 519 F.3d 1242, (10th Cir. 2008)………..   17

*Russ v. Watts,* 414 F.3d 783 (7th Cir. 2005)…………………………………… 36

*Santobello v. New York*, 404 U.S. 257 (1979)…………………………………   12, 16

*Saucier v. Katz,* 533 U.S. 194 (2001)…………………………………………   39

*Smith v. Organization of Foster Families,* 431 U.S. 816 (1977)……………   35

*Trujillo v. County Commissioners,* 768 F.2d 1186 (10th Cir. 1985)…………  35-37

*Turner v. Hickman*, 342 F. Supp. 2d 887 (E.D. Cal. 2004)…………………   23, 34

*Warner v. Orange County Probation Dept.,*173 F.3d 120 (2d Cir. 1999)…… 23, 34

*Wilson v. Johnson*, 535 F.3d 262, 264 (4th Cir. 2008)…………………………  27

*Wilson v. Taylor,* 733 F.2d 1539 (11th Cir. 1984)……………………………  36


42 USC 1983………………………………………………………………21-24, 27

CRS 16-22-103(2)(d)…………………………………………………………   18

CRS 17-2-103……………………………………………………………………   24

CRS 18-1.3-401………………………………………………………………..   22

Colorado Rule Criminal Procedure Rule 35…………………………………  24-27

**CERTIFICATE OF COMPLIANCE WITH RULE  32(a)(7)(B).**

Appellant's counsel certifies, that this brief complies with Rule 32(a)(7)(B) and this brief contains no more than 14,000 words.  The brief contains 8,849 words, including footnotes, but excluding the table of contents, table of citations, statement with respect to oral argument and certificate of service.

**STATEMENT OF SUBJECT AND APPELLATE JURISDICTION**

This is an appeal of a final order of the District Court granting judgment to the Defendants.  (Appendix at 105). This Court has jurisdiction pursuant to 28 U.S.C. 2253, by virtue of a Notice of Appeal timely filed by the Appellant pursuant to Rule 4(a), Fed. R. App. P. on September 17, 2014. (Appendix at 107).

**STATEMENT OF THE ISSUE PRESENTED FOR REVIEW**

The District Court erred in granting the state government Defendants' motion to dismiss.

**STATEMENT OF THE CASE AND PERTINENT FACTS**

As set forth in the Amended Civil Rights Complaint (Appendix at 9), the facts which must be taken as true when construing the Defendants' motion to dismiss are as follows:  Just like Mr. Dale Gross in the related cases of Gross v. Madrid, 10-CV-1581-RPM and Gross v. Samudio, 11-CV-2594-RPM, Mr. Walker was charged with various felonies involving a sexual basis, but only convicted of charges having no factual basis.  Mr. Walker was charged in Denver County

District Court, (in case number 2005CR3380) to second degree burglary, assault in the second degree, criminal attempt to commit sexual assault and unlawful sexual contact, offenses that allegedly occurred on May 13, 2005 at about 4:00 a.m. at 3801 Quebec Room 1237.  The alleged victim was C.D., who lied to the police and made various false and incredible allegations against the Plaintiff that were contradicted by the other witnesses.  After the prosecutor determined that C.D.'s allegations regarding sexual misconduct were false, the prosecution and Mr. Walker entered into a plea agree for second degree assault and stipulated that there was no factual basis for any type of sexual offense.  Amended Complaint paragraphs 15-16; Appendix at 15-16.

As a result, Mr. Walker is not and cannot be a "sex offender" pursuant to the definition of "sex offender" set forth in the Sex Offender Management Board ("SOMB") Guidelines (See Appendix at 93-4) and CRS 16-11.7-102(1) and (2)(a) because he has not been convicted of a sex offense listed in CRS 16-11.7-102(3). In order to be a sex offender pursuant to the definitions in the SOMB Guidelines or pursuant to the definitions in Article 11.7 of Title 16, Mr. Walker either has to have been convicted of one of the offenses listed in CRS 16-11.7-102(3) *or* be convicted of any criminal offense and have a prior conviction of one of the offenses listed in CRS 16-11.7-102(3) *or* of a criminal offense from another jurisdiction that would be one of the offenses listed in CRS 16-11.7-102(3) if it had

been convicted in Colorado.  See, CRS 16-11.7-102(1) and (2)(a).  Or, pursuant to the SOMB guidelines, Mr. Walker would have had to have been convicted (on or after July 1, 2000), of any criminal offense with the underlying factual basis being a sex offense.  See SOMB Definition of "sex offender" paragraph (2); Exhibit 1 hereto at page 4.  None of those definitions apply since the prosecutor stipulated to "no factual basis."

Mr. Walker was sentenced to the Colorado DOC, followed by a mandatory term of parole.  In the Denver District Court's November 9, 2005 Order accepting the plea, there is no finding that Mr. Walker is a sex offender, or that he has to be evaluated for treatment as a sex offender.  The state court sentencing judge stated on the record, words to the effect:  "Defendant is urged to undergo all treatment programs offered at the DOC."  The Judge was just making a general remark, similar to what Judges almost always say, encouraging Mr. Walker to avail himself of any appropriate program at the DOC; however, the Judge was, in no way, referring to sex offender treatment.  Sex offender treatment was never an issue with respect to Mr. Walker's sentence, and the sentencing order states that there was no factual basis for any sexual offense.  Amended Complaint at 17; Appendix at 16.

However, the DOC designated Mr. Walker as a sex offender in February 2006.  This designation was made in violation of DOC Regulation 700-19 Part IV

(B). According to this regulation, since Mr. Walker had a judicial determination of "no sexual factual basis," his mandated classification was S4-X for "excluded." Pursuant to DOC Regulation 700-19 Part IV (A) and (B), an offender with the "X" classification means that treatment will not be recommended unless there are facts from a separate allegation that may warrant a change in the sexual violence needs classification. Regulation 700-19 Part IV (B), an offender with the "T" classification cannot be recommended for sex offense specific treatment without the due process afforded in AR 750-02. However, the "due process" procedures set forth in AR 750-02 is not what the Colorado General Assembly mandated in CRS 16-22-103(2)(d)(III). Mr. Walker was never given a due process hearing as required by CRS 16-22-103(2)(d)(III) and never waived his right to that hearing. Mr. Walker was not given the due process set forth in AR 750-02 either. On June 1, 2007, Mr. Walker's classification was changed to S4 and he was provided written notice of the requirement to undergo sexual offense specific treatment. Amended Complaint at paragraph 18; Appendix at 17.

The DOC also claims that Mr. Walker engaged in conduct on or about November 4, 2009 that would justify designating him as an S3 sex offender. Mr. Walker never admitted to intentionally engaging in this conduct. Additionally, Mr. Walker was never adjudicated an S3 sex offender pursuant to DOC Regulation AR 700-19 Part IV (A) for any conduct Mr. Walker was alleged to have engaged in

while in the DOC.  Mr. Walker was never given the due process hearing required by CRS 16-22-103(2)(d)(III) for adjudication as an S3 sex offender.  Amended Complaint at paragraph 19.  Therefore, the only sex offender classification that was given to the Defendant by the DOC was the S4 classification; the alleged November 4, 2009 incident is a red herring, and not relevant to any issue in this lawsuit since the DOC failed to actually classify the Defendant as an S3 "sex offender."

Mr. Walker does not and cannot challenge the S4 "sex offender" classification in this lawsuit.  (He also would not be able to challenge any S3 classification for the same reasons; but that is irrelevant because the DOC never actually classified him as an S3 "sex offender.")  Just like in Mr. Gross's case, the DOC's erroneous classification is *not* an issue that can be adjudicated in the case at bar since the Complaint in the case at bar was filed more than two years after the erroneous S4 classification in February 2006.  As in Mr. Gross's case, the Attorney General seeks to rewrite the Complaint, in order to deflect the actual issues.  What *is at issue* in the case at bar is the following:  The DOC, parole board, and the SOMB all have this one-sized fits all policy that every offender who has been designated as a "sex offender;" whether pursuant to the statutory definitions or contrary, whether or not given the due process required by CRS 16-22-103(2)(d), whether the underlying alleged offense was decades ago or recently, whether the

offender was acquitted of the underlying sexual offenses or convicted, whether the judge and prosecutor agreed there was no factual basis to the charges of a sexual offense or not, regardless of whether there were multiple allegations of sexual misconduct or not, regardless of whether there was any allegation of pedophilia, or regardless of the identity and age of the alleged "victim," all sex offenders in Colorado all treated alike:  They are all treated as if they are all serial pedophiles who pose a grave danger to every child in the community, including their own familial relations.  This is set forth in SOMB Standard 5.620 (C), (D), (E) and (G); Appendix at 99-100.

The fact that Mr. Walker was designated as an S4 "sex offender" is of course a key fact in this case, but this lawsuit is not about whether it was constitutional to designate Mr. Walker as a "sex offender" in contravention of the state statutory definition, the SOMB definition and the express terms of the plea bargain.  This lawsuit is also not about the constitutionality of depriving Mr. Walker of his good time credits because he refused to participate in sex offense specific treatment in the DOC  (Amended Complaint Paragraph at 20; Appendix at 18).  Instead, this lawsuit is about the constitutionality of revoking an offender's parole for violating terms and conditions of parole that are unconstitutional.   It is unconstitutional, and a violation of the 5th and 14th Amendments to require someone who does not meet the statutory and SOMB definition of "sex offender" to engage in sex offender

"treatment" when that "treatment" necessarily requires the offender to admit to, "accept responsibility" and pass a polygraph examination for fabricated allegations that never occurred.

Consistent with the "one sized fits all" policy, when Mr. Walker was released on mandatory parole on January 12, 2011, he was directed by Defendant parole board member Becky Lucero and Defendant parole officer Struzeski to undergo sex offender treatment as a term and condition of parole. Mr. Walker was more than willing to undergo treatment, but the only treatment that was is available in the Denver metro area (or anywhere else in Colorado) is the one sized fits all treatment that all sex offenders are serial pedophiles, who pose an extraordinary risk to the public unless they admit to, accept responsibility for and pass a polygraph examination of the purported victim's initial allegations -- no matter how little credibility that purported victim turns out to have.

The treatment provider, SORS, terminated Mr. Walker from treatment for failing to admit to, accept responsibility for and pass a polygraph examination of C.D.'s false allegations of sexual abuse. Dr. Lee, the Clinical Director of SORS wrote the August 10, 2011 termination letter to Defendant Struzeski. It is obvious that this letter is just a fill in the blank template, which not specific to Mr. Walker. There was at least one place in the letter where Dr. Lee forgot to refer to Mr. Walker and just referred to the Mr. xx on the termination template letter.

Defendant Struzeski did not even bother to question Dr. Lee regarding this, and in accordance with Samudio's[1] policy of complete deference to the treatment provider, Struzeski just rubber stamped the provider's decision to terminate Mr. Walker from treatment.

On August 10, 2011, Defendant parole officer Madrid ordered Mr. Walker to be arrested for violating the terms and conditions of his parole as a result of being terminated from sex offender treatment. No other reason was cited for the deprivation of Mr. Walker's liberty. Amended Complaint at 23; Appendix at 20-21. It was unconstitutional to arrest Mr. Walker (and thus implicating his Fourteenth Amendment rights to be free from deprivation of liberty without due process of law) for allegedly violating an unconstitutional term and condition of parole. Contrary to the Defendants' assertions, this claim is not barred by the statute of limitations because this case was filed on Sunday August 11, 2013. Since August 10, 2013 was a Saturday, this claim for relief is not barred by the two year statute of limitations.

However, this was not the only unconstitutional action committed by the Defendants. After his arrest, Mr. Walker's parole was reinstated, and he was ordered to start over again with another treatment provider who imposed the same

---

[1] Samudio is the supervisor of the other parole officer Defendants and has promulgated an unwritten policy of complete deference to the treatment providers. Amended Complaint at paragraphs 5 and 23; Appendix at 11 and 20.

one sized fits all treatment that all sex offenders are serial pedophiles, who pose an extraordinary risk to the public unless they admit to, accept responsibility for and pass a polygraph examination of the purported victim's initial allegations -- no matter how little credibility that purported victim turns out to have. This second treatment provider also terminated Mr. Walker from treatment because he refused to admit to C.D.'s false allegations, and concluded that because Mr. Walker refused to admit to the false allegations, then he was a sexual deviant with a "high risk to reoffend." On November 25, 2011, Defendants Struzeski and Madrid concluded that Mr. Walker had violated the terms and conditions of his parole for no reason other than the termination from treatment and the conclusion that Mr. Walker is a sexual deviant with a "high risk to reoffend" -- a conclusion not based on anything other than C.D.'s original false allegations. Ms. Walker's parole was revoked on December 19, 2011, he had to withdraw from his coursework at the Community College of Aurora and was returned to the DOC for 130 days. Amended Complaint at 26; Appendix at 22. This unconstitutional deprivation of Mr. Walker's liberty also occurred with in the two year statute of limitations.

Mr. Walker paroled again, by the Defendant parole board members, on March 15, 2012 with the same unconstitutional terms and conditions of parole as before. Amended Complaint at paragraph 29; Appendix at 24. Mr. Walker was assigned to the same parole officer, Defendant Stuzeski, who then lied to the

treatment provider regarding Mr. Walker.  Stuzeski knew that Mr. Walker's plea bargain contained a stipulation that there was "no factual basis" of any sexual offense to the charges to which Mr. Walker pleaded guilty; however he lied and stated that:  "the court appears to be silent on sexual factual basis."  He then told a second lie regarding the November 4, 2009 alleged incident in the DOC, and stated that Mr. Walker admitted to intentionally fondling or touching his cellmate's penis, when all Mr. Walker admitted to was accidentally bumping into his cellmate's groin area when both men were fully clothed.  Struzeski told a third lie by omission by claiming that Denver District Court Judge Habas' statement "Defendant is urged to undergo all treatment programs offered at DOC" meant that Judge Habas was urging Mr. Walker to undergo sexual offense specific treatment in the DOC.  SORS relied on these three lies, and rejected Mr. Walker for treatment.  Because he was rejected for treatment, Struzeski filed a parole revocation complaint, and alleged that Mr. Walker violated the terms and conditions of his parole, because he was not enrolled in sex offender treatment -- a condition that Mr. Walker had no control over, especially since Struzeski procured his rejection by intentionally lying about the facts.  Mr. Walker was arrested again. Amended Complaint at paragraph 30-1; Appendix at 24-5.

However, the parole board deferred deciding whether to revoke Mr. Walker's parole, to see whether Mr. Walker could be accepted into treatment with

another provider, this time Progressive Therapy.  Mr. Walker told Progressive Therapy, in writing, that he would willingly participate in treatment for the assault for which was convicted, but would not admit to or accept responsibility for allegations of sexual assault that were lies and never occurred (and more importantly were dismissed by the District Attorney as lies and not supported by a factual basis). However, the parole division continued to lie regarding Mr. Walker. On September 13, 2012, Defendant Madrid lied in an email regarding Mr. Walker, and repeated Struzeski's three lies set forth above.  Amended Complaint at paragraph 31-2; Appendix at 25.

Defendant White, one of the supervisors of Defendants Madrid and Struzeski thinks that she has been given the authority by the Attorney General's office to order parolees, such as Mr. Walker, and can order her subordinate parole officers to order parolees, such as Mr. Walker, to engage in sexual offense specific treatment in violation of the terms of the parolees' plea agreement.   In a September 28, 2012 email, Defendant White stated that she is entitled to rely on the erroneous advice of the Attorney General's office that the state criminal "court cannot dictate how an offender is classified and supervised by the DOC and specifically that the judge has no jurisdiction over the offender once he is in custody of the DOC."   Therefore, according to White, the DOC and Parole Division is entitled to intentionally and recklessly violate the terms of the plea

agreement if they want to, upon their whim and caprice.  However, this is contrary to 1979 United States Supreme Court precedent,[2] and violated Mr. Walker's Fourteenth Amendment rights.  Amended Complaint at 32; Appendix at 25.

Progressive Therapy also rejected Mr. Walker from even enrolling in treatment, and Struzeski filed another parole revocation complaint on December 12, 2012.  Progressive Therapy found that the Plaintiff was "not amenable to sex offense specific therapy" due to maintaining his innocence of any sex offense. Again, this revocation complaint was based on something completely out of Mr. Walker's control.  He has no control over whether a treatment provider will accept him into treatment, and he even notified this particular provider that he was willing to participate and cooperate in treatment.  The Plaintiff's parole was revoked on January 18, 2013 for allegedly violating the term and condition of parole that he participate in sex offender treatment, and Mr. Walker was returned to the DOC for the remainder of his mandatory parole.  Amended Complaint at 33; Appendix at 25.

Mr. Walker has now unconditionally discharged his sentence, and is no longer subject to the jurisdiction of any of the Defendants.

## SUMMARY OF THE ARGUMENT

---

[2] *Santobello v. New York*, 404 U.S. 257 (1979) as discussed by the Colorado Supreme Court in *People v Macrander,* 756 P.2d 356, 359 (1988).

The Tenth Circuit should clearly establish the law in the Tenth Circuit that it is unconstitutional for the parole board and parole officers to require a designated sex offender to admit to and accept responsibility for allegations of sexual misconduct which have been determined to be false allegations and the District Attorney and the state criminal court stipulated do not form the basis of a plea bargain.

**ARGUMENT**

Standard of Review.

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all well-pled allegations in the complaint as true and view those allegations in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). To survive summary dismissal, the Plaintiff must plead "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Importantly, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a

recovery is very remote and unlikely." *Id.* at 1965 (internal quotation marks omitted); *Robbins v. Okla. ex. rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (noting "the bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven").

### The District Court erred by Dismissing the Complaint.

**A. Mr. Walker's claims are not barred by the statute of limitations.**

As set forth in the factual summary above, Mr. Walker's claims are not barred by the statute of limitations because he is only suing the Defendants for actions that occurred on or after August 10, 2011, and this lawsuit was initiated on the next business day after August 10, 2013. In this case and in other similar cases, the Attorney General's office tries to deflect the issues by claiming that since a plaintiff in these circumstances is time barred by challenging the DOC's original sex offender classification (as either unconstitutional or having been done in violation of the procedures set forth in CRS 16-22-103(2)(d)), then the plaintiff cannot challenge any consequence of that erroneous classification. In other words, according to the Attorney General's office, once a DOC offender has been classified as a "sex offender," then all the collateral consequences of that designation are standard and automatic because there is a one sized fits all policy, set forth in the SOMB standards, that all "sex offenders" must engage in treatment,

that treatment necessarily includes having to admit to and accept responsibility for each detail of the victim's original allegations of a sexual offense, and all sex offenders are automatically barred from any contact with children, even their own familial relations. Consequently, according to the Attorney General's office, if an offender was classified as a sex offender more than two years ago, then the offender cannot challenge the unconstitutional terms and conditions of parole that are imposed or challenge an unconstitutional revocation of parole -- even if that occurred less than two years ago.

The Defendants confused the issue by complaining that Mr. Walker is suing for damages because the January 21, 2011 terms and conditions of parole were unconstitutional. He is not. He is suing because his August 10, 2011 revocation was unconstitutional. The August 10, 2011 date is the first operative date that the Plaintiff is suing for damages for violation of his constitutional rights. The description of events that occurred previously, are important to explain why the August 10, 2011 events are unconstitutional, but the Plaintiff is not suing for damages for injuries sustained prior to being arrested on August 10, 2011.

The Defendants cannot possibly argue that when the Plaintiff was paroled a second time, on March 15, 2012, that he cannot challenge the unconstitutionality of those terms and conditions of his parole. That was clearly within two years of the filing of the original Complaint in the case at bar. There is no administrative

regulation or Colorado statute that states that once an offender is paroled, then the terms and conditions of his first parole govern all subsequent parole board actions.

One of the reasons why Mr. Walker did not challenge the January 21, 2011 terms and conditions of parole is that the parole board and his parole officer might not have been on actual or fair notice that the prosecutor in Mr. Walker's criminal case determined that there was no factual basis of a sexual offense to any of the charges he was pleading guilty to and therefore Mr. Walker did not and could not meet the statutory or SOMB definition of a "sex offender."  Mr. Walker put the parole board and his parole officer on notice of these facts subsequent to his January 21, 2011 parole.  By the second time he was paroled, the parole board and Struzeski were on notice of these facts.[3]

_____

[3] The SOMB is a therapeutic model for the "treatment" (not punishment) of sex offenders, and supposedly the basis of the SOMB Standards and Guidelines are therefore only validated for offenses that are actual sex offenses under the Colorado General Assembly's and SOMB's definitions.  Sex offender "treatment" is therefore only validated for those offenses that are defined as sex offenses under the SOMB Standards and Guidelines.  There is *nothing*, including the work from the SOMB that provides any rational basis to conclude that anyone other than a defined "sex offender," meeting the SOMB or statutory definition will benefit from SOMB sex offender treatment and monitoring.  Since Mr. Walker was not a "sex offender" by definition, then sex offender "treatment" could not be reasonably calculated to rehabilitate him and could not be a valid term and condition of his parole.  That would be like imposing dialysis on someone with working kidneys -- as a precaution *just in case* something was wrong with their kidneys after all.  The SOMB touts itself as having promulgated their Standards and Guidelines that have a rational basis in legitimate medical and therapeutic treatment; but in order for their therapeutic treatment model to make any bit of rational sense, the Courts, the DOC, the parole board and parole officers must accept the SOMB's own definition

**B.** ***Heck v. Humphrey,*** **512 U.S. 477, 487 (1994) does not bar Mr. Walker's 42 USC 1983 claims since he is not challenging the fact of or the duration of his sentence.**

Next, the Defendants erroneously argue that somehow *Heck v. Humphrey,* 512 U.S. 477, 487 (1994) applies to the case at bar.  Under *Heck*, a plaintiff cannot assert a §1983 claim that, if successful, would necessarily imply the invalidity of a previous conviction or sentence, unless the plaintiff can demonstrate favorable termination of the prior conviction or sentence. *Id*. at 487. As the Supreme Court held:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–87. The purpose behind Heck is "to prevent litigants from using a 42 USC 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th

---

of a "sex offender" at face value.  The SOMB can only treat "sex offenders," not someone else that does not meet the SOMB definition of a "sex offender."  Mr. Walker did not meet that definition.  By March 12, 2012 all the Defendants were on notice that he did not meet that definition

Cir. 2007).     However, Mr. Walker ***is not*** challenging the invalidity of his

conviction nor is he contesting the length of his sentence.

Implicit in the Defendants' argument is that Mr. Walker cannot challenge

the terms and conditions of his parole because parole was a mere "privilege."  This

is incorrect.   Mr. Walker was on mandatory parole at all times relevant to the

Complaint.   CRS 18-1.3-401(1)(a)(V)(A) and (B) sets forth the mandatory parole

provisions that apply to Mr. Walker.  Each felony conviction includes a *mandatory*

period of parole that is served after the DOC sentence.   Mr. Walker alleged, and

the state defendants do not dispute that Mr. Walker was on *mandatory* parole at all

relevant times in 2011-2013.  Whether or not revoking his mandatory parole was

constitutional or unconstitutional, does not change the *length of his sentence.*

Either way, his three year sentence to mandatory parole is exactly the same length:

whether each day was spent on parole, or spent back in the DOC after his parole

was revoked or some combination thereof.

In any event, it is not Mr. Walker who is challenging the validity of his state

court conviction.  Ironically, he is seeking to force the Defendants to *acknowledge*

*the validity of his state court conviction.*  It is the Defendants, not the Plaintiff, who

are trying to undermine the Plaintiff's state court conviction that there is "no

factual basis" of a sexual offense for any of the crimes for which he was convicted.

Instead, it is the Plaintiff who is suing the Defendants for damages for their failure

to acknowledge the validity of his state court conviction, for their ad hoc attempt to rewrite the elements of the crimes for which he was convicted (in violation of the express terms of his plea bargain), and then impose unconstitutional terms of his parole.

There is no case, and the Defendants have cited no case, that holds that *Heck v. Humphrey,* 512 U.S. 477 487 (1994) means that an offender cannot challenge the constitutionality of the terms of his parole.  To the contrary, it is perfectly legitimate for a parolee to bring a 42 USC 1983 action to challenge the constitutionality of the terms and conditions of his parole.  For example, in *Warner v. Orange County Probation Dept.,*173 F.3d 120, 121 (2d Cir. 1999), *Turner v. Hickman*, 342 F. Supp. 2d 887, 897 (E.D. Cal. 2004) and *Basch v. Sumiec,* 139 F.Supp.2d 1029, 1035-6 (E.D. Wisc. 2001), the courts held that a parolee may challenge terms and conditions of parole that infringe on the parolee's First Amendment rights.  These cases are post *Heck v. Humphries.*   If Mr. Walker wins this lawsuit, the verdict *will not* mean that the Plaintiff's original state court conviction was invalid, his original sentence was invalid, or the length of his sentence was invalid.   The Plaintiff is challenging none of those things in this lawsuit.  Instead, he is suing the parole board and parole officers for forcing him to undergo sex offender treatment that necessarily included that he be forced to admit to and accept responsibility for false allegations of sexual misconduct.

The Defendants also complain that the Plaintiff could have filed a Rule 35(c) motion (pursuant to the Colorado Rules of Criminal Procedure), since Rule 35(c)(2)(VII) provides that a post conviction motion can allege that his parole was wrongfully revoked. This is another red herring. There is no requirement that a plaintiff in a 42 USC 1983 lawsuit exhaust state court remedies (and the Defendants do not make that claim).

The Rule 35(c)(2)(VII) state court remedy was not an adequate remedy at state law, because no damages remedy is available. Rule 35(c) motions do not provide a remedy for damages. Rule 35(c) motions are filed in the original criminal case, and the parole officers and parole board members are not parties. The state court judge in the criminal case has no jurisdiction to punish the parole officers or parole board for unconstitutional conduct.

The Rule 35(c) option was not even an adequate remedy to redress the Plaintiff's parole revocation. Each time the Plaintiff's parole was revoked, it was revoked for no more than 180 days (26 weeks) because his parole was revoked for technical violations only. See, CRS 17-2-103(11)(b)(II). Pursuant to Criminal Rule of Procedure Rule 35(c)(3)(IV), the District Court takes sixty days to "complete its review" or it sets "a new date for completing its review." Then, pursuant to Rule 35(c)(3)(V), the public defender is appointed, who then needs to determine whether it has a "conflict." Then, the state court must direct the

prosecution to respond to the Rule 35(c) motion, and then an evidentiary hearing is held, and then the state court has sixty days to make findings of fact and conclusions of law.  If Mr. Walker had prevailed, then the Denver District Attorney had the right to appeal to the Court of Appeals pursuant to Rule 35(c)(3)(IX).  Pursuant to the Colorado Rules of Appellate procedure, the District Attorney's Notice of Appeals would not have been due for seven weeks after the ruling appealed (Rule 4), then the Record not due for another 13 weeks (Rule 10), and then the District Attorney's Opening Brief would not have been due for another six weeks (Rule 31).

Therefore, as a practical matter, it always takes longer than 180 days for the Rule 35(c) motion to be resolved in the District court and then to become final after an appeal to the Colorado Court of Appeals.  As set forth above, the timeline exceeds 42 weeks.  This is why there has not been one single Rule 35(c)(2)(VII) motion filed to challenge a revocation of parole for alleged technical violations pursuant to  CRS 17-2-103(11)(b)(II) -- ***ever in the history of Rule 35(c).***  There is not one single Colorado Appellate case construing Rule 35(c)(2)(VII) for that very reason.  Necessarily, the 180 day DOC turnaround for the alleged technical violations expires long before the Rule 35(c) timelines, including the appellate timeline, can take place.  This is why, as a practical matter, no parolee has a meaningful Rule 35(c)(2)(VII) remedy.  The only meaningful remedy is a claim for

damages, pursuant to 42 USC 1983, against the parole officer and/or parole board if the parole revocation was unconstitutional.

More importantly, because it is impossible to exhaust the Rule 35(c)(2)(VII) state court remedy, which must be brought and appealed prior to bringing a 28 USC 2254 application for a writ of habeas corpus, *Heck v. Humphrey,* 512 U.S. 477 (1994) is not a bar to bringing a 42 USC 1983 lawsuit to challenge a parole revocation that is premised on the alleged violation of unconstitutional terms and conditions of parole. There can be **no** habeas remedy because it is necessarily impossible to exhaust the Rule 35(c) procedure and appeal in 180 days or less. In *Butler v. Compton*, 482 F.3d 1277, 1278-81 (10th Cir. 2007), the Tenth Circuit implied in dicta that *Heck v. Humphrey* does not apply when a habeas remedy is lacking. Other Circuits agree: *Wilson v. Johnson*, 535 F.3d 262, 264, 267-68 (4th Cir. 2008) (holding *Heck* does not bar relief for petitioner seeking monetary damages for past confinement where it was no longer possible for petitioner to satisfy the favorable termination requirement via habeas corpus), *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 598, 601-03 (6th Cir. 2007) (holding *Heck* inapplicable where petitioner was incarcerated for less than thirty days and thus could not bring a challenge under the habeas corpus statute), *and Nonnette v. Small,* 316 F.3d 872, 874, 876 (9th Cir. 2002) (holding *Heck* does not bar parolee seeking damages for unconstitutional deprivation of good-time

credits where habeas unavailable because petitioner had already served the term resulting from parole revocation).

**C. Mr. Walker stated a claim for relief that the terms and conditions of his parole violated his constitutional rights.**

In the proceedings below, the Defendants argued that Mr. Walker "fails to state a viable claim for the infringement of his First Amendment rights under the Establishment Clause." This is an irrelevant argument because Mr. Walker never claimed that his First Amendment rights were violated "under the Establishment Clause." Nowhere in the Amended Complaint is there any claim that the terms and conditions of Mr. Walker's parole violate the "Establishment Clause" of the First Amendment. Instead, Mr. Walker alleged that the term and condition of his parole, that he must participate in Sex Offender Treatment that necessarily includes the requirement that he admit to and accept responsibility for C.D.'s false allegations of sexual assault, violated his Fifth and Fourteenth Amendment Rights. Additionally, he alleged that the term and condition of parole, that he participate in Sex Offender Treatment, violated his First and Fourteenth Amendment right to familial relationships because the "one sized fits all" sex offender treatment program requires that all sex offenders must be denied all contact with persons under the age of 18, even their own familial relations.

1. The Fifth and Fourteenth Amendment violation

The right against compulsory self incrimination has been established for decades, since the US Supreme Court issued its opinion in *Miranda v. Arizona,* 384 U.S. 486 (1966).

*McKune v. Lile*, 536 U.S. 24 (2002) does not change or affect Mr. Walker's Fifth Amendment argument.  Mr. Lile argued that compulsory participation in sex offender treatment violated his Fifth Amendment rights because he was going to be required to accept responsibility for his past sexual actions.  This acceptance of responsibility could have been deemed criminal and could be brought against him thus making him a witness against himself.  The United States Supreme Court disagreed.  However, in the case at bar, Mr. Walker is not challenging the "sexual history" component of Colorado's sex offender treatment program.  He has no uncharged sex offenses in his past that he does not want to disclose.  That is not the issue.  The issue in the case at bar is the requirement in sex offender treatment that the offender take responsibility for the "index offense," -- in other words, the alleged offense that resulted in the sex offender classification.  In Mr. Gross's and Mr. Walker's case, the "index offense" was not something for which they were convicted.  They were only falsely accused.  Mr. Gross was then acquitted, and Mr. Walker's prosecutor determined that the allegations were false and she stipulated that there was "no sexual basis" to the crimes for which Mr. Walker was convicted.  Thus, Mr. Walker's issue is that he will be compelled to admit to and accept

28

responsibility for the offenses that C.D. falsely accused him of -- but that his own prosecutor previously determined were false allegations. Thus, he will be made to bear "witness" against himself and admit to non existent crimes. That violates the Fifth Amendment prohibition against Self Incrimination.

There is also the issue of the violation of the double jeopardy clause. In the related cases, Mr. Gross was acquitted of any sex offenses. In the case at bar, Mr. Walker was not convicted of any sex offenses because the District Attorney determined that C.D. had no credibility and his allegations of sexual assault were false. Therefore, the prosecution entered into a plea bargain for conviction of non sex offenses, with a stipulation that there was no sexual basis to any of Mr. Walker's convictions and dismissed any sex offense charges. As a result, neither Mr. Gross nor Mr. Walker is a sex offender as that term is defined by Colorado statute and the SOMB Standards. Both Mr. Gross and Mr. Walker were on mandatory parole pursuant to their conviction for other felonies, having nothing to do with the (false) allegations of sexual misconduct.

The reason why there is a Double Jeopardy clause issue is because both men were designated by the DOC as sex offenders (based on these false allegations made by the victim). Because both men were designated as "sex offenders" (despite not meeting the statutory and SOMB definition of "sex offender"), the parole board defendants ordered both of them to participate in sex offender

treatment as a term and condition of their parole. This "treatment" necessarily included the requirement that they admit to and accept responsibility for the false allegations of sexual assault. Both men refused to make this admission. As a result, Mr. Gross was terminated from treatment, and Mr. Walker was refused admission to treatment in the first place. Consequently, both men were returned to the DOC as a parole violator for violating the term and condition of parole that they engage in sex offender treatment. Both men subsequently discharged their mandatory parole sentences in the DOC, both are now "off paper," and now both men have similar civil rights cases pending before this Court. The defendant parole board members and parole officers placed both men in the position of going to prison for no reason other than the fact they refused to admit to and accept responsibility for conduct that they never engaged in -- and for which Mr. Gross was acquitted, and for which Mr. Walker's prosecutor stipulated never occurred and dismissed the charges. This is incarcerating them, in a roundabout way, for the conduct for which they were accused of but never convicted. This violates the Double Jeopardy clause.

The Fifth Amendment states that no person shall be subject "for the same offence to be twice put in jeopardy of life or limb." The Double Jeopardy Clause protects an individual from being subjected to the hazards of trial and possible conviction more than once for the same offense. In *Breed v. Jones*, 421 U.S. 519

(1975), Mr. Jones was adjudicated guilty of robbery as a juvenile offender. After the trial court determined that Mr. Jones was unfit for treatment as a juvenile, he was prosecuted for robbery as an adult. The U.S. Supreme Court held that this violated the Double Jeopardy Clause.

This is not a case where Mr. Walker was convicted of a sex offense and sentenced to incarceration, then mandatory parole, and are claiming that revocation of the mandatory parole would violated the Double Jeopardy Clause. Instead, Mr. Walker's case is analogous to the following: In the *Breed* case, what if Mr. Jones was first tried as an adult for robbery and acquitted? Could he then be tried as a juvenile and forced into "treatment" after adjudication as a juvenile offender for the same robbery charge? Based on the reasoning in *Breed v. Jones*, it is clear that would violate the Double Jeopardy Clause. If it violated the Double Jeopardy Clause to try Mr. Jones a second time for the same offense after he was adjudicated guilty the first time, it would certainly offend double jeopardy if he were adjudicated not guilty the first time.

However, that is exactly what the Defendants tried to do to Mr. Walker. The charges that were originally brought against Mr. Walker based on C.D.'s false allegations were dismissed, and the District Attorney stipulated that there was no sexual misconduct basis for any crime for which Mr. Walker was convicted.

To the extent that the Defendants are arguing that the designation of the Plaintiff as a "sex offender" does not violate the Double Jeopardy clause, the Plaintiff is not alleging that it is unconstitutional to incorrectly label him as a "sex offender." The Defendants can affix any pejorative label on Mr. Walker that they want, including "sex offender," "short," "red-headed step child," or "convicted felon". The Plaintiff did not sue on the theory that it was unconstitutional to defame him with the false label of "sex offender;" instead he sued because it violates the Double Jeopardy clause and other sections of the Constitution to require him to take certain actions (like admit to and accept responsibility for crimes which his prosecutor *stipulated* did NOT occur) or refrain from doing other things (like having contact with his juvenile familial relations); and it violates the Due Process clause to compel him to fulfill an impossible to comply with condition (to be enrolled in sex offender treatment) that is solely within the Defendants' control.

> 2.     The First and Fourteenth Amendment violation

Requiring Mr. Walker to unnecessarily engage in sex offender treatment, when that treatment necessarily imposes a blanket prohibition against contact with persons under the age of 18 violated Mr. Walker's First and Fourteenth Amendment right to familial relationships.

The Plaintiff acknowledges that because he was a convicted felon on parole, there were some restrictions on his First Amendment rights.  But, any such restrictions must be rationally related to legitimate penological interests.  *Overton v. Bazzetta*, 539 U.S. 126 (2003).  In *Warner v. Orange County Probation Dept.,* 173 F.3d 120, 121 (2d Cir. 1999), *Turner v. Hickman*, 342 F. Supp. 2d 887, 897 (E.D. Cal. 2004) and *Basch v. Sumiec,* 139 F.Supp.2d 1029, 1035-6 (E.D. Wisc. 2001), the courts held that a parolee may challenge terms and conditions of parole that infringe on the parolee's First Amendment rights.

In *NAACA v. Alabama,* 357 U.S. 449, 466 (1958), the United States Supreme Court held that there is a Fourteenth Amendment right "to pursue lawful private interests privately and to associate freely with others in doing so," and, further, that freedom to associate with organizations dedicated to the "advancement of beliefs and ideas" is an inseparable part of the Due Process Clause of the Fourteenth Amendment.  *Id.* at 466.  Therefore, Mr. Walker had a Fourteenth Amendment right to associate with his under aged siblings and nieces and nephews.  The only reason why the Defendants restricted Mr. Walker's freedom of association is because he was designated as a "sex offender."  Other offenders on parole have no automatic or blanket prohibition from associating with their under aged familial relations -- even those offenders on parole for causing a child (non sexual) physical injuries -- like breaking a child's leg with a baseball bat.

More specifically, Mr. Walker had a Fourteenth Amendment right to familial association. *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993). The freedom of intimate association is a substantive due process right, as is its subset, the familial right of association. The Tenth Circuit first recognized this right in *Trujillo v. Board of County Commissioners,* 768 F.2d 1186, 1188-89 (10th Cir. 1985) – almost thirty years before the events in the case at bar. *Griffin, supra*, 983 F.2d at 1546.

In *Trujillo*, the plaintiffs were a mother and her adult daughter, and they alleged that that the wrongful death of their adult son and brother, Richard Trujillo, while incarcerated at the Santa Fe County Jail, deprived them of their constitutional right of familial association. *Trujillo, supra* 768 F.2d at 1187. Many courts have recognized liberty interests in familial relationships other than strictly parental ones. *See, e.g., Moore v. City of East Cleveland,* 431 U.S. 494 (1977) (grandmother and grandsons who were cousins); *Smith v. Organization of Foster Families,* 431 U.S. 816 (1977) (foster parents have liberty interest in relationship with foster children); *Wilson v. Taylor,* 733 F.2d 1539 (11th Cir. 1984) (interference with dating relationship actionable under 42 USC 1983); *Rivera v. Marcus,* 696 F.2d 1016, 1024-25 (2d Cir. 1982) (half-sister who was also foster mother had protected interest in siblings); *Drollinger v. Milligan,* 552 F.2d 1220, 1226-27 (7th Cir. 1977) (deprivation of grandfather's relationship with grandchild

actionable under 42 USC 1983). See generally, *Trujillo, supra* 768 F.2d at 1188-89.

The Tenth Circuit noted that the familial relationships in *Trujillo* do not form the outer limits of protected intimate relationships. A broad range of human relationships are subject to constitutional protection. *Trujillo, supra* 768 F.2d at 1189 n.5. The Tenth Circuit specifically rejected the position taken by the Seventh Circuit in *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984), *overruled by Russ v. Watts,* 414 F.3d 783 (7th Cir. 2005), that "a deliberate deprivation of any intimate associational relationship other than that of a parent, spouse, or child would not be actionable under section 1983." *Trujillo, supra,* 768 F.2d at 1190. In other words, Mr. Walker has a constitutionally protected interest in the familial association with his half siblings, and his nieces and nephews.

However, the analysis does not end with the assertion of the familial association. Even if a plaintiff asserts a cognizable right of familial association in a given case, the determination of whether that plaintiff's rights were violated "requires a balancing of liberty interests against the relevant state interests." *Griffin, supra,* 983 F.2d at 1547 (brackets and internal quotation marks omitted). Specifically, the Tenth Circuit instructs the courts to "weigh these interests to determine whether [the state actor's] conduct . . . constituted an undue burden on [the plaintiff's] associational rights." *Id.* To determine whether a person's familial

association rights have been violated, the court must weigh the state's interests in, for example the "treatment" of an offender convicted of other felony offenses against that of the offender's interests in his familial right of association to his extended family. *Trujillo, supra,* 768 F.2d at 1190 (noting that the freedom of intimate association "protect[s] interpersonal relationships from *unwarranted* intrusion by the state") (emphasis added).

In the case at bar, unlike the *Trujillo* case, the Defendants' actions were clearly intended to interfere with the Plaintiff's familial relationships.[4]  He was directly and intentionally ordered to have no contact with anyone under the age of 18 -- even his under aged half siblings and his nieces and nephews. Therefore, Mr. Walker stated a constitutional claim.   The restrictions on Mr. Walker's constitutional right to associate with his under aged half siblings and his nieces and nephews, and talk to them and about them are not rationally related to any legitimate penological interest.   The sex offender "treatment" provided to Mr. Walker was the "one sized fits all" treatment given to all sex offenders – in accordance with the policy of the SOMB Defendants of treating all sex offenders

---

[4] In *Trujillo*, even if the defendants' intentional conduct resulted in the death of the plaintiffs' decedent, the defendants' actions were not taken with the intent to deprive the plaintiffs of the familial association with their dead family member.  In contrast, in the case at bar, the Defendants' actions were directed at the Plaintiffs with the intention to deprive Mr. Walker of the familial association of his grandchildren.  In fact, it is the SOMB Defendants' policy that all purported sex

alike, without regard to the age and gender of the offender or the age, gender or number of alleged victims or the nature of the offense or whether violence or a weapon was used in the commission of an offense. This "one sized fits all" policy treats all sex offenders as serial pedophiles, who place all children in the community at risk of sexual assault, without regard to whether a particular offender has ever committed a sex assault on a child or even has pedophiliac tendencies. Mr. Walker has never been accused (much less convicted) of a sex offense on a child, thus denying him access to all children, even his own familial relations, is an *unwarranted* intrusion by the state on his constitutionally protected familial relationships with his half siblings and nieces and nephews. To the extent the Defendants disagree, this involves disputed issues of fact and cannot be determined on a motion to dismiss.

### D.  The Defendants are not entitled to Qualified Immunity as a matter of law

In order to be entitled to have this Complaint dismissed, the Defendants would have to be entitled to qualified immunity as a matter of law. The Defendants would only be entitled to qualified immunity as a matter of law only if the constitutional rights that the Plaintiff claimed were violated were not clearly established at the time of the incident.

---

offenders, such as Mr. Walker, must necessarily be denied their familial association with their underage relatives, that is at the heart of this lawsuit.

The Plaintiff does not have to cite a case dealing with an identical factual situation as the case at bar in order to defeat the claim of qualified immunity. Instead, he must merely identify legal authority that makes it "apparent" that a reasonable state official, confronted with the facts as in the case at bar, would have known that his or her actions were unconstitutional. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). Qualified immunity operates "to ensure that before they are subjected to suit, government officials are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206 (2001). For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. In other words, "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

As set forth above, pursuant to the cases cited in the sections above, the law was clearly established by 2011-2013 that while the parole board may have broad discretion to set terms and conditions of parole, this discretion is not unfettered and may not infringe upon the parolee's ability to exercise his constitutional rights or if the term and condition are not reasonably related to the purposes of parole.

## CONCLUSION

Therefore, for the reasons set forth above, the District Court's Order of dismissal was in error, and this Honorable Court should reverse and remand.

DATED January 19, 2015.

Respectfully submitted

*Alison Ruttenberg*

Alison Ruttenberg
PO Box 19857
Boulder, CO  80308
(720) 317-3834
Fax:  (888) 573-3153
Ruttenberg@me.com

**Attorneys for the Plaintiff/Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2015, a copy of the foregoing was served electronically (via CM/ECF System and email) to all counsel of record.

Nicole S. Gellar
Assistant Attorney General
Civil Litigation & Employment Section
1300 Broadway, 10th Floor
Denver CO  80203
(720) 508-6614
Niole.gellar@state.co.us

## CERTIFICATE OF DIGITAL SERVICE

(1) All required privacy redactions have been made;
(2) The ECF submission is an exact copy of the hard copy documents;

(3) The ECF submission was scanned for viruses with Jotti Malware Scan, last updated June 2012 according to their website, and, according to the program is free of viruses.  The document came from a Macintosh Computer.  Non Microsoft or non windows based hardware and software are generally virus and malware free.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 13-cv-02142-RPM

MARLON WALKER,

     Plaintiff,

v.

SUSAN WHITE, DOC Division of Adult Parole, in her personal capacity for damages;
GUILLERMO SAMUDIO, DOC Division of Adult Parole, in his personal capacity for damages;
DANA MADRID, DOC Division of Adult Parole, in her personal capacity for damages;
BRIAN STRUZESKI, DOC Division of Adult Parole, in his personal capacity for damages;
ED THOMAS, Member of the Parole Board, in his personal capacity for damages;
DENISE BALAZIC, Member of the Parole Board, in her personal capacity for damages;
PATRICIA VAN WAAK, Member of the Parole Board, in her personal capacity for damages;
JOHN O'DELL, Member of the Parole Board, in his personal capacity for damages;
MICHAEL ANDERSON, Member of the Parole Board, in his personal capacity for damages;
REBECCA OAKES, Member of the Parole Board, in her personal capacity for damages;
ANTHONY YOUNG, Member of the Parole Board, in his personal capacity;
BRANDON SHAFFER, Member of the Parole Board, in his personal capacity;
ALFREDO PENA, Member of the Parole Board, in his personal capacity;
JOE MARTIN MORALES, Member of the Parole Board, in his personal capacity;
BECKY LUCERO, Member of the Parole Board, in her personal capacity for damages; and
JOHN DOE, Arkansas Valley Correctional Facility, in his personal capacity for damages,

     Defendants.

_____

ORDER FOR DISMISSAL
_____

     To overcome the appearing defendants' claim of qualified immunity in their

motion to dismiss and proceed with his claims for damages under 42 U.S.C. § 1983,

Marlon Walker must show that there is clearly established law that would make them

aware that they were violating the First, Fifth and Fourteenth Amendments to the United

States Constitution by their actions that resulted in his additional incarceration for

violating conditions of parole related to his classification as a sex offender.  He has

failed to meet this requirement.

The plaintiff's complaint and response to the motion to dismiss raise serious questions concerning the restrictions placed on persons classified as sex offenders under Colorado law.  The named defendants, parole board members and parole officers acted under color of that law.  There is no showing that their interpretations of their authority to take the actions complained about were constitutionally prohibited.  Indeed, the Fifth Amendment claim is comparable to that made by a prisoner in *McCune v. Lile,* 536 U.S. 24 (2002) a plurality opinion with a strong dissent by four justices.

Admittedly this case is different because the plaintiff's refusal to admit to any sex offense caused his re-incarceration for parole violations but the uncertainty as to the scope of the privilege in these circumstances prevents the exposure of these defendants to a claim for damages.

This case is not materially different from *Gross v. Samudio, et al.,* Civil Action No. 11-cv-02594-RPM which is now on appeal from this Court's Order of Dismissal.

The defense of the constitutionality of Colorado's statutory and regulatory requirements limiting the liberty of those classified as sex offenders cannot be put on the backs of these defendants as individuals.

Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), it is

ORDERED that this civil action is dismissed.

DATED: August 18th, 2014

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior Judge

2