UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Case No.   14-1380

|  |  |  |
|---|---|---|
|  | ) |  |
| MARLON WALKER | ) | Appeal from the |
| Plaintiff-Appellant | ) | U. S. District Court |
|  | ) | District of Colorado |
| v. | ) | Case No. 13-cv-2142 |
|  | ) | Matsch, D.J. |
| SUSAN WHITE, et al | ) |  |
| Defendants-Appellees. | ) |  |

_____

**APPENDIX**

_____

Alison Ruttenberg
PO Box 19857
Boulder, CO  80308
(720) 317-3834
Fax:  (888) 573-3153
Ruttenberg@me.com

**Attorney for the Plaintiff-Appellant**

# TABLE OF CONTENTS

Civil Docket, US District Court…………………………………………    001
Complaint…………………………………………………………………    009
Defendants' Motion to Dismiss…………………………………………..    031
Response to Motion to Dismiss…………………………………..    057
Exhibit to Response to Motion to Dismiss (SOMB Guidelines) ………..………
    090
Order Granting Motion to Dismiss…………………………………….    103
Judgment…………………………….…………………………….………    105
Notice    of    Appeal…………………………………………………………
    107

DATED January 19, 2015.

Respectfully submitted,

*Alison Ruttenberg*

Alison Ruttenberg
PO Box 19857
Boulder, CO  80308
(720) 317-3834
Fax:  (888) 573-3153
Ruttenberg@me.com
**Attorney for the Plaintiff/Appellant**

# CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2015, a copy of the foregoing was served electronically (via CM/ECF System and email) to all counsel of record.

Nicole S. Gellar
Assistant Attorney General
Civil Litigation & Employment Section

1300 Broadway, 10th Floor
Denver CO  80203
(720) 508-6614
Niole.gellar@state.co.us


## CERTIFICATE OF DIGITAL SERVICE

(1) All required privacy redactions have been made;

(2) The ECF submission is an exact copy of the hard copy documents;

(3) The ECF submission was scanned for viruses with Jotti Malware Scan, last updated June 2012 according to their website, and, according to the program is free of viruses.  The document came from a Macintosh Computer.  Non Microsoft or non windows based hardware and software are generally virus and malware free.

APPEAL,TERMED

# U.S. District Court
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:13-cv-02142-RPM

Walker v. White et al

Assigned to: Judge Richard P. Matsch

Case in other court:  US Court of Appeals for the Tenth Circuit,
              14-01380

Cause: 42:1983 Civil Rights Act

Date Filed: 08/11/2013

Date Terminated: 08/18/2014

Jury Demand: Plaintiff

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

### Plaintiff

**Marlon Walker**

represented by **Alison Lee Ruttenberg**
Alison L. Ruttenberg, Attorney at Law
P.O. Box 19857
Boulder, CO 80308
720-317-3834
Fax: 888-573-3153
Email: Ruttenberg@me.com
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**Susan White**
*DOC Division of Adult Parole, in her
personal capacity for damages*

### Defendant

**Guillermo Samudio**
*DOC Division of Adult Parole, in his
personal capacity for damages*

represented by **Nicole S. Gellar**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6614
Fax: 720-508-6032
Email: nicole.gellar@state.co.us
*ATTORNEY TO BE NOTICED*

### Defendant

**Dana Madrid**
*DOC Division of Adult Parole, in her
personal capacity for damages*

represented by **Nicole S. Gellar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brian Struzeski**
*DOC Division of Adult Parole, in his personal capacity for damages*

represented by **Nicole S. Gellar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ed (I) Thomas**
*Member of the Parole Board, in his personal capacity for damages*

**Defendant**

**Denise Balazic**
*Member of the Parole Board, in her personal capacity for damages*

**Defendant**

**Patricia Van Waak**
*Member of the Parole Board, in her personal capacity for damages*

**Defendant**

**John O'Dell**
*Member of the Parole Board, in his personal capacity for damages*

represented by **Nicole S. Gellar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Michael (I) Anderson**
*Member of the Parole Board, in his personal capacity for damages*

**Defendant**

**Rebecca (I) Oakes**
*Member of the Parole Board, in her personal capacity for damages*

represented by **Nicole S. Gellar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anthony Young**
*Member of the Parole Board, in his personal capacity for damages*

**Defendant**

**Brandon Shaffer**
*Member of the Parole Board, in his personal capacity for damages*

represented by **Nicole S. Gellar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alfredo Pena**
*Member of the Parole Board, in his*
*personal capacity for damages*

represented by **Nicole S. Gellar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joe Martin Morales**
*Member of the Parole Board, in his*
*personal capacity for damages*

represented by **Nicole S. Gellar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Becky (I) Lucero**
*Member of the Parole Board, in her*
*personal capacity for damages and John*
*Doe, Arkansas Valley Correctional*
*Facility, in his personal capacity for*
*damages*

| Date Filed | # | Docket Text |
| --- | --- | --- |
| 08/11/2013 | 1 | COMPLAINT against All Defendants (Filing fee $ 400, Receipt Number 1082-3486587), filed by Marlon Walker. (Attachments: # 1 Civil Cover Sheet)(Ruttenberg, Alison) Modified on 8/22/2013 to set Level 1 Restriction pursuant to minute order entered 8/22/13(mnfsl, ). (Entered: 08/11/2013) |
| 08/11/2013 | 2 | Case assigned to Judge Philip A. Brimmer and drawn to Magistrate Judge Craig B. Shaffer. Text Only Entry (sphil, ) (Entered: 08/12/2013) |
| 08/12/2013 | 3 | Magistrate Judge Consent Form issued. No summons issued. Invalid civil cover sheet does not match the parties. (sphil, ) Modified on 8/12/2013 (sphil, ). (Entered: 08/12/2013) |
| 08/22/2013 | 4 | MINUTE ORDER. Docket No. 1 shall be restricted at Level One. On or before 5:00 PM on Tuesday, 8/27/2013, plaintiff shall re-file the complaint without restriction with redactions that comply with Fed. R. Civ. P. 5.2(a). By Judge Philip A. Brimmer on 8/22/13. (mnfsl, ) (Entered: 08/22/2013) |
| 08/26/2013 | 5 | Redacted 1 COMPLAINT against All Defendants pursuant to 4 Minute Order, filed by Marlon Walker.(Ruttenberg, Alison) Modified on 8/27/2013 to add linkage and text and to set Level 1 Restriction pursuant to minute order entered 8/27/13 (mnfsl, ). (Entered: 08/26/2013) |
| 08/27/2013 | 6 | MINUTE ORDER. Docket No. 5 shall be restricted at Level One. On or before 5:00 PM on Tuesday, 9/3/13 plaintiff shall re-file the complaint without restriction with redactions that comply with Fed. R. Civ. P. 5.2(a). By Judge Philip A. Brimmer on 8/27/13. (mnfsl, ) (Entered: 08/27/2013) |
| 09/02/2013 | 7 | Redacted 5 COMPLAINT against All Defendants pursuant to 6 Minute Order, filed by |

003

| | | Marlon Walker.(Ruttenberg, Alison) Modified on 9/3/2013 to add linkage and text (mnfsl, ). (Entered: 09/02/2013) |
|---|---|---|
| 09/02/2013 | 8 | NOTICE OF CASE ASSOCIATION *with Gross v. Madrid, et al, 10-cv-1581-RPM and Gross v. Samudio, 11-cv-2594-RPM* by Plaintiff Marlon Walker (Ruttenberg, Alison) (Entered: 09/02/2013) |
| 09/03/2013 | 9 | "Vacated" ORDER REFERRING CASE to Magistrate Judge Craig B. Shaffer for non-dispositive matters. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), this case is referred to the assigned United States Magistrate Judge to (1) convene a scheduling conference under Fed. R. Civ. P. 16(b) and enter a scheduling order meeting the requirements of D.C.COLO.LCivR 16.2, (2) conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause, (3) hear and determine pretrial matters, including discovery and other non-dispositive motions, and (4) conduct a pretrial conference and enter a pretrial order. Court sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. On the recommendation or informal request of the magistrate judge or on the request of the parties by motion, this court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding. By Judge Philip A. Brimmer on 9/3/13. Text Only Entry (pabsec) Modified on 9/6/2013 re 11 (rpmcd ). (Entered: 09/03/2013) |
| 09/04/2013 | 10 | ORDER TRANSFERRING CASE. Pursuant to D.C.COLO.LCivR 40.1A and with the approval of Chief Judge Marcia S. Krieger, this case is transferred to Senior Judge Richard P. Matsch. By Judge Philip A. Brimmer on 9/4/13. (mnfsl, ) (Entered: 09/04/2013) |
| 09/06/2013 | 11 | ORDER VACATING 9 Order Referring Case to Magistrate Judge Craig B. Shaffer, by Judge Richard P. Matsch on 9/6/2013. (rpmcd) (Entered: 09/06/2013) |
| 11/29/2013 | 12 | SUMMONS REQUEST as to Susan White re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 13 | SUMMONS REQUEST as to Susan White re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 14 | SUMMONS REQUEST as to Guillermo Samudio re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 15 | SUMMONS REQUEST as to Dana Madrid re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 16 | SUMMONS REQUEST as to Brian Struzeski re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 17 | SUMMONS REQUEST as to Denise Balazic re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 18 | SUMMONS REQUEST as to Patricia Van Waak re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |

| 11/29/2013 | 19 | SUMMONS REQUEST as to John O'Dell re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 20 | SUMMONS REQUEST as to Michael Anderson re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 21 | SUMMONS REQUEST as to Rebecca Oakes re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 22 | SUMMONS REQUEST as to Anthony Young re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 23 | SUMMONS REQUEST as to Brandon Shaffer re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 24 | SUMMONS REQUEST as to Alfredo Pena re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 25 | SUMMONS REQUEST as to Joe Martin Morales re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 11/29/2013 | 26 | SUMMONS REQUEST as to Becky Lucero re 7 Amended Complaint by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 11/29/2013) |
| 12/02/2013 | 27 | SUMMONS issued by Clerk. Magistrate Judge Consent Form attached. re 12 thru 26 . (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons, # 11 Summons, # 12 Summons, # 13 Summons, # 14 Summons, # 15 Mag. Consent Form) (rpmcd ) (Entered: 12/02/2013) |
| 12/08/2013 | 28 | SUMMONS Returned Executed by Marlon Walker. Dana Madrid served on 12/6/2013, answer due 12/27/2013; Joe Martin Morales served on 12/6/2013, answer due 12/27/2013; John O'Dell served on 12/6/2013, answer due 12/27/2013; Rebecca (I) Oakes served on 12/6/2013, answer due 12/27/2013; Alfredo Pena served on 12/6/2013, answer due 12/27/2013; Guillermo Samudio served on 12/6/2013, answer due 12/27/2013; Brandon Shaffer served on 12/6/2013, answer due 12/27/2013; Brian Struzeski served on 12/6/2013, answer due 12/27/2013. (Ruttenberg, Alison) (Entered: 12/08/2013) |
| 12/09/2013 | 29 | SUMMONS Returned Executed by Marlon Walker. Brian Struzeski served on 12/9/2013, answer due 12/30/2013. (Ruttenberg, Alison) (Entered: 12/09/2013) |
| 12/26/2013 | 30 | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint, by Defendants Dana Madrid, Joe Martin Morales, John O'Dell, Rebecca (I) Oakes, Alfredo Pena, Guillermo Samudio, Brandon Shaffer, Brian Struzeski. (Gellar, Nicole) (Entered: 12/26/2013) |
| 12/31/2013 | 31 | ORDER granting 30 Motion for Extension of Time to Answer or Otherwise Respond re 1 Complaint, Dana Madrid answer due 1/27/2013; Joe Martin Morales answer due 1/27/2013; John O'Dell answer due 1/27/2013; Rebecca (I) Oakes answer due 1/27/2013; Alfredo Pena answer due 1/27/2013; Guillermo Samudio answer due 1/27/2013; Brandon Shaffer answer due |

| | | 1/27/2013, by Judge Richard P. Matsch on 12/31/2013.(ervsl, ) (Entered: 12/31/2013) |
|---|---|---|
| 01/27/2014 | 32 | MOTION to Dismiss for Failure to State a Claim by Defendants Dana Madrid, Joe Martin Morales, John O'Dell, Rebecca (I) Oakes, Alfredo Pena, Guillermo Samudio, Brandon Shaffer, Brian Struzeski. (Gellar, Nicole) (Entered: 01/27/2014) |
| 02/20/2014 | 33 | Unopposed MOTION for Extension of Time to File Response/Reply as to 32 MOTION to Dismiss for Failure to State a Claim by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 02/20/2014) |
| 02/21/2014 | 34 | ORDER Granting 33 Motion for Extension of Time re 32 : by Judge Richard P. Matsch on 2/21/2014.(rpmcd ) (Entered: 02/21/2014) |
| 03/09/2014 | 35 | RESPONSE to 32 MOTION to Dismiss for Failure to State a Claim filed by Plaintiff Marlon Walker. (Attachments: # 1 Exhibit 1 SOMB Guidelines extract)(Ruttenberg, Alison) (Entered: 03/09/2014) |
| 03/09/2014 | 36 | MOTION for Leave to *File Response to Motion to Dismiss out of time* 35 Response to Motion by Plaintiff Marlon Walker. (Attachments: # 1 Exhibit 1)(Ruttenberg, Alison) (Entered: 03/09/2014) |
| 03/10/2014 | 37 | ORDER granting 36 Motion for Leave to file Respoonse to 35 Motion to Dismiss out of time, by Judge Richard P. Matsch on 3/10/2014. Text Only Entry(evana, ) (Entered: 03/10/2014) |
| 03/24/2014 | 38 | Unopposed MOTION for Extension of Time to File Response/Reply as to 32 MOTION to Dismiss for Failure to State a Claim by Defendants Dana Madrid, Joe Martin Morales, John O'Dell, Rebecca (I) Oakes, Alfredo Pena, Guillermo Samudio, Brandon Shaffer, Brian Struzeski. (Gellar, Nicole) (Entered: 03/24/2014) |
| 03/25/2014 | 39 | ORDER Granting 38 Motion for Extension of Time: to and including April 14, 2014, to file a reply to the response to the motion to dismiss 32 , by Judge Richard P. Matsch on 3/25/2014.(jsmit) (Entered: 03/25/2014) |
| 04/14/2014 | 40 | Unopposed MOTION for Extension of Time to File Response/Reply as to 32 MOTION to Dismiss for Failure to State a Claim by Defendants Dana Madrid, Joe Martin Morales, John O'Dell, Rebecca (I) Oakes, Alfredo Pena, Guillermo Samudio, Brandon Shaffer, Brian Struzeski. (Gellar, Nicole) (Entered: 04/14/2014) |
| 04/15/2014 | 41 | ORDER Granting 40 Motion for Extension of Time re 32 : to and including May 5, 2014, to file a reply, by Judge Richard P. Matsch on 4/15/2014.(jsmit) (Entered: 04/15/2014) |
| 05/05/2014 | 42 | REPLY to Response to 32 MOTION to Dismiss for Failure to State a Claim filed by Defendants Dana Madrid, Joe Martin Morales, John O'Dell, Rebecca (I) Oakes, Alfredo Pena, Guillermo Samudio, Brandon Shaffer, Brian Struzeski. (Gellar, Nicole) (Entered: 05/05/2014) |
| 05/06/2014 | 43 | RESTRICTED DOCUMENT - Level 1: by Defendants Dana Madrid, Joe Martin Morales, John O'Dell, Alfredo Pena, Guillermo Samudio, Brandon Shaffer, Brian Struzeski.. (Gellar, Nicole) (Entered: 05/06/2014) |
| | | |

| 05/06/2014 | 44 | Exhibits re 43 Restricted Document - Level 1 by Defendants Dana Madrid, Joe Martin Morales, John O'Dell, Alfredo Pena, Guillermo Samudio, Brandon Shaffer, Brian Struzeski. Public and Text Only Entry. (jsmit ) (Entered: 05/07/2014) |
| 05/07/2014 | 45 | MOTION to Strike 44 Exhibits, 43 Restricted Document - Level 1 by Plaintiff Marlon Walker. (Ruttenberg, Alison) (Entered: 05/07/2014) |
| 05/27/2014 | 46 | Unopposed MOTION for Leave to *to File Exhibit A-1 to Reply to Response to Motion to Dismiss (Doc. 43) Under Seal* by Defendants Dana Madrid, Joe Martin Morales, John O'Dell, Rebecca (I) Oakes, Alfredo Pena, Guillermo Samudio, Brandon Shaffer, Brian Struzeski. (Gellar, Nicole) (Entered: 05/27/2014) |
| 05/28/2014 | 47 | RESPONSE to 45 MOTION to Strike 44 Exhibits, 43 Restricted Document - Level 1 *to Defendants Reply Brief in Response to Their Motion to Dismiss* filed by Defendants Dana Madrid, Joe Martin Morales, John O'Dell, Rebecca (I) Oakes, Alfredo Pena, Guillermo Samudio, Brandon Shaffer, Brian Struzeski. (Gellar, Nicole) (Entered: 05/28/2014) |
| 05/28/2014 | 48 | ORDER Granting 46 Motion for Leave to File Exhibit A-1 to Reply to Response to Motion to Dismiss 43 Under Seal Restriction Level 1, by Judge Richard P. Matsch on 5/28/2014.(jsmit ) (Entered: 05/28/2014) |
| 08/18/2014 | 49 | ORDER dismissing this civil action by Judge Richard P. Matsch on 8/18/14. (dkals, ) (Entered: 08/18/2014) |
| 08/18/2014 | 50 | FINAL JUDGMENT pursuant to 49 Order for Dismissal by Clerk on 8/18/14. (dkals, ) (Entered: 08/18/2014) |
| 09/17/2014 | 51 | NOTICE OF APPEAL as to 49 Order, 50 Judgment by Plaintiff Marlon Walker (Filing fee $ 505, Receipt Number 1082-4050621) (Ruttenberg, Alison) (Entered: 09/17/2014) |
| 09/18/2014 | 52 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 51 Notice of Appeal filed by Marlon Walker to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Docket Sheet, # 2 Preliminary Record)(dkals, ) (Entered: 09/18/2014) |
| 09/18/2014 | 53 | USCA Case Number 14-1380 for 51 Notice of Appeal filed by Marlon Walker. (agarc, ) (Entered: 09/18/2014) |
| 10/02/2014 | 54 | TRANSCRIPT ORDER FORM re 51 Notice of Appeal by Plaintiff Marlon Walker (Ruttenberg, Alison) (Entered: 10/02/2014) |
| 10/02/2014 | 55 | TRANSCRIPT ORDER FORM re 51 Notice of Appeal by Plaintiff Marlon Walker (Ruttenberg, Alison) (Entered: 10/02/2014) |
| 10/06/2014 | 56 | LETTER TO USCA and all counsel certifying the record is complete as to 51 Notice of Appeal filed by Marlon Walker. A transcript order form was filed stating that a transcript is not necessary. ( Appeal No. 14-1380) Text Only Entry (dkals, ) (Entered: 10/06/2014) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 01/19/2015 13:38:03 | | | |
| **PACER Login:** | ar1355:2905378:0 | **Client Code:** | Gross |
| **Description:** | Docket Report | **Search Criteria:** | 1:13-cv-02142-RPM |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No.  13-cv-2142

MARLON WALKER

       Plaintiff

v.

SUSAN WHITE, DOC Division of Adult Parole, in her personal capacity for damages; GUILLERMO SAMUDIO, DOC Division of Adult Parole, in his personal capacity for damages; DANA MADRID, DOC Division of Adult Parole, in her personal capacity for damages; BRIAN STRUZESKI, DOC Division of Adult Parole, in his personal capacity for damages; ED THOMAS, Member of the Parole Board, in his personal capacity for damages; DENISE BALAZIC, Member of the Parole Board, in her personal capacity for damages; PATRICIA VAN WAAK, Member of the Parole Board, in her personal capacity for damages; JOHN O'DELL, Member of the Parole Board, in his personal capacity for damages; MICHAEL ANDERSON, Member of the Parole Board, in his personal capacity for damages; REBECCA OAKES, Member of the Parole Board, in her personal capacity for damages; ANTHONY YOUNG, Member of the Parole Board, in his personal capacity; BRANDON SHAFFER, Member of the Parole Board, in his personal capacity; ALFREDO PENA, Member of the Parole Board, in his personal capacity; JOE MARTIN MORALES, Member of the Parole Board, in his personal capacity;  BECKY LUCERO, Member of the Parole Board, in her personal capacity for damages; and JOHN DOE, Arkansas Valley Correctional Facility, in his personal capacity for damages;

       Defendants

_____

**REDACTED COMPLAINT AND JURY DEMAND**
_____

The Plaintiff Marlon Walker, by and through his attorney, Alison Ruttenberg, hereby complains against the Defendants as follows.

## JURISDICTION OF THE COURT

1.      This action arises under the Constitution and laws of the United States and is brought pursuant to Title 42 USC §1983.  Jurisdiction is conferred on this Court pursuant to Title 28 USC §1331.  Jurisdiction supporting the Plaintiff's claim for attorney fees and costs is conferred by 42 USC §1988.

2.      Venue is proper in the District of Colorado pursuant to 28 USC §1391(b).  All of the events relevant to the claims set forth in this Complaint occurred within the Denver Metro Area, Colorado.

## PARTIES

3.  At all times material to this Complaint, the Plaintiff Marlon Walker, was a citizen of the United States and the state of Colorado.  Mr. Walker has been unconditionally released from confinement at the Colorado Department of Corrections and is no longer on parole supervision.  Consequently, the Prison Litigation Reform Act, 42 USC 1997e does not apply to this civil rights case for damages.

4.      The Plaintiff comes from a large extended family, and his family is extremely important to him.  Because the Plaintiff was incorrectly designated as a "sex offender" by the DOC, there were members of his extended family that he was not allowed to have any contact with because they were under the age of 18.  These relatives were nieces, nephews and half siblings.  Plaintiff's parole officers placed the same irrational and unreasonable restrictions on the Plaintiff,

and denied the Plaintiff these familial relationships in violation of the Fourteenth Amendment.  These relatives are now adults, and the Plaintiff was cheated out of maintaining his relationship with these relatives, and is now estranged from some members of his extended family.

5.    Susan White, Guillermo Samudio, Dana Madrid, and Brian Struzeski are with the Colorado Department of Corrections ("DOC") Division of Adult Parole, the 745 Sherman Street office. Upon information and belief, White is the second in command at this office.  Samudio is Madrid's and Struzeski's supervisor.  Madrid has some sort of supervisory role over Struzeski.  These four Defendants are "persons" subject to 42 USC §1983 and are being sued in their personal capacity for nominal, compensatory and punitive damages as well as attorney fees and costs pursuant to 42 USC §1988.  At all times material to this complaint, these defendants were acting under color of state law, and their personal participation in the constitutional deprivations are set forth below.

6.    John Doe is the DOC official at Arkansas Valley Correctional Facility that made the determination to deprive the Plaintiff of good time credits after Plaintiff was returned to the DOC in January 2012.  He or she is a "person" subject to 42 USC §1983 and is being sued in his or her personal capacity for nominal, compensatory and punitive damages as well as attorney fees and costs pursuant to 42 USC §1988.  At all times material to this complaint, this Defendant was acting under color of state law.

7.    The remaining Defendants are current and former state parole board members.  Each one of them was a parole board member during one or

more times the Plaintiff was subjected to unconstitutional terms and conditions of parole, and are personally liable for damages.  They are "persons" subject to 42 USC §1983 and are being sued in their personal capacity for nominal, compensatory and punitive damages as well as attorney fees and costs pursuant to 42 USC §1988.  At all times material to this complaint, these defendants were acting under color of state law.

8.   Progressive Therapy Systems P.C., ("Progressive Therapy"), Sexual Offense Resource Services LLC ("SOARS"), Teaching Humane Existence Treatment program, Inc. ("T.H.E.") and RSA Inc., are Colorado corporations and limited liability companies, and are the only four sex offense treatment providers in the Denver Metro Area who have contracts with the Department of Corrections ("DOC") to provide sex offender "treatment" to parolees who have been designated as sex offenders by the DOC.

9.   The DOC treats all parolees that have been classified as sex offenders the same, without regard to the facts and circumstances of each case, without regard to the age of the alleged victim, without regard to the number of victims, and without regard to whether they have been convicted or acquitted of the alleged sex offenses.  When the Plaintiff was released into the community on parole, he was required to undergo **sex offense specific treatment** by Progressive Therapy, SOARS, THE or RSA.

10.    As part of this "**sex offense specific treatment**, Mr. Walker was required to admit to, accept responsibility and pass a polygraph for all of C.D.'s false allegations that Walker attempted to sexually assault him.  When Walker

Appellate Case: 14-1380 Document: 01019371905 Date Filed: 01/19/2015 Page: 16

failed to admit to and accept responsibility for C.D.'s false allegations of sexual misconduct (even though no sexual misconduct ever took place), then he was either denied entry into treatment or terminated from treatment.

11. RSA, SOARS, THE and Progressive Therapy have no "treatment" programs to offer parolees like Mr. Walker who are forced to undergo treatment as a term and condition of mandatory parole, but were found to be innocent of the underlying sexual misconduct. This places parolees like the Plaintiff in the catch 22 of having to admit to conduct that never took place in order to remain in treatment and out of prison. It is not possible to pass a polygraph examination and admit to and accept responsibility something that never took place.

12. The treatment providers contracted by the DOC are not peer reviewed, their sex offender treatment protocols are not peer reviewed, and the treatment programs are based on literature, studies and other data that is not peer reviewed by actual scientists or responsible mental health treatment providers. The assumptions, conclusions and so called research, that treatment providers such as THE and RSA base their treatment programs on, have no basis in legitimate peer reviewed scientific research. These assumptions include what THE asserts is the "fact" that all sex offenders have at least 100 victims, and unless the offender identifies these dozens of victims after several polygraph examinations, then the offender is in denial and not cooperating with treatment. Failure to identify these 100 or more victims can lead to termination of treatment even if the offender has only one actual "victim" or if the alleged victim lied and fabricated the allegation. Mr. Walker has no actual victims.

13.     RSA and THE in particular have been very activist in their "no cure" philosophy for adult sex offenders.  Their website advertises that their treatment "focuses on techniques designed to assist offenders to control a potentially life-long tendency toward deviant behavior."  The RSA Inc. website also states their "recognition that the criminal justice and social services systems play an indispensable role in getting offenders into treatment and keeping them there. Threat of system-imposed sanctions provide the motivation necessary for many sexual offenders to engage meaningfully in treatment. We recognize the importance of probation/parole officials and social service workers as co-equal partners in monitoring offenders residing in the community."  There is no indication that RSA, T.H.E. or the other treatment providers make any distinction between convicted sex offenders and men who are innocent of sex offenses, such as the Plaintiff.  Instead, these treatment providers have a one-size fits all philosophy that all men and women who are referred to them by parole officers, whether or not there was a factual basis for the originally mischarged sex offenses or instead have a "life-long tendency toward deviant behavior," for which there is "no known cure," and they must be kept in line with the "threat of system-imposed sanctions."

14.     Parolees have no ability to select their "treatment" provider, and instead, must go where they are directed by their parole officers.  Colorado General Assembly House Bill 2010-364 would have allowed sex offenders to choose among three treatment options.  This bill provided:  "Each offender entering treatment on or after July 1, 2010, shall be given a choice by his or her

supervising agency of at least three appropriate approved providers where available, unless the supervising agency documents in writing that, based on the nature of the program offered and the needs of the offender, fewer than three providers can meet the specific treatment needs of the offender and ensure the safety of the public."   After Greg Veeder, the owner of T.H.E., loudly and persistently complained in a targeted press campaign that the bill would be "financially ruinous" to him, Governor Ritter vetoed the bill on May 21, 2010. Upon information and belief, T.H.E. has been criticized for unethical conduct since that date.   T.H.E. employed a therapist named C.I., who used the alias "Bryce Gilmour" in order to hide his true identity and the fact he had a personal agenda.   C.I. is a victim of sexual abuse himself, and his goal is to punish and get even with offenders accused of sexual offenses.   Therefore he had a conflict of interest, and it was unethical for T.H.E. to employ him as a neutral and objective "therapist."   For that and other unethical conduct, agencies in the Denver metro area, including the Jefferson County Probation Department, have terminated the services of T.H.E. as a treatment provider for sex offense specific treatment.   There are other problems with Progressive Therapy.   Larimer County probation department refuses to let defendants on sex offender probation in Larimer County obtain treatment at Progressive Therapy, even if they are on concurrent parole and the parole officer directs them to Progressive Therapy.

**FACTUAL BACKGROUND**

15.   Mr. Walker was charged in Denver County District Court, (in case number 2005CR3380) to second degree burglary, assault in the second degree,

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 19

criminal attempt to commit sexual assault and unlawful sexual contact, offenses that allegedly occurred on May 13, 2005 at about 4:00 a.m. at 3801 Quebec Room 1237.   The alleged victim was C...   C.D. lied to the police and made various false and incredible allegations against the Plaintiff that were contradicted by the other witnesses.

16.    After Dawn Weber, the Denver District Attorney investigated, she determined that C.D.'s allegations regarding sex assault and sexual contact were false.   As a result, the prosecution entered into a plea agreement for second degree assault and stipulated that there was no factual basis for any type of sexual offense.   As a result, Mr. Walker cannot be compelled to register as a sex offender.

17.    Mr. Walker was sentenced to the Department of Corrections ("DOC") for 6 years plus 3 years mandatory parole for the second degree assault to which he pleaded guilty.   In the Denver District Court's November 9, 2005 Order accepting the plea, there is no finding that Mr. Walker is a sex offender, or that he has to be evaluated for treatment as a sex offender.   Judge Habas stated on the record, words to the effect:   "Defendant is urged to undergo all treatment programs offered at the DOC."   The Judge was just making a general remark, similar to what Judges almost always say, encouraging Mr. Walker to avail himself of any appropriate program at the DOC; however, the Judge was, in no way, referring to sex offender treatment.   Sex offender treatment was never an issue with respect to Mr. Walker's sentence, and the sentencing order states that there was no factual basis for any sexual offense.   On April 13, 2006, Mr. Walker

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 20

was sentenced to five years DOC in an unrelated Arapahoe County District Court case number 2005CR2072, for robbery, the sentence to run concurrent with the Denver case. There were no allegations of sex assault or sexual misconduct of any kind in the Arapahoe County District Court case, and this Arapahoe County District Court case has no relevance to the issues in the case at bar.

18.   On or about February 27, 2006, the DOC designated Mr. Walker as a S4-T "sex offender" in violation of DOC Regulation 700-19 Part IV (B). According to this regulation, since Mr. Walker had a judicial determination of "no sexual factual basis," his mandated classification was S4-X for "excluded." Pursuant to DOC Regulation 700-19 Part IV (A) and (B), an offender with the "X" classification means that treatment will not be recommended unless there are facts from a separate allegation that may warrant a change in the sexual violence needs classification.   Regulation 700-19 Part IV (B), an offender with the "T" classification cannot be recommended for sex offense specific treatment without the due process afforded in AR 750-02.   However, the "due process" procedures set forth in AR 750-02 is not what the Colorado General Assembly mandated in CRS 16-22-103(2)(d)(III).   Mr. Walker was never given a due process hearing as required by CRS 16-22-103(2)(d)(III) and never waived his right to that hearing. Mr. Walker was not given the due process set forth in AR 750-02 either.   On June 1, 2007, Mr. Walker's classification was changed to S4 and he was provided written notice of the requirement to undergo sexual offense specific treatment.

19.     The DOC claims that Mr. Walker engaged in conduct on or about November 4, 2009 that would justify designating him as an S3 sex offender.  Ms. Walker never admitted to intentionally engaging in this conduct.  Additionally, Mr. Walker was never adjudicated an S3 sex offender pursuant to DOC Regulation AR 700-19 Part IV (A) for any conduct Mr. Walker was alleged to have engaged in while in the DOC.   Mr. Walker was never given the due process hearing required by CRS 16-22-103(2)(d)(III) for adjudication as an S3 sex offender. Therefore, the Defendants' attempt to re-characterize Mr. Walker as an S3 offender, years after the fact, based on the alleged November 4, 2009 incident, in order to justify their unconstitutional actions in violating the plea agreement, is both disingenuous and illegal.

20.     Because Mr. Walker was designated as an S4 sex offender, he lost 224 days good time credits for not participating in sexual offense specific treatment while in the DOC.  However, he could not participate in sex offender treatment in the DOC because the DOC does not offer sex offender treatment to offenders who have been designated as S4.   The DOC only has funding to provide sexual offense specific treatment to S5 offenders with indeterminate sentences.   However, Mr. Walker participated in the treatment programs that were available.   He earned 45 days for completion of the GED program, an additional 30 days for completion of 12 semester hours of post secondary studies and an additional 5 days for completion of Step Up therapeutic program, first module, Life Skills Program.

21. Mr. Walker was released on his Mandatory Release Date on or about January 12, 2011. Defendant Becky Lucero imposed the following unconstitutional terms and conditions of his parole :

a. That he participate in alcoholics anonymous and/or narcotics anonymous (in violation of the First Amendment).

b. That he have no "contact" with minors, including members of his own family (in violation of the First and Fourteenth Amendments).

c. And that he undergo sexual offense specific treatment, which includes having to admit to, accept responsibility for and pass a polygraph examination regarding C.D.'s false allegations that Walker attempted to sexually assault him on May 13, 2005. This violated Mr. Walker's Fifth and Fourteenth Amendment rights to be free from compulsory self incrimination. As set forth below, the Defendants claim ignorance of the fact that there was no judicial determination of no factual basis for the sex assault allegations as part of Mr. Walker's plea agreement.

22. Defendant Struzeski directed that Mr. Walker report to SORS for sexual offense specific treatment. Struzeski recklessly provided SORS with false and misleading information regarding Mr. Walker's conviction. Struzeski only provided the original police report, with that contained C.D.'s false allegations, and failed to submit the District Attorney's findings that there was no factual basis for C.D.'s false allegations of any sex offense. Struzeski did so pursuant to Samudio's unconstitutional policy of providing false and misleading information to the treatment providers, and not providing the treatment providers with any

documents except for the initial police report.   Neither Samudio nor Struzeski

even tried to gain access to the documents contained in Denver District Court file

in case 2005CR3380, and if they had done so, they would have discovered the

plea agreement that sets forth the fact that there was no factual basis for the

false allegations of sex assault.   Samudio completely delegates the responsibility

of determining whether sexual offense specific treatment is appropriate or

necessary to the treatment provider and will not challenge the treatment

provider's recommendation.   The treatment provider has a financial motive to

recommend treatment because if treatment is recommended for a parolee, then

the state of Colorado will pay the treatment provider for that treatment.   The

treatment providers charge the state of Colorado hundreds of dollars per month

per offender for this "treatment."

23.   SORS terminated Mr. Walker from sexual offense specific

treatment because he refused to admit to and accept responsibility for C.D.'s

false allegations.   Dr. Lee, the Clinical Director of SORS wrote the August 10,

2011 termination letter to Defendant Struzeski.   It is obvious that this letter is just

a fill in the blank template, which not specific to Mr. Walker.   There was at least

one place in the letter where Dr. Lee forgot to refer to Mr. Walker and just

referred to the Mr. xx on the termination template letter.   Defendant Struzeski did

not even bother to question Dr. Lee regarding this, and in accordance with

Samudio's police of complete deference to the treatment provider, Struzeski just

rubber stamped the provider's decision to terminate Mr. Walker from treatment.

Defendant Madrid ordered Mr. Walker to be arrested on or about August 10,

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 24

2011 for violating the terms and conditions of his parole as a result of being terminated from sexual offense specific treatment.  The only reason cited by Madrid for this unconstitutional deprivation of Mr. Walker's liberty is that Mr. Walker was terminated from sexual offense specific treatment.

24.   The order to engage in sexual offense specific treatment was an unconstitutional term and condition of Mr. Walker's parole.  A term and condition of Mr. Walker's plea agreement was that there was no factual basis to accuse him or concluding that he was a "sex offender."  Therefore, Mr. Walker could not be required to register as a sex offender or to engage in sexual offense specific treatment as a "sex offender."   State officials are required pursuant to the Fourteenth Amendment's requirement that an accused be treated with fairness through the criminal process to enforce Mr. Walker's plea agreement since Mr. Walker fully performed by pleading guilty and serving every day of his DOC sentence.  The right to fairness requires, in turn, that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. This is a clearly established constitutional right pursuant to 1979 United States Supreme Court precedent.

25.   On or about September 9, 2011, Defendant Struzeski directed Mr. Walker to go to T.H.E. for sexual offense specific treatment.  On or about November 15, 2011, T.H.E. terminated Mr. Walker from treatment because Mr. Walker would not lie and state that he sexually assaulted C.D..  T.H.E. Therapist Brooke Rosen concluded that because Mr. Walker refused to acknowledge an

event that never occurred that therefore Mr. Walker is a sexual deviant with a "high risk to reoffend." Rosen also misrepresented the facts and stated that Mr. Walker was ordered by a court to undergo **sexual offense specific treatment**. The Denver District Court never ordered Mr. Walker to undergo **sexual offense specific treatment and concluded that there was no factual basis for** C.D.'s false **allegations of sexual assault.** Rosen's misrepresentations and conclusions by Brooke Rosen are not based on any peer-reviewed science or scientific research, is contrary to the standard of care for psychologists and therapists, violates the professional standards of conduct for psychologists and therapists. Struzeski has an obligation to base revocation decisions on facts, not misrepresentations, and to not rely on unethical and incompetents who hold themselves out as therapists or delegate the determination of whether Mr. Walker is in violation of his parole to an incompetent and unethical therapist. T.H.E. has behaved so unethically and incompetently since 2010 that other agencies in the metro area, such as the Jefferson County Probation Department, refuses to refer individuals to them for treatment. Samudio and White had an obligation to insure that their subordinate parole officers do not refer parolees to incompetent and unethical treatment providers, and that his subordinate parole officers do not delegate to the treatment providers the decision as to whether or not the parolee will be in **sexual offense specific treatment**.

26. On or about November 25, 2011, Defendants Struzeski and Madrid concluded that Mr. Walker had violated the terms and conditions of his parole for no reason other than Brooke Rosen's November 15, 2011 letter. Mr. Walker was

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 26

arrested upon the order of Struzeski and Madrid, and was ordered to appeal before the parole board on December 19, 2011.   Mr. Walker's parole was revoked and he was returned to the DOC for 130 days.  As a result, Mr. Walker could not complete his college coursework at the Community College of Aurora. He was enrolled in English, Business and Mathematics courses.

27.   The Defendants claim ignorance of the facts set forth in paragraph 16-17 and 24 above, and claim ignorance of the fact that Mr. Walker's plea agreement expressly states that there is no factual basis for the sex offense allegations.  The Defendants were expressly placed on notice of these facts at the December 19, 2011 parole revocation hearing.  The statute of limitations, for the Plaintiff's claim in this Complaint, commenced on December 19, 2011.  He is suing for the unlawful deprivation of his liberty, after his parole was revoked for violating terms and conditions of his parole that are unconstitutional.

28.   The Plaintiff was incarcerated at Arkansas Valley Correctional facility.  John Doe was the DOC official at Arkansas Valley for was responsible for depriving Mr. Walker of good time credits for not participating in sexual offense specific treatment.   Requiring Mr. Walker to participate in sexual offense specific treatment violated Mr. Walker's Fourteenth Amendment rights as set forth in paragraph 24 above.  However, Mr. Walker could not participate in sex offender treatment in the DOC because the DOC does not offer sex offender treatment to offenders who have been designated as S4.  The DOC only has funding to provide sexual offense specific treatment to S5 offenders with indeterminate sentences.  Mr. Walker participated in the treatment programs that

were available.  Mr. Walker was assaulted by other inmates while in the DOC at Arkansas Valley Correctional Facility, and sustained physical injuries and suffered emotional distress.  If the Defendants had not unconstitutionally terminated his parole, for violating unconstitutional terms and conditions of his parole, then he would have never sustained these injuries.  Therefore, the Defendants are liable to the Plaintiff for his injuries and emotional distress as a result of being assaulted while unconstitutionally confined at Arkansas Valley Correctional Facility.

29.    The Plaintiff was released from the DOC back onto parole on or about March 15, 2012 with the same unconstitutional terms and conditions of parole as described in paragraph 21 above.

30.    On August 16, 2012, Struzeski sent an email to SORS and lied about the records in Mr. Walker's court file (Denver District Court case 2005CR3380).  By this time, Struzeski was put on notice of the correct facts as set forth in paragraph 27 above.  Struzeski's statement that "the court appears to be silent on sexual factual basis" was a **_bare faced lied_** and in direct contradiction to the plea agreement.  Struzeski told a second lie and stated that Mr. Walker admitted to intentionally fondling or touching his cellmate's penis, when all Mr. Walker admitted to was accidentally bumping into his cellmate's groin area when both men were fully clothed.  Struzeski told a third lie by omission by claiming that Denver District Court Judge Habas' statement "Defendant is urged to undergo all treatment programs offered at DOC" meant that Judge Habas was urging Mr. Walker to undergo sexual offense specific

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 28

treatment in the DOC.  SORS relied on these three lies, and rejected Mr. Walker for treatment.

31.     Because SORS rejected Mr. Walker for sexual offense specific treatment, Struzeski filed a parole revocation complaint on September 11, 2012. After a hearing on or about October 1, 2012, the decision was deferred and Mr. Walker was sent to another treatment provider, this time Progressive Therapy. Mr. Walker told Progressive Therapy, in writing, that he would willingly participate in treatment for the assault for which was convicted, but would not admit to or accept responsibility for allegations that were lies and never occurred (and more importantly were dismissed by the District Attorney as lies and not supported by a factual basis).

32.     On September 13, 2012 Defendant Madrid lied in an email, sent to a random member of the public, regarding Mr. Walker, and repeated the same three lies set forth in paragraph 30 above.

33.     White thinks that she has been given the authority by the Attorney General's office to order parolees, such as Mr. Walker, and can order her subordinate parole officers to order parolees, such as Mr. Walker, to engage in sexual offense specific treatment in violation of the terms of the parolees' plea agreement.   In a September 28, 2012 email to a random member of the public, Defendant White stated that she is entitled to rely on the erroneous advice of the Attorney General's office that the "court cannot dictate how an offender is classified and supervised by the DOC and specifically that the judge has no jurisdiction over the offender once he is in custody of the DOC."   Therefore,

according to White, the DOC and Parole Division is entitled to intentionally and recklessly violate the terms of the plea agreement if they want to upon their whim and caprice.   However, this is contrary to 1979 United States Supreme Court precedent, and violated Mr. Walker's Fourteenth Amendment rights.   While it might be correct that Judge Habas cannot force the DOC to do anything, that does not mean that Defendants White and her subordinate parole officers are free to flagrantly violate Mr. Walker's Fourteenth Amendment rights by refusing to enforce the plea agreement.   Additionally, White is not insulated from personal liability, for compensatory and punitive damages, for relying on this incorrect and inaccurate legal opinion.   A State official has qualified immunity only if the constitutional right was not clearly established (which it was in this case) not because she stupidly relies on the malpractice of an ignorant attorney in the Attorney General's office.   Defendant White also committed a crime pursuant to state law by quoting from sealed documents in Mr. Walker's court file in this September 28, 2012 email to a random member of the public.   Defendant White intentionally addressed her email to this member of the public, knowing that the recipient was not a licensed attorney who had an attorney-client relationship with Mr. Walker.

33.     Progress Therapy rejected Mr. Walker for treatment and Struzeski filed another parole revocation complaint on or about December 12, 2012.   The allegation was that Progressive Therapy found that the Plaintiff was "not amenable to sex offense specific therapy" due to maintaining his innocence of any sex offense.   The Plaintiff had another parole board hearing on or about

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 30

January 7, 2013.  The hearing officer refused to hear or consider any evidence regarding the Plaintiff's plea agreement and whether it was lawsuit to require that he participate in sexual offense specific treatment.  The Hearing Officer stated that the only evidence he would consider were the Plaintiff's terms and conditions of parole, and whether he violated those conditions.  The Plaintiff's parole was revoked on or about January 18, 2013 for the same unconstitutional reason as before:  that he violated the unconstitutional term and condition of parole directing him to engage in sexual offense specific treatment.  Mr. Walker never refused to engage in sexual offense specific treatment, he just refused to admit to and accept responsibility for the false allegations that never occurred.

.

## CLAIM FOR RELIEF
**Claim for compensatory and punitive damages against all Defendants for violating the Plaintiff's First, Fifth and Fourteenth Amendment Rights**
**THE PLAINTIFF REQUESTS A JURY TRIAL ON THIS CLAIM**

34.   The following terms and conditions of the Plaintiff's mandatory parole were unconstitutional and violated the Plaintiff's First, Fifth and Fourteenth Amendment rights:

(a)   The requirement that the Plaintiff engage in sex offender treatment without also ordering the state contracted sex offender treatment providers to not arbitrarily refuse to provide him the treatment and/or not arbitrarily or capriciously terminate him from treatment for merely exercising his constitutional rights violates the Plaintiff's Fourteenth Amendment right to due process of law;

(b)     The requirement that the Plaintiff cannot have any contact with minors, including members of his own family violate his fourteenth right to familial relationships;

(c)     The requirement that the Plaintiff participate in alcoholics and narcotics anonymous, which is a faith based treatment program violates the Plaintiff's First Amendment right to be free from being compelled to attend religious services and programs;

(d)     The requirement that Mr. Walker admit to, accept responsibility for and pass a polygraph admitting to alleged sexual misconduct that formed the basis of charges for which he was acquitted, and incarcerating him as a parole violator if he does not admit to, accept responsibility for and pass a polygraph admitting to the alleged sexual misconduct that formed the basis of charges for which he was previously tried and acquitted by the jury violates Mr. Walker's First and Fifth Amendment rights to free speech and be free from double jeopardy.

35.     Violating the Plaintiff's parole, and depriving him of his liberty as a result, in December 2011 and January 2013 because he failed to comply with unconstitutional terms and conditions of parole violated the Plaintiff's First, Fourth, Fifth and Fourteenth Amendment rights.  The Plaintiff has a First, Fifth and Fourteenth Amendment right to challenge the unconstitutional conditions of his parole.

36.     White, Madrid, Samudio, Struzeski and the parole board members committed a constitutional tort against the Plaintiff by placing him in the Catch 22

of imposing a term and condition of parole, that he engage in sex offender treatment from RSA, Progressive Therapy, THE or SORS, when he had no control over whether these treatment providers would accept him into treatment. White, Madrid, Samudio, Struzeski and the parole board members committed a constitutional tort against the Plaintiff by failing to enforce the terms of his plea agreement, and forcing him to engage in actions that were in violation of his plea agreement and he specifically relied on that he would not have to do in exchange for pleading guilty to the second degree assault.

37.     The Plaintiff is not suing because of his erroneous S4 sex offender classification.   Instead, he is suing the Defendants for the unconstitutional deprivation of his liberty in December 2011 and again in January 2013 in violation of his plea agreement and for allegedly violating unconstitutional terms of his parole.   He is also suing the Defendants for the collateral consequences of being placed in unlawful incarceration, to include the loss of his job, apartment, course work in College and for having to suffer assaults from other inmates while wrongfully incarcerated.

38.     The Plaintiff has suffered emotional distress and out of pocket damages resulting from the Defendants' violations of his constitutional rights in an amount to be determined at trial.   The Plaintiff also seeks nominal damages against each Defendant to vindicate the constitutional deprivations.

39.     The Defendants acted recklessly, knowingly, intentionally, willfully, wantonly and with deliberate indifference in violation of the Plaintiff's

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 33

constitutional rights, and the Defendants' intentional misconduct entitle the Plaintiff to an award of punitive damages.

WHEREFORE, the Plaintiff prays the Court enter an Order as follows:

(1) Nominal, Compensatory and Punitive damages against all the Defendants in an amount to be determined at trial.

(2) Prejudgment interest.

(3) Attorney fees and costs.

(4) All other relief that is just and proper.

DATED September 2, 2013.

Respectfully submitted,

/s/ Alison Ruttenberg

Alison Ruttenberg
PO Box 19857
Boulder, CO  80308
(720) 317-3834
Fax:  (888) 573-3153
Ruttenberg@me.com

**Attorney for the Plaintiff**

Address of the Plaintiff:

Marlon Walker
16409 Oakmoor Pl
Parker CO  80134

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 34

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02142-RPM

MARLON WALKER,

     Plaintiff,

v.

SUSAN WHITE, Division of Adult Parole, in her personal capacity for damages,
GUILLERMO SAMUDIO, Division of Adult Parole, in his personal capacity for damages,
DANA MADRID, DOC Division of Adult Parole, in her personal capacity for damages,
BRIAN STRUESKI, DOC Division of Adult Parole, in his personal capacity for damages;
ED THOMAS, Member of the Parole Board, in her personal capacity for damages,
DENISE BALAZIC, Member of the Parole Board, in her personal capacity for damages,
PATRICIA VAN WAAK, Member of the Parole Board, in her personal capacity for damages,
JOHN O'DELL, Member of the Parole Board, in his personal capacity for damages,
MICHAEL ANDERSON, Member of the Parole Board, in his personal capacity for damages,
REBECCA OAKES, Member of the Parole Board, in her personal capacity for damages,
ANTHONY YOUNG, Member of the Parole Board, in his personal capacity for damages,
BRANDON SHAFFER, Member of the Parole Board, in his personal capacity for damages,
ALFREDO PENA, Member of the Parole Board, in his personal capacity for damages,
JOE MARTIN MORALES, Member of the Parole Board, in his personal capacity for damages,
BECKY LUCERO, Member of the Parole Board, in his personal capacity for damages,
JOHN DOE, Arkansas Valley Correctional Facility, in his personal capacity for damages,

     Defendants

---

### MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(6)

Defendants Madrid, Morales, O'Dell, Oakes, Pena, Samudio, Shaffer, and Struzeski,[1]

through their counsel, the Colorado Attorney General, hereby submit the following Motion to

Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6).  In Support Therefore, Defendants states as follows:

### NATURE OF THE CASE

Plaintiff is a former inmate who was incarcerated  in the Colorado Department of

Corrections, and, at various times, released to parole, who brings suit for monetary damages

---

[1] At this time, upon information and belief, no other Defendants have been served, and therefore
no appearance is made on their behalf.

pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights.  Plaintiff pled

guilty to charges of second degree burglary and assault in the second degree in Case No.

2005CR3380.[2]  Doc. 5, Redacted Complaint and Jury Demand, p. 7, para. 15.  He was also

charged with criminal attempt to commit sexual assault and unlawful sexual contact.  *Id*.

However, the prosecutor agreed to dismiss those charges as part of the plea agreement, pursuant

to which the prosecution allegedly stipulated that there was no factual basis for a sex offender,

which meant that Plaintiff is not required to register as a sex offender.  *Id*.  However, the

sentencing Judge ordered that Plaintiff "is to undergo all treatment programs offered at the

DOC."[3]  *Id*., p. 8, para. 17.

    At that time, Colorado law stated that the CDOC had sole discretion in matters

concerning the sex offender classification of offenders while they remain in CDOC custody,

regardless of the findings of the court or stipulations by a district attorney.  § 16-22-103(d),

COLO. REV. STAT. (2007)[4]; *Reeves v. Colorado Dep't. of Corrs.,* 55 P.3d 648, 652 (Colo.App.

2007); *see also*, *Vondra v. Colo. Dep't of Corr*., 226 P.3d 1165, 1170 (Colo. App. 2009).

Plaintiff was thus afforded the opportunity for an administrative hearing, and classified as an S4

sex offender on February 27, 2006.  Doc. 5, p. 9, para. 18.  He alleges he was notified on June 1,

---

[2] Plaintiff was also sentenced on a robbery conviction in Case No. 2005CR2072, Arapahoe District Court, Colorado, in April of 2005.

[3] Plaintiff asserts that this statement by the sentencing court did not refer to sex offender treatment.  However, the Court's statement speaks for itself and Plaintiff's interpretation of the same is not binding on this Court.

[4] The applicable statutory language stated: "Notwithstanding any other provision of this section, **any stipulation by a district attorney and any finding of the court** with regard to whether the offense of which a person is convicted includes an underlying factual basis involving unlawful sexual behavior **shall not limit or otherwise affect the ability of the department of corrections to make such determination in accordance with department procedures for purposes of classification and treatment** of any person sentenced to the department of corrections."  § 16-22-103(d), COLO. REV. STAT. (2007) (emphasis added).

2007 that he would be required to undergo sex offender treatment.  *Id.*  In addition, Plaintiff apparently committed a disciplinary violation in November of 2009 that also justified his classification as a sex offender.  *Id.*, p. 10, para. 19.

Plaintiff alleges that he was released to parole on January 12, 2011, and asserts that Defendant Lucero imposed unconstitutional parole conditions, including the requirement that he participate in Alcoholics Anonymous and/or Narcotics Anonymous, in alleged violation of his First Amendment rights; that he have no contact with minors, including members of his own family; and that he undergo sexual offense specific treatment, which included the requirements that he admit to and accept responsibility for the alleged sexual offense, and that he pass polygraph examinations regarding the same, in alleged violation of his Fifth and Fourteenth Amendment rights to be free from compulsory incrimination.  *Id.*, p. 11, para. 21 (a)-(c). Plaintiff alleges that thereafter, he was wrongfully required to undergo sex offender treatment that required him to admit that he engaged in sexually assaultive conduct and wrongfully terminated from sex offender treatment programs as a result of his refusal to do the same, which led to the termination of his parole on two occasions.  Thus, Plaintiff alleges he was unlawfully incarcerated.  Defendants Madrid, Morales, O'Dell, Oakes, Pena, Samudio, Shaffer, and Struzeski are all members of either the Parole Division or the Parole Board.  Doc. 5, p. 3 paras. 3-7.

## STANDARD OF REVIEW

A case may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)); *Forest Guardians v. Forsgren,* 478 F.3d 1149, 1160 (10th Cir. 2007).

Neither conclusory nor implausible allegations are sufficient to satisfy Rule 8. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (applying *Bell Atlantic* to all civil actions in federal courts.). For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo.,* 154 F.3d 1124, 1126 (10th Cir. 1998). The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. The court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

4

## ARGUMENT

### I.    Plaintiff's claims are barred by the statute of limitations.

Though the expiration of the statute of limitations is an affirmative defense for which Defendants bear the burden of proof, a complaint may be dismissed under Rule 12 if it is clear from the complaint itself that the claims are barred by an affirmative defense such as the statute of limitations. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1310 n. 3 (10th Cir. 1999). A claim brought pursuant to 42 U.S.C. § 1983 is barred by the statute of limitations unless it was commenced within two years of the incident giving rise to the claim. *Blake v. Dickason*, 997 F.2d 749 (10th Cir. 1993). Although state law controls the statute of limitations period that applies to § 1983 claims, federal law controls the determination as to when the claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).

A plaintiff may have knowledge of an injury even if he is unaware of all of the evidence ultimately relied on for his cause of action. *Baker v. Board of Regents v. State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993). A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). For the purposes of determining when a § 1983 claim accrues, "[t]he injury that is the 'basis of action' in a *§ 1983* claim is the violation of a constitutional right." *Romero v. Lander*, 461 Fed. Appx. 661, 667; 2012 U.S. App. LEXIS 2036 (10th Cir. 2012). "[T]he statute of limitations on a *§ 1983* claim accrues when 'the constitutional injury, the injury which triggers the statute of limitations for purpose of *§ 1983*,

5

occurred . . . , not when the consequence of that constitutional injury . . . manifested itself.'" *Id.* (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998).

The injury that forms the basis of a § 1983 claim is the constitutional violation, and the Tenth Circuit has stated that "to determine when [a plaintiff's] claims accrued, the relevant inquiry is when [the plaintiff] knew, or had reason to know, of the alleged constitutional violations that he asserted." *Romero v. Lander*, 461 Fed. Appx. 661, 667 (10th Cir. 2012) (unpublished). In *Romero*, the Tenth Circuit reviewed the dismissal of an inmate's claim that he had been wrongly classified as a sex offender, and was wrongfully required to participate in sex offender treatment that necessitated his admission that he committed a sex offense. *Id.*, pp. 663-665. Just like Plaintiff in this case, Mr. Romero was convicted of a non-sex offense, in his case Trespassing. *Id.* Like the Plaintiff in this case, Mr. Romero was initially charged with a sex offense, but the prosecution dismissed the charges as part of a plea bargain, and the sentencing court expressed doubt that a sex offense had occurred. *Id.* Nevertheless, pursuant to its authority over classification, the CDOC classified Mr. Romero as a sex offender in conjunction with an administrative hearing in 2000, just as with Plaintiff in this case in 2006. *Id.*

Mr. Romero argued that he had been wrongly classified as a sex offender upon his initial incarceration in 2000, and that he continued to suffer the consequences of his sex offender classification when he was released to parole and made to undergo sex offender treatment, as well as when he was re-incarcerated in 2009 on new charges. *Id.* Like Plaintiff, Mr. Romero alleged these consequences included violations of his Fifth Amendment right to be free from self-incrimination, and the violation of his substantive due process rights. *Id.* at 665. The Tenth Circuit affirmed the dismissal of his claims based upon the expiration of the two-year statute of limitations, finding that his claims accrued in 2000. *Id.* at 666-667. In finding that his claims

had accrued in 2000 and therefore had long since expired by the time he brought suit in 2009, the

Tenth Circuit stated that all of the constitutional claims asserted in Mr. Romero's amended

complaint related to two injuries – his classification as an S-4 sex offender and the requirement

that he admit to being a sex offender. *Id*. at 667-669.  The Tenth Circuit determined that  Mr.

Romero knew of these injuries in 2000, and his constitutional claims based on those injuries

accrued at that time. *Id*.  Mr. Romero argued that his claims accrued, at least in part, in 2009

when his classification as a sex offender was re-imposed by the CDOC and he again suffered the

consequences of that classification. *Id.*  However, the Tenth Circuit rejected this argument,

holding "[t]he injuries that Mr. Romero alleges to have suffered in 2009 are not separate and

discrete constitutional injuries from the injuries he claims to have suffered in 2000." *Id.* at 667

(citing *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (noting that the statute of

limitations on a § 1983 claim accrues when "the constitutional injury, the injury which triggers

the statute of limitations for purpose of § 1983, occurred ..., not when the consequence of that

constitutional injury ... manifested itself")).

Similarly, in this case, the majority of Plaintiff's claims stem from his alleged wrongful

classification as a sex offender, which he alleges occurred in 2006, and again in 2009.  Doc. 5,

pp. 9-10, paras. 18-19.  The claims associated with Plaintiff's allegedly wrongful sex offender

classification include his claims that he was wrongfully required to undergo sex offender

treatment, his claims that he was wrongfully required by his sex offender treatment providers to

admit to having committed a sex offense, his claims that he was wrongfully required to pass

polygraph testing about having committed the sex offense, his claims that he was restricted from

having contact with minors, and his claims that he was wrongfully terminated from sex offender

treatment and parole as a result of his terminations from sex offender treatment.  These claims

accrued when Plaintiff was classified as a sex offender and he became aware that he would be required to undergo sex offender treatment. *Romero*, 461 Fed. Appx. at 667. According to Plaintiff he was first classified as a sex offender in 2006, and notified that he was required to undergo treatment in 2007. Doc. 5, p. 9, para. 18. He was again classified as a sex offender in 2009. *Id.*, p. 10, para. 19. Thus, under the holding of *Romero*, the statute of limitations on his claims began to run from the date of his alleged wrongful sex offender classification, which occurred *at the latest* by 2009, if not sooner. Therefore, at the latest, Plaintiff was required to file these claims by 2011. He did not file this case until two years later, on August 11, 2013. Doc. 5, p. 1. Accordingly, he missed the statute of limitations and his claims are time-barred.

As to Plaintiff's claims regarding unconstitutional parole conditions not related to his sex offender classification, such as the requirement that he participate in Alcoholics Anonymous and/or Narcotics Anonymous, Plaintiff alleges that these parole conditions were imposed on January 21, 2011. Doc. 5, p. 11, para. 21. Accordingly, such claims accrued on that date, and Plaintiff was required to file by January 12, 2013. *Romero*, 461 Fed. Appx. at 667. As noted, he did not file this case until August 11, 2013, and therefore he missed the statute of limitations with regard to these claims. Further, even if Plaintiff's claims regarding the parole conditions related to his sex offender classification discussed above were not deemed to have accrued until the date that these parole conditions were imposed, as Plaintiff expressly alleges these parole conditions were imposed on January 21, 2011, these claims are still time-barred, and should therefore be dismissed. *Romero*, 461 Fed. Appx. at 667.

**II.      In the alternative, Plaintiff's claims that his parole was unlawfully revoked due to allegedly unconstitutional parole conditions are barred by *Heck v. Humphrey*.**

Plaintiff makes several claims asserting that his parole was unlawfully revoked due to the allegedly unconstitutional conditions of his parole.  Plaintiff explicitly alleges that "he is suing the Defendants for the unconstitutional deprivation of his liberty in December 2011 and again in January 2013 in violation of his plea agreement and for allegedly unconstitutional conditions of parole."  Doc. 5, p. 21, para. 37.  Plaintiff alleges he is seeking damages for the collateral consequences of his "unlawful incarceration."  *Id.*  Plaintiff's claims for unlawful confinement encompass Plaintiff's claims that Defendants allegedly wrongfully required Plaintiff to undergo sex offender treatment as a parole condition, Plaintiff's claims that Defendants required Plaintiff to utilize sex offender treatment care providers who Plaintiff contends arbitrarily refused to provide him treatment and/or arbitrarily terminated him from treatment, and Plaintiff's claims that he was wrongfully required to pass a polygraph test, leading to his termination from sex offender treatment and parole, and any other alleged unconstitutional parole conditions that resulted in the allegedly wrongful revocation of Plaintiff's parole.

These claims are all barred by the "favorable termination" requirement set forth in *Heck v. Humphrey.*  In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the U.S. Supreme Court held that a state prisoner cannot bring a § 1983 action for damages "if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  That is, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's

9

issuance of a writ of habeas corpus." *Id.* at 486-87.   "A claim for damages that has not been so

invalidated is not cognizable under § 1983." *Id.* at 487.

As noted, Plaintiff explicitly alleges that the revocation of his parole was wrongful, that he

was unlawfully confined as a result, and he seeks damages that he asserts were the collateral

consequences of alleged unlawful incarceration.  Doc. 5, p. 21, para. 37.  Plaintiff's claims that he

was unlawfully and wrongfully confined due to the revocation of his parole necessarily imply the

invalidity of his parole revocation.  The "favorable termination" requirement of *Heck* applies to

claims for damages arising out of alleged wrongful parole revocations.  *Crow v. Penry*, 102 F.3d

1086, 1087 (10th Cir. 1996); *see also Hudson v. Mason*, 445 F. App'x 139, 140 (10th Cir. 2011)

(internal quotations omitted) (affirming dismissal of civil rights action stemming from parole

revocation when the parole revocation decision was not invalidated, stating "*Heck* also bars

proceedings challenging the fact or duration of parole.").

Parolees who have had their parole revoked may challenge the alleged wrongful revocation

of their parole pursuant to Colorado Crim. P. 35(c)(2)(VII).[5]   Therefore, Plaintiff was required to

first challenge the alleged wrongful revocation of his parole in the state court or through one of

the other means identified by *Heck*, and to have thereby obtained a "favorable termination" of

the same prior to bringing suit for damages in the federal court pursuant to 42 U.S.C. § 1983.

*Heck v. Humphrey*, 512 U.S. at 487.  Plaintiff has the burden to establish that he has done so.  *Id.*

review of the federal court's records via PACER and review of the Colorado court records show

that Plaintiff has not done so.  Accordingly, his claims for monetary damages for the alleged

unconstitutional parole conditions that resulted in his alleged unlawful confinement are barred.

---

[5] In addition, Plaintiff could have challenged his sex offender classification stemming from his
hearing in 2006 or his disciplinary conviction following a hearing in 2009 pursuant to C.R.C.P.
106(a)(4).

10

040

**III.      In the alternative, Plaintiff fails to state a viable claim for the infringement of his First Amendment rights under the Establishment Clause.**

Plaintiff alleges that his First Amendment rights as protected by the Establishment Clause were violated by parole conditions concerning participation in Alcoholics Anonymous and Narcotics anonymous, because these are faith-based programs.  However, his allegations are bare and conclusory, and therefore Plaintiff fails to provide sufficient factual allegations upon which the Court can conclude that his First Amendment rights were violated, as required to state a viable claim.  *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.  Further, Defendants are entitled to qualified immunity with regard to this claim.

When a defendant asserts qualified immunity, the plaintiff bears a heavy two-part burden of proof.  *Cortez*, 478 F.3d at 1114.  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendants qualified immunity."  *Gross*, 245 F.3d at 1156.  To overcome a defendant's qualified immunity, the plaintiff must show: (1) defendant violated plaintiff's federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation in the circumstances faced by the defendant.  *See Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).  Qualified immunity applies in "all but the most exceptional cases," *Tonkovich*, 159 F.3d 504, 516 (10th Cir. 1998), and protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In discussing qualified immunity, the Supreme Court explained:

A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that **every** "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question **beyond**

> **debate**. *See ibid.; Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (U.S. 2011) (emphasis added). The Supreme Court again recently considered qualified immunity and stated:

> We do not express any view on whether [the action] was constitutional. But whether or not the constitutional rule applied by the court below was correct, it was not "beyond debate." *al-Kidd, supra*, at ___ (slip op., at 9). Stanton may have been mistaken… but he was not "plainly incompetent." *Malley*, 475 U. S., at 341.

*Stanton v. Sims*, 134 S.Ct. 3,*7 (2013).  In *Stanton*, the Supreme Court affirmed that the purpose of qualified immunity is to give government officials "breathing room" to make reasonable but mistaken judgments, so long as their actions are not plainly incompetent.  *Id.*; *see also Beattie v. Smith*, 2013 U.S. App. LEXIS 22884 (10th Cir. Nov. 13, 2013) (unpublished) ("Accepting the complaint's allegations as true and understanding the alleged facts in the lights most favorable to Mr. Beattie, we are unable to say that Mr. Beattie's complaint fails to allege facts sufficient to show that the defendants plausibly violated his Fourth Amendment rights. But to say that the complaint alleges a violation of a clearly established right would go too far.") (citing *Stanton v. Sims*, at *2).  Indeed, qualified immunity applies in "all but the most exceptional cases," *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), and protects "all but the plainly incompetent or those who **knowingly** violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (emphasis added).  Further, the decisions of government officials are judged based upon the circumstances with which they were confronted, and their decisions are assessed against those of their reasonable peers.  *See Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004); *Lynch v. Barrett*, 703 F.3d 1153, 1163 (10th Cir. 2013) ("But that we are 'morally outraged' . . .

by the alleged conduct . . . does not mean necessarily that the offic[ers] should have realized that it violated a constitutional right of access.") (internal citations omitted).

In this Circuit, a mere reference to a Higher Power in the Alcoholics Anonymous philosophy or program does not mean that Alcoholics Anonymous is a religion, nor that religion was impermissibly thrust upon the inmate during his incarceration. *Stafford v. Harrison*, 766 F.Supp. 1014, 1017 (D. Kan. 1991). The Court in *Stafford* conducted a review of the central text of the Alcoholics Anonymous program and noted that the concept of a Higher Power can be a deity, if that is the participant's belief, or the concept of a Higher Power may simply be a "previously unsuspected inner resource" which participants may identify as a power higher than themselves. *Id*. The Court noted that the concept of a Higher Power is subject to interpretation by the participant, and that "the program itself does not consider itself a religion." *Id.; see also U.S. v. Robinson*, 2005 U.S. Dist. LEXIS 24986 *5 (D. Kansas 2005) (finding challenge that mandatory participation in Alcoholics Anonymous programs not ripe for review, but noting "that even if this issue were ripe, similar challenges have failed on the merits."); *Malipurathu v. Jones*, 2012 U.S. Dist. LEXIS 124983 (D. Kansas 2012); *see also*, *Gray v. Johnson*, 436 F. Supp. 2d 795, 799-802 (W.D. Virginia 2006). In view of this case law, as well as the dearth of any specific allegations in the Complaint regarding how Plaintiff's rights under the Establishment Clause were violated simply by the requirement that he undergo substance abuse treatment through Alcoholics Anonymous or Narcotics Anonymous, Defendants cannot be said to have violated Plaintiff's rights, nor to have knowingly violated clearly established law or to have acted with plain incompetence in imposing this parole condition. Accordingly, Defendants are entitled to qualified immunity. *Stanton v. Sims*, 134 S.Ct. at *7.

**VI.** **In the alternative, Plaintiff's fails to state a viable claim for relief for the alleged violation of his rights associated with parole conditions related to his sex offender classification, nor does he state a viable claim for a constitutional tort, and Defendants are entitled to qualified immunity.**

Plaintiff alleges that various Defendants committed a constitutional tort.  Doc. 5, p. 20, para. 36.  However, this claim is apparently a re-statement of Plaintiff's claim that his Fifth and Fourteenth Amendment rights were violated by the requirement that he pass polygraph testing and admit to the sexual offense that caused his sex offender classification, and his claim that he was wrongfully required to undergo sex offender treatment in the first place.  If Plaintiff fails to state a claim for the violation of a constitutional right, he cannot state a viable claim for a constitutional tort.  *Pierce v. Gilchrist*, 359 F.3d 1279, 1290 (10th Cir. 2004) ("Finally, and most importantly, we have stressed in *Taylor* and other cases that the 'ultimate question' is the existence of a constitutional violation.").  Plaintiff fails to state a claim for a violation of a constitutional right, and Defendants are entitled to qualified immunity, as set forth below.

**A. Plaintiff fails to state a Fifth or Fourteenth Amendment claim, and Defendants are entitled to qualified immunity.**

Plaintiff claims that his Fifth and/or Fourteenth Amendment rights have been violated by the requirement that he be willing to discuss his sex offenses as a condition of participation in sex offender treatment, and pass a polygraph examination in conjunction with such admissions, because this allegedly violates his right to be free from self-incrimination.  Even to the extent such claims are not barred by the statute of limitations and *Heck*, Plaintiff fails to state a viable claim.  Pursuant to the Fifth Amendment, no person "shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  This Fifth Amendment right is "enforced against the States under the Fourteenth Amendment."  *Malloy v. Hogan*, 378 U.S. 1, 10-11 (1964).  To state a viable Fifth Amendment claim, Plaintiff must prove two things: (1) that the

statements desired by Defendants carried the risk of incriminating him, and (2) "that the penalty he suffered amounted to compulsion." *See United States v. Antelope*, 395 F.3d 1128, 1134 (9th Cir. 2005); *see also Minnesota v. Murphy*, 465 U.S. 420, 435 n.7 (1984); *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977). The compulsion element is satisfied "when a State compels testimony by threatening to inflict potent sanctions unless the [Fifth Amendment] privilege is surrendered[.]" *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).

Plaintiff's Complaint does not contain specific factual allegations demonstrating that requiring Plaintiff to discuss sexually abusive behavior as part of sex offender treatment would carry the risk of incrimination, as required by *Ashcroft*. There are no specific allegations in the Complaint that would show that discussing the sexual assault of the victim of Plaintiff's crimes in sex offender treatment would cause Plaintiff to incriminate himself, either in these cases or any other. That is because Plaintiff alleges that sex offense charges were initially brought against Plaintiff along with the charges to which he pled guilty, but the prosecutor dismissed the sex offense charges against Plaintiff as part of a plea bargain. It would therefore appear under Colorado law that he could not be prosecuted for the sex offenses that were dismissed pursuant to that plea bargain, regardless of statements he might make to sex offender treatment providers while on parole. § 18-1-302(1)(a), COLO.REV.STAT. (2013). Consequently, he could not be convicted of sex offenses based upon admissions he made during sex offender treatment concerning those facts and incidents, and could not therefore incriminate himself.

Even if the Court were to conclude that Plaintiff's allegations satisfy the required elements of a Fifth Amendment Claim, Plaintiff must still "'plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.'" *Doe v. Heil*, 2013 U.S. App. LEXIS 17999 (10th Cir. Aug. 26, 2013) (unpublished)

15

045

(quoting *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012). "This is not to say that [Plaintiff] must identify every potential legitimate interest and plead against it." *Id.* "However, he is required to "recite[ ] facts that might well be unnecessary in other contexts" to surmount a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* In analyzing a similar claim that the requirement than an inmate undergo polygraph testing and make full disclosures regarding his sex abuse history, the Tenth Circuit determined that an inmate failed to state a claim for the violation of the Fifth Amendment. *Id.* (citing *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002) and *McKune v. Lile*, 536 U.S. 24, 33 (2002)). Indeed, the Supreme Court has recognized the important and legitimate penological interest underlying sex offender treatment, and that "[a]n important component of those rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct" through admissions of past conduct and the use of a polygraph test in conjunction with treatment. *McKune v. Lile*, 536 U.S. at 33-35; *see also*, *Wirsching v. Colorado*, 360 F.3d 1191, 1203-04 (10th Cir. 2004). Thus, Plaintiff fails to state a claim for the violation of his Fifth Amendment rights in this case.

To the extent Plaintiff asserts his right to substantive due process under the Fourteenth Amendment was violated, he still fails to state a viable claim. "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Doe*, at **26-27. To have a liberty interest under the Due Process Clause, Plaintiff must have a legitimate claim of entitlement to it. *Id.* The "'ultimate standard for evaluating a substantive due process claim is whether the challenged government action shocks the conscience of federal judges.'" *Id.* at *31 (internal citations omitted). "'A high level of outrageousness is required' to establish a substantive due process violation." *Id.* at *32. "'[T]o satisfy the 'shock the conscience'

16

046

standard, a plaintiff . . . must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" *Id*. In making this determination, the Court should be mindful of the substantial deference afforded to prison officials, and the very high degree of culpability required to state a claim. *Id*. at **32-38.

Applying these standards to the CDOC's requirement that an inmate undergo polygraph testing and make full disclosures regarding his history of sex abuse as a condition to sex offender treatment, the Tenth Circuit found no substantive due process violation. *Id*. at **38-41. Defendants submit that likewise, Plaintiff's allegations that he is required to discuss his history of sex abuse fail to state a viable due process claim. As noted above, the Supreme Court has recognized the importance of sex offender treatment, and the importance of acceptance of responsibility through admissions of one's acts, as well as the use of polygraph testing in the furtherance of the same. *McKune v. Lile*, 536 U.S. at 33-35. Therefore, Plaintiff has failed to state a claim for the violation of his constitutional rights. Further, in light of the case law from this circuit described above, Defendants are entitled to qualified immunity, as the imposition of the parole conditions in question was not a violation of clearly established law.

**B. Plaintiff fails to state a viable claim that parole conditions requiring him to undergo sex offender treatment were unconstitutional, and Defendants are entitled to qualified immunity.**

Requiring a sex offender to complete sex-offender treatment while on parole is not unconstitutional. *See Grenemyer v. Gunter,* 770 F. Supp. 1432 (D. Colo. 1991) (Upholding the Parole Board's practice of requiring participation in a sex offender treatment program as a condition of parole), *aff'd*., 968 F.2d 20 (10th Cir. 1992). *See also White v. People*, 866 P.2d 1371 (Colo. 1994). Further, the Parole Board is free to consider anything in Plaintiff's background and criminal history when determining the conditions for parole. In fact, the Parole

17

047

Board has the authority to require every inmate to complete sex offender programs if it desires. While the Board *must* consider certain factors designated by statute, it is not limited to those factors. § 17-22.5-404 (2)(a), COLO. REV. STAT.  It may consider *any* factors it believes necessary to prevent recidivism. § 17-2-201 (5)(f)(I), COLO. REV. STAT.; § 17-22.5-404 (2)(a), COLO. REV. STAT.  For example, it may require inmates to complete literacy programs, whether or not inability to read and write was the cause of the inmate's crime. § 17-22.5-404(2)(a)(XIII), COLO. REV. STAT.  It may require inmates to complete alcohol and drug counseling whether or not alcohol or drugs contributed to the offense. § 17-2-201(5)(f)(I)(D and H), COLO. REV. STAT.  It may require an inmate to enroll in education or technical training, or to seek gainful employment in the prison system, whether or not unemployment contributed to the causes of the crime. § 17-22.5-404(2)(a)(V and VI), COLO. REV. STAT.  Likewise, the Parole Board may require sex offender treatment, regardless of whether sexual misconduct contributed to the crime of which an inmate was convicted, particularly where, as here, Plaintiff was lawfully classified as a sex offender in 2006.

Moreover, at the time of Plaintiff's plea bargain and classification as a sex offender in 2006, Colorado case law and statutory authority held that the CDOC had the authority to make classification determinations independent of plea agreements by district attorneys or findings of the court.  Specifically, prior to amendments in 2008, the explicit language of § 16-22-103(d), COLO. REV. STAT. (2007) stated that the CDOC had sole discretion in matters concerning the sex offender classification of offenders while they remain in CDOC custody, regardless of the findings of the court or stipulations by a district attorney:

> Notwithstanding any other provision of this section, **any stipulation by a district attorney and any finding of the court** with regard to whether the offense of which a person is convicted

18

includes an underlying factual basis involving unlawful sexual behavior **shall not limit or otherwise affect the ability of the department of corrections to make such determination in accordance with department procedures for purposes of classification and treatment** of any person sentenced to the department of corrections.

§ 16-22-103(d), COLO. REV. STAT. (2007) (emphasis added).  This statute left the

CDOC with complete discretion to make its own determination of the appropriate classification

and treatment needs of an inmate, whether or not the inmate was convicted of a crime involving

unlawful sexual behavior, and regardless of any stipulations by a district attorney or findings of

the court.  In *Reeves v. Colorado Dep't. of Corrs.,* the Colorado Court of Appeals upheld the

authority of the CDOC to classify inmates as sex offenders, whether or not they were convicted

of crimes that constitute sex offenses.  *Reeves v. Colorado Dep't. of Corrs.,* 55 P.3d 648, 652

(Colo.App. 2007).  The Colorado Court of Appeals rejected an inmate's assertion that he could

not be classified by the CDOC as a sex offender based upon case law regarding the requirements

imposed on the court and/or district attorney, on the grounds that the criteria and obligations of

the courts in conjunction with sentencing are distinct from the criteria on which the CDOC may

rely in making classification decisions.  *Vondra v. Colo. Dep't of Corr.*, 226 P.3d 1165, 1170

(Colo. App. 2009) ("As the district court observed, *Rockwell* addressed whether the factual basis

of the defendant's conviction required the district court to impose a sentence under the

discretionary, rather than the mandatory, parole provisions.  It did not discuss the criteria on

which the DOC may rely in making a classification decision.") (citing *People v. Rockwell*, 125

P.3d 410 (Colo. 2005).).  Accordingly, at the time of his plea bargain in 2005, Plaintiff had no

right to expect that the CDOC would be prohibited from classifying him as a sex offender and

requiring him to participate in sex offender treatment, because Colorado law was clear that

stipulations of the district attorney and findings of the court on this issue were independent of

19

and non-binding on the CDOC.  Therefore, Defendants did not violate Plaintiff's constitutional

rights by requiring that he undergo sex offender treatment due to his classification as a sex

offender, regardless of any stipulations of the district attorney made as part of his plea bargain.

Further, even if the Court were to determine that Defendants' actions were mistaken and

unconstitutional, the allegations of the Complaint do not show that Defendants were "plainly

incompetent" or that they "knowingly" violated the law at the time of the acts in question.

Defendants' actions in requiring Plaintiff to undergo sex offender treatment as a parole condition

due to his classification as a sex offender is supported by the law affording the CDOC

independent discretion over other classification matters, such as sex offender classification.  *See,*

*e.g.*, § 16-22-103(d), COLO. REV. STAT. (2007).  Further, the law is well established that

classification decisions are at the discretion of prison officials and that the Parole Board has

broad discretion over the grant, denial, conditions, and revocation of parole.  *See Deason v.*

*Kautzky*, 786 P.2d 420, 422-23 (Colo. 1990); *White v. People*, 866 P.2d 1371 (Colo. 1994); *Kort*

*v. Hufnagel,* 729 P.2d 370, 373 (Colo. 1986); *White v. Adamek,* 907 P.2d 735, 737 (Colo. App.

1995); *People v. Luther*, 58 P.3d 1013, 1016 (Colo. 2002).  Also, as noted, the Colorado Court of

Appeals rejected an inmate's argument that the CDOC should be held to the same criteria for

classifying an inmate as a sex offender that is imposed on the sentencing courts, because the

Colorado Court of Appeals recognized that the courts and the CDOC are distinct from one

another.  *Vondra,* 226 P.3d at 1170; *see also Reeves,* 55 P.3d at 652.

In light of these decisions and statutory provisions, Defendants cannot be said to have

violated "clearly established" law or to have acted with plain incompetence in requiring Plaintiff

to undergo sex offender treatment, including treatment that required he admit to having

committed a sex offense and to passing a polygraph test.  Indeed, in order to defeat qualified

immunity, Plaintiff has the burden to establish that Defendants violated clearly established law. Plaintiff has cited to no case law holding that Defendants did not have the authority to make their own sex offender classification determination at the time they did, nor to require sex offender treatment as a condition of parole. Accordingly, Defendants are entitled to qualified immunity.

### C. Plaintiff fails to state a viable claim for the infringement of his right to familial association, and Defendants are entitled to qualified immunity.

Plaintiff alleges that as a result of his sex offender classification, he was not permitted to have contact with minor children, which allegedly infringed upon his right of familial association, because he was not able to have contact with his nieces, nephews and half siblings. Doc. 5, p. 2, para. 4. With regard to immediate family members, the Supreme Court has found that parents have a protected liberty interest in reasonably close relationships with their children. *Wirsching v. Colorado et al.*, 360 F.3d at 1198-1200 (citing *Hodgson v. Minnesota*, 497 U.S. 417, 483 (1990) (Scalia, J., concurring in part and dissenting in part, and citing *Santosky v. Kramer*, 455 U.S. 745, 753-754 (1982)). In *Overton v. Bazzetta*, the Supreme Court noted that the Constitution has been held to protect "certain kinds of highly personal relationships" outside the prison context. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). However, the Supreme Court also noted that an inmate does not retain rights inconsistent with proper incarceration and freedom of association is one of the rights least compatible with incarceration. *Id.* The Court declined to determine whether any right to intimate association is always terminated by incarceration, finding that such a determination was not necessary because the restrictions on visitation bore a rational relationship to legitimate penological interest. *See id.* at 131-32. Thus, at the present time there is no legal authority that holds that a prison inmate has a constitutional right to contact visitation even with immediate family members, let alone extended family

members.  Regardless, even if such a right exists, as explained by the Supreme Court in *Overton*, the right may be restricted under the legitimate penological interest test.  Shortly after *Overton* was decided, the Tenth Circuit found that the CDOC had a legitimate penological interest in requiring an inmate to participate in a sex offender treatment program and in denying him social visitation privileges with minor children, including his own.  *Wirsching v. Colorado et al.*, 360 F.3d at 1198-1200.

Wirsching was a convicted sex offender incarcerated in the CDOC who was required to participate in a sex offender treatment program.  *Id.* at 1194.  He was required to admit his sexual misconduct as part of that program, which he refused to do.  *Id.*  Consequently, he was prohibited from having social visitation with minors including his own children, even though his victim had not been a child.  *Id.*  Wirsching brought suit alleging that his First Amendment right of association had been violated, though unlike Plaintiff, Mr. Wirsching complained of lack of contact with his own children.  *Id.*  In assessing his claims, the Court applied the four-prong analysis set forth in *Turner v. Safley,* 482 U.S. 78 (1987), as the Supreme Court did in *Overton*.  The *Turner* test includes the following prongs: 1) does the prison regulation have a rational connection to a legitimate governmental interest; 2) are there alternative means of exercising the right notwithstanding the policy or regulation; 3) what effect would accommodating the right have on guards, prisoners and prison resources generally; and 4) whether ready, easy to implement alternatives exist that would accommodate the prisoner's right.  *See id.*, at 1199 (citing *Turner v. Safley*, 482 U.S. at 89-91.

With regard to the first prong, in *Wirsching* the Court found that the CDOC had a legitimate penological interest in protecting children and in furthering the rehabilitation of sex offenders.  *Wirsching*, 360 F.3d 1199-1200.  It found that the CDOC's restriction on visitation

with minors (which is similar to the restriction at issue in this case) was rationally related to this legitimate penological interest. *Id*. With regard to the second factor, concerning alternative means of maintaining a familial relationship, the Court noted that Wirshing had acknowledged that he had alternative means of contacting his children, such as by letter or telephone. *Id*. Therefore the Court found that the second prong weighed in favor of the constitutionality of the CDOC's visitation restriction. *Id*. Here, Plaintiff alleges he was not permitted to have *contact* with his nieces and nephews, and half-siblings. However, he does not allege that he was not permitted to have any *communications* with them. Plaintiff's allegations do not establish that Plaintiff was forbidden from any *communication* with minor children, including family members. Plaintiff has the burden to allege factual allegations upon which the Court can conclude that his rights have been violated. *Ashcroft v. Iqbal*, 129 S.Ct. at 1949. Thus, Plaintiff's allegations do not show that he had no alternative means of exercising the right of association.

With regard to the third and fourth factors, concerning the burden on the CDOC of accommodating the alleged right, and the feasibility of less restrictive, alternative methods, the Court found that the analysis weighed in favor of the CDOC. *Id*. It noted that Wirsching made no showing as to the feasibility and minimal institutional effect of less restrictive visitation policies. *Id*. Likewise, the allegations in the Complaint on this case do not show that less restrictive alternatives were feasible or would have minimal effect. Accordingly, as in Wirsching, the restriction in question passes the legitimate penological interest test.

As shown above, a similar restriction on contact with minors was upheld by the Tenth Circuit. In addition, other courts have affirmed similar restrictions on access to family visitation, due to sex offender classifications or other circumstances associated with criminal convictions

and incarceration.  *Kailey v. Zavaras*, 2011 U.S. Dist. LEXIS 133277 (D. Colo. November 17, 2011) (finding restrictions on visitation with minor children and grandchildren did not violate right to familial association); *Mondonedo v. Roberts*, 2013 U.S. Dist. LEXIS 35178 (D. Kansas March 14, 2013) (same); *Chartrand v. N.H. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 59914 (D.N.H. Feb. 11, 2013) ("The Constitution is not offended where reasonable restrictions are placed on family contact visits in the prison context.").  Moreover, Plaintiff's claims concern familial relationships with his extended family, which are not as close as, and are entitled to less protection than, the relationship between a parent and minor children.  As such, Defendants are entitled to qualified immunity, because the restriction at issue is not a violation of clearly established law.

## VI.   In the alternative, Plaintiff fails to allege the requisite personal participation on behalf of Defendants Morales, O'Dell, Oakes, Pena, and Shaffer.

"Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).  A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the alleged violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001). Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for alleged constitutional violations committed by his subordinates. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *Ruark v.*

*Solano*, 928 F.2d 947, 950 (10th Cir. 1991) ("'[T]here is no concept of strict supervisor liability under section 1983.'" (quoting *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984))); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) ("A defendant cannot be liable under a respondeat superior theory in a section 1983 case." (citing *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979))); *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.").  Furthermore, in *Ashcroft v. Iqbal*, 129 S. Ct. at 1949, the Court suggested that the simple fact that a supervisor knew of and merely acquiesced in an alleged constitutional violation committed by his subordinates does *not* establish that he was personally involved in the violation.

The Complaint is devoid of any allegations indicating that Defendants Morales, O'Dell, Oakes, Pena, and Shaffer personally did anything or had any involvement in the incidents and events giving rise to Plaintiff's claims.  These Defendants are simply alleged to be members of the Parole Board.  Doc. 5, p. 1, caption and p. 3, para. 7.  There are no allegations in the Complaint alleging that any of these Defendants did anything individually that would make them personal participants in the incidents giving rise to Plaintiff's claims.  They appear to have been named as Defendants entirely based upon their positions as Parole Board members.  This is not sufficient to establish the personal participation required for liability.  *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949; *Ruark v. Solano*, 928 F.2d at 950.  Accordingly, Plaintiff's claims against Defendants Morales, O'Dell, Oakes, Pena, and Shaffer should be dismissed.

## CONCLUSION

For the reasons set forth herein, Plaintiff's claims should be dismissed.

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 59

JOHN W. SUTHERS
Attorney General


s/Nicole S. Gellar
_____
NICOLE S. GELLAR*
Assistant Attorney General
Corrections and Public Safety Unit
Civil Litigation & Employment Section
Attorneys for Defendants
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado  80203
Telephone:  720-508-6614
FAX:  720-508-6032
E-Mail:  nicole.gellar@state.co.us
*Counsel of Record


<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have duly served the within Motion to Dismiss Pursuant to

Fed.R.Civ.P. 12(b)(6) upon all parties herein by email via ECF or by depositing copies of same in

the United States mail, first-class postage prepaid, at Denver, Colorado, this 27th day of January,

2014 addressed as follows:

Allison Ruttenberg, Esq.
P.O. Box 19857
Boulder, CO 80308
Ruttenberg@me.com

***Courtesy Copies To:***
Keith Nordell, CDOC


s/Nicole Gellar and Mariah Cruz-Nanio
_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No.            13-cv-2142-RPM

MARLON WALKER

                Plaintiff

v.

SUSAN WHITE, et al;

                Defendants

---

### RESPONSE TO THE DEFENDANTS' MOTION TO DISMISS

---

The Plaintiff, Marlon Walker, by and through his attorney, Alison Ruttenberg, hereby responds to the Defendants' motion to dismiss (Document 32) as follows:

### INTRODUCTION

In order to survive a motion to dismiss, all a Plaintiff needs to do is to allege sufficient factual allegations, which the Court must accept as true, to state a claim for relief that is plausible on its face. The Court cannot speculate on additional facts, or consider evidence that is outside the Complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). When tested against this

standard, the Defendants' arguments in the motion to dismiss are without merit, and the motion to dismiss should be denied

## FACTUAL BACKGROUND

As set forth in the Amended Civil Rights Complaint (Document 7), the facts which must be taken as true when construing the Defendants' motion to dismiss are as follows:  Just like Mr. Dale Gross in the related cases of Gross v. Madrid, 10-CV-1581-RPM and Gross v. Samudio, 11-CV-2594-RPM, Mr. Walker was charged with various felonies involving a sexual basis, but only convicted of charges having no factual basis.  Mr. Walker was charged in Denver County District Court, (in case number 2005CR3380) to second degree burglary, assault in the second degree, criminal attempt to commit sexual assault and unlawful sexual contact, offenses that allegedly occurred on May 13, 2005 at about 4:00 a.m. at 3801 Quebec Room 1237.  The alleged victim was C.D., who lied to the police and made various false and incredible allegations against the Plaintiff that were contradicted by the other witnesses.  After the prosecutor determined that C.D.'s allegations regarding sexual misconduct were false, the prosecution and Mr. Walker entered into a plea agree for second degree assault and stipulated that there was no factual basis for any type of sexual offense.  Amended Complaint paragraphs 15-16.

As a result, Mr. Walker is not and cannot be a "sex offender" pursuant to the definition of "sex offender" set forth in the Sex Offender Management Board ("SOMB") Guidelines (See Exhibit 1 hereto at pages 4-5 of the exhibit) and CRS 16-11.7-102(1) and (2)(a) because he has not been convicted of a sex offense

listed in CRS 16-11.7-102(3).   In order to be a sex offender pursuant to the

definitions in the SOMB Guidelines or pursuant to the definitions in Article 11.7 of

Title 16, Mr. Walker either has to have been convicted of one of the offenses

listed in CRS 16-11.7-102(3) *or* be convicted of any criminal offense and have a

prior conviction of one of the offenses listed in CRS 16-11.7-102(3) *or* of a

criminal offense from another jurisdiction that would be one of the offenses listed

in CRS 16-11.7-102(3) if it had been convicted in Colorado.   See, CRS 16-11.7-

102(1) and (2)(a).   Or, pursuant to the SOMB guidelines, Mr. Walker would have

had to have been convicted (on or after July 1, 2000), of any criminal offense

with the underlying factual basis being a sex offense.   See SOMB Definition of

"sex offender" paragraph (2); Exhibit 1 hereto at page 4.   None of those

definitions apply since the prosecutor stipulated to "no factual basis."

Mr. Walker was sentenced to the Colorado DOC, followed by a mandatory

term of parole.   In the Denver District Court's November 9, 2005 Order accepting

the plea, there is no finding that Mr. Walker is a sex offender, or that he has to be

evaluated for treatment as a sex offender.   The state court sentencing judge

stated on the record, words to the effect:   "Defendant is urged to undergo all

treatment programs offered at the DOC."   The Judge was just making a general

remark, similar to what Judges almost always say, encouraging Mr. Walker to

avail himself of any appropriate program at the DOC; however, the Judge was, in

no way, referring to sex offender treatment.   Sex offender treatment was never

an issue with respect to Mr. Walker's sentence, and the sentencing order states

that there was no factual basis for any sexual offense.   Amended Complaint at 17.

However, the DOC designated Mr. Walker as a sex offender in February 2006.  This designation was made in violation of DOC Regulation 700-19 Part IV (B).  According to this regulation, since Mr. Walker had a judicial determination of "no sexual factual basis," his mandated classification was S4-X for "excluded." Pursuant to DOC Regulation 700-19 Part IV (A) and (B), an offender with the "X" classification means that treatment will not be recommended unless there are facts from a separate allegation that may warrant a change in the sexual violence needs classification.   Regulation 700-19 Part IV (B), an offender with the "T" classification cannot be recommended for sex offense specific treatment without the due process afforded in AR 750-02.  However, the "due process" procedures set forth in AR 750-02 is not what the Colorado General Assembly mandated in CRS 16-22-103(2)(d)(III).  Mr. Walker was never given a due process hearing as required by CRS 16-22-103(2)(d)(III) and never waived his right to that hearing. Mr. Walker was not given the due process set forth in AR 750-02 either.   On June 1, 2007, Mr. Walker's classification was changed to S4 and he was provided written notice of the requirement to undergo sexual offense specific treatment.  Amended Complaint at paragraph 18.

The DOC also claims that Mr. Walker engaged in conduct on or about November 4, 2009 that would justify designating him as an S3 sex offender.  Mr. Walker never admitted to intentionally engaging in this conduct.  Additionally, Mr. Walker was never adjudicated an S3 sex offender pursuant to DOC Regulation

AR 700-19 Part IV (A) for any conduct Mr. Walker was alleged to have engaged in while in the DOC.   Mr. Walker was never given the due process hearing required by CRS 16-22-103(2)(d)(III) for adjudication as an S3 sex offender. Amended Complaint at paragraph 19.   Therefore, the only sex offender classification that was given to the Defendant by the DOC was the S4 classification; the alleged November 4, 2009 incident is a red herring, and not relevant to any issue in this lawsuit since the DOC failed to actually classify the Defendant as an S3 "sex offender."

Mr. Walker does not and cannot challenge the S4 "sex offender" classification in this lawsuit.   (He also would not be able to challenge any S3 classification for the same reasons; but that is irrelevant because the DOC never actually classified him as an S3 "sex offender.")   Just like in Mr. Gross's case, the DOC's erroneous classification is *not* an issue that can be adjudicated in the case at bar since the Complaint in the case at bar was filed more than two years after the erroneous S4 classification in February 2006.   As in Mr. Gross's case, the Attorney General seeks to rewrite the Complaint, in order to deflect the actual issues.   What *is at issue* in the case at bar is the following:   The DOC, parole board, and the SOMB all have this one-sized fits all policy that every offender who has been designated as a "sex offender;" whether pursuant to the statutory definitions or contrary, whether or not given the due process required by CRS 16-22-103(2)(d), whether the underlying alleged offense was decades ago or recently, whether the offender was acquitted of the underlying sexual offenses or convicted, whether the judge and prosecutor agreed there was no factual basis

to the charges of a sexual offense or not, regardless of whether there were multiple allegations of sexual misconduct or not, regardless of whether there was any allegation of pedophilia, or regardless of the identity and age of the alleged "victim," all sex offenders in Colorado all treated alike:  They are all treated as if they are all serial pedophiles who pose a grave danger to every child in the community, including their own familial relations.   This is set forth in SOMB Standard 5.620 (C), (D), (E) and (G); Exhibit 1 hereto at pages 11-12.

The fact that Mr. Walker was designated as an S4 "sex offender" is of course a key fact in this case, but this lawsuit is not about whether it was constitutional to designate Mr. Walker as a "sex offender" in contravention of the state statutory definition, the SOMB definition and the express terms of the plea bargain.   This lawsuit is also not about the constitutionality of depriving Mr. Walker of his good time credits because he refused to participate in sex offense specific treatment in the DOC  (Amended Paragraph at 20).  Instead, this lawsuit is about the constitutionality of revoking an offender's parole for violating terms and conditions of parole that are unconstitutional.   It is unconstitutional, and a violation of the 5th and 14th Amendments to require someone who does not meet the statutory and SOMB definition of "sex offender" to engage in sex offender "treatment" when that "treatment" necessarily requires the offender to admit to, "accept responsibility" and pass a polygraph examination for fabricated allegations that never occurred.

Consistent with the "one sized fits all" policy, when Mr. Walker was released on mandatory parole on January 12, 2011, he was directed by

Defendant parole board member Becky Lucero and Defendant parole officer Struzeski to undergo sex offender treatment as a term and condition of parole. Mr. Walker was more than willing to undergo treatment, but the only treatment that was is available in the Denver metro area (or anywhere else in Colorado) is the one sized fits all treatment that all sex offenders are serial pedophiles, who pose an extraordinary risk to the public unless they admit to, accept responsibility for and pass a polygraph examination of the purported victim's initial allegations -- no matter how little credibility that purported victim turns out to have.

The treatment provider, SORS, terminated Mr. Walker from treatment for failing to admit to, accept responsibility for and pass a polygraph examination of C.D.'s false allegations of sexual abuse.  Dr. Lee, the Clinical Director of SORS wrote the August 10, 2011 termination letter to Defendant Struzeski.  It is obvious that this letter is just a fill in the blank template, which not specific to Mr. Walker. There was at least one place in the letter where Dr. Lee forgot to refer to Mr. Walker and just referred to the Mr. xx on the termination template letter. Defendant Struzeski did not even bother to question Dr. Lee regarding this, and in accordance with Samudio's[1] policy of complete deference to the treatment provider, Struzeski just rubber stamped the provider's decision to terminate Mr. Walker from treatment.

On August 10, 2011, Defendant parole officer Madrid ordered Mr. Walker to be arrested for violating the terms and conditions of his parole as a result of

---

[1] Samudio is the supervisor of the other parole officer Defendants and has promulgated an unwritten policy of complete deference to the treatment providers.  Amended Complaint at paragraphs 5 and 23.

being terminated from sex offender treatment.  No other reason was cited for the deprivation of Mr. Walker's liberty.   Amended Complaint at 23.   It was unconstitutional to arrest Mr. Walker (and thus implicating his Fourteenth Amendment rights to be free from deprivation of liberty without due process of law) for allegedly violating an unconstitutional term and condition of parole. Contrary to the Defendants' assertions, this claim is not barred by the statute of limitations because this case was filed on Sunday August 11, 2013.  Since August 10, 2013 was a Saturday, this claim for relief is not barred by the two year statute of limitations.

However, this was not the only unconstitutional action committed by the Defendants.   After his arrest, Mr. Walker's parole was reinstated, and he was ordered to start over again with another treatment provider who imposed the same one sized fits all treatment that all sex offenders are serial pedophiles, who pose an extraordinary risk to the public unless they admit to, accept responsibility for and pass a polygraph examination of the purported victim's initial allegations -- no matter how little credibility that purported victim turns out to have.   This second treatment provider also terminated Mr. Walker from treatment because he refused to admit to C.D.'s false allegations, and concluded that because Mr. Walker refused to admit to the false allegations, then he was a sexual deviant with a "high risk to reoffend."     On November 25, 2011, Defendants Struzeski and Madrid concluded that Mr. Walker had violated the terms and conditions of his parole for no reason other than the termination from treatment and the conclusion that Mr. Walker is a sexual deviant with a "high risk to reoffend" -- a

conclusion not based on anything other than C.D.'s original false allegations. Ms. Walker's parole was revoked on December 19, 2011, he had to withdraw from his coursework at the Community College of Aurora and was returned to the DOC for 130 days.  Amended Complaint at 26.  This unconstitutional deprivation of Mr. Walker's liberty also occurred with in the two year statute of limitations.

Mr. Walker paroled again, by the Defendant parole board members, on March 15, 2012 with the same unconstitutional terms and conditions of parole as before.  Amended Complaint at paragraph 29.  Mr. Walker was assigned to the same parole officer, Defendant Stuzeski, who then lied to the treatment provider regarding Mr. Walker.  Stuzeski knew that Mr. Walker's plea bargain contained a stipulation that there was "no factual basis" of any sexual offense to the charges to which Mr. Walker pleaded guilty; however he lied and stated that:  "the court appears to be silent on sexual factual basis."  He then told a second lie regarding the November 4, 2009 alleged incident in the DOC, and stated that Mr. Walker admitted to intentionally fondling or touching his cellmate's penis, when all Mr. Walker admitted to was accidentally bumping into his cellmate's groin area when both men were fully clothed.  Struzeski told a third lie by omission by claiming that Denver District Court Judge Habas' statement "Defendant is urged to undergo all treatment programs offered at DOC" meant that Judge Habas was urging Mr. Walker to undergo sexual offense specific treatment in the DOC.  SORS relied on these three lies, and rejected Mr. Walker for treatment.  Because he was rejected for treatment, Struzeski filed a parole revocation complaint, and alleged that Mr. Walker violated the terms and conditions of his

parole, because he was not enrolled in sex offender treatment -- a condition that Mr. Walker had no control over, especially since Struzeski procured his rejection by intentionally lying about the facts.  Mr. Walker was arrested again.  Amended Complaint at paragraph 30-1.

However, the parole board deferred deciding whether to revoke Mr. Walker's parole, to see whether Mr. Walker could be accepted into treatment with another provider, this time Progressive Therapy.  Mr. Walker told Progressive Therapy, in writing, that he would willingly participate in treatment for the assault for which was convicted, but would not admit to or accept responsibility for allegations of sexual assault that were lies and never occurred (and more importantly were dismissed by the District Attorney as lies and not supported by a factual basis). However, the parole division continued to lie regarding Mr. Walker.  On September 13, 2012, Defendant Madrid lied in an email regarding Mr. Walker, and repeated Struzeski's three lies set forth above.   Amended Complaint at paragraph 31-2.

Defendant White, one of the supervisors of Defendants Madrid and Struzeski thinks that she has been given the authority by the Attorney General's office to order parolees, such as Mr. Walker, and can order her subordinate parole officers to order parolees, such as Mr. Walker, to engage in sexual offense specific treatment in violation of the terms of the parolees' plea agreement.   In a September 28, 2012 email, Defendant White stated that she is entitled to rely on the erroneous advice of the Attorney General's office that the state criminal "court cannot dictate how an offender is classified and supervised

by the DOC and specifically that the judge has no jurisdiction over the offender once he is in custody of the DOC." Therefore, according to White, the DOC and Parole Division is entitled to intentionally and recklessly violate the terms of the plea agreement if they want to, upon their whim and caprice. However, this is contrary to 1979 United States Supreme Court precedent,[2] and violated Mr. Walker's Fourteenth Amendment rights. Amended Complaint at 32.

Progressive Therapy also rejected Mr. Walker from even enrolling in treatment, and Struzeski filed another parole revocation complaint on December 12, 2012. Progressive Therapy found that the Plaintiff was "not amenable to sex offense specific therapy" due to maintaining his innocence of any sex offense. Again, this revocation complaint was based on something completely out of Mr. Walker's control. He has no control over whether a treatment provider will accept him into treatment, and he even notified this particular provider that he was willing to participate and cooperate in treatment. The Plaintiff's parole was revoked on January 18, 2013 for allegedly violating the term and condition of parole that he participate in sex offender treatment, and Mr. Walker was returned to the DOC for the remainder of his mandatory parole. Amended Complaint at 33.

Mr. Walker has now unconditionally discharged his sentence, and is no longer subject to the jurisdiction of any of the Defendants.

**ARGUMENT**

A.     **Mr. Walker's claims are not barred by the statute of limitations.**

---

[2] *Santobello v. New York*, 404 U.S. 257 (1979) as discussed by the Colorado Supreme Court in *People v Macrander,* 756 P.2d 356, 359 (1988).

As set forth in the factual summary above, Mr. Walker's claims are not barred by the statute of limitations because he is only suing the Defendants for actions that occurred on or after August 10, 2011, and this lawsuit was initiated on the next business day after August 10, 2013. In this case and in other similar cases, the Attorney General's office tries to deflect the issues by claiming that since a plaintiff in these circumstances is time barred by challenging the DOC's original sex offender classification (as either unconstitutional or having been done in violation of the procedures set forth in CRS 16-22-103(2)(d)), **then the plaintiff cannot challenge any consequence of that** erroneous classification. In other words, according to the Attorney General's office, once a DOC offender has been classified as a "sex offender," then all the collateral consequences of that designation are standard and automatic because there is a one sized fits all policy, set forth in the SOMB standards, that all "sex offenders" must engage in treatment, that treatment necessarily includes having to admit to and accept responsibility for each detail of the victim's original allegations of a sexual offense, and all sex offenders are automatically barred from any contact with children, even their own familial relations. Consequently, according to the Attorney General's office, if an offender was classified as a sex offender more than two years ago, then the offender cannot challenge the unconstitutional terms and conditions of parole that are imposed or challenge an unconstitutional revocation of parole -- even if that occurred less than two years ago. This Court rejected that argument in the related cases of Gross v. Madrid, 10-CV-1581-RPM and Gross v. Samudio, 11-CV-2594-RPM and should reject that argument in the

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 72

case at bar as well.

The Defendants continue to confuse the issue by complaining that Mr. Walker is suing for damages because the January 21, 2011 terms and conditions of parole were unconstitutional.  He is not.  He is suing because his August 10, 2011 revocation was unconstitutional.  The August 10, 2011 date is the first operative date that the Plaintiff is suing for damages for violation of his constitutional rights.  The description of events that occurred previously, are important to explain why the August 10, 2011 events are unconstitutional, but the Plaintiff is not suing for damages for injuries sustained prior to being arrested on August 10, 2011.

The Defendants cannot possibly argue that when the Plaintiff was paroled a second time, on March 15, 2012, that he cannot challenge the unconstitutionality of those terms and conditions of his parole.  That was clearly within two years of the filing of the original Complaint in the case at bar.  There is no administrative regulation or Colorado statute that states that once an offender is paroled, then the terms and conditions of his first parole govern all subsequent parole board actions.

One of the reasons why Mr. Walker did not challenge the January 21, 2011 terms and conditions of parole is that the parole board and his parole officer might not have been on actual or fair notice that the prosecutor in Mr. Walker's criminal case determined that there was no factual basis of a sexual offense to any of the charges he was pleading guilty to and therefore Mr. Walker did not and could not meet the statutory or SOMB definition of a "sex offender."  Mr.

Walker put the parole board and his parole officer on notice of these facts subsequent to his January 21, 2011 parole.  By the second time he was paroled, the parole board and Struzeski were on notice of these facts.[3]

**B.**   ***Heck v. Humphrey,* 512 U.S. 477 487 (1994) does not bar Mr. Walker's 42 USC 1983 claims since he is not challenging the fact of or the duration of his sentence.**

Next, the Defendants erroneously argue that somehow *Heck v. Humphrey,* 512 U.S. 477 487 (1994) applies to the case at bar.   Under *Heck*, a plaintiff cannot assert a §1983 claim that, if successful, would necessarily imply the invalidity of a previous conviction or sentence, unless the plaintiff can demonstrate favorable termination of the prior conviction or sentence. *Id*. at 487. As the Supreme Court held:

---

[3] The SOMB is a therapeutic model for the "treatment" (not punishment) of sex offenders, and supposedly the basis of the SOMB Standards and Guidelines are therefore only validated for offenses that are <u>actual</u> sex offenses under the Colorado General Assembly's and SOMB's definitions.  Sex offender "treatment" is therefore only validated for those offenses that are defined as sex offenses under the SOMB Standards and Guidelines. There is *nothing*, including the work from the SOMB that provides any rational basis to conclude that anyone other than a defined "sex offender," meeting the SOMB or statutory definition will benefit from SOMB sex offender treatment and monitoring.  Since Mr. Walker was not a "sex offender" by definition, then sex offender "treatment" could not be reasonably calculated to rehabilitate him and could not be a valid term and condition of his parole.  That would be like imposing dialysis on someone with working kidneys -- as a precaution *just in case* something was wrong with their kidneys after all.  The SOMB touts itself as having promulgated their Standards and Guidelines that have a rational basis in legitimate medical and therapeutic treatment; but in order for their therapeutic treatment model to make any bit of rational sense, the Courts, the DOC, the parole board and parole officers must accept the SOMB's own definition of a "sex offender" at face value.  The SOMB can only treat "sex offenders," not someone else that does not meet the SOMB definition of a "sex offender."  Mr. Walker did not meet that definition.  By March 12, 2012 all the Defendants were on notice that he did not meet that definition

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–87. The purpose behind Heck is "to prevent litigants from using a 42 USC 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007).    However, Mr. Walker *is not* challenging the invalidity of his conviction nor is he contesting the length of his sentence.    This is another argument previously rejected by this Court in the related cases of Gross v. Madrid, 10-CV-1581-RPM and Gross v. Samudio, 11-CV-2594-RPM.

Implicit in the Defendants' argument is that Mr. Walker cannot challenge the terms and conditions of his parole because parole was a mere "privilege." This is incorrect.  Mr. Walker was on mandatory parole at all times relevant to the Complaint.    CRS 18-1.3-401(1)(a)(V)(A) and (B) sets forth the mandatory parole provisions that apply to Mr. Walker.  Each felony conviction includes a *mandatory* period of parole that is served after the DOC sentence.  Mr. Walker alleged, and the state defendants do not dispute that Mr. Walker was on *mandatory* parole at all relevant times in 2011-2013.  Whether or not revoking his mandatory parole was constitutional or unconstitutional, does not change the *length of his sentence.*  Either way, his three year sentence to mandatory parole is exactly the

same length:  whether each day was spent on parole, or spent back in the DOC after his parole was revoked or some combination therof.

In any event, it is not Mr. Walker who is challenging the validity of his state court conviction.   Ironically, he is seeking to force the Defendants to *acknowledge the validity of his state court conviction*.   It is the Defendants, not the Plaintiff, who are trying to undermine the Plaintiff's state court conviction that there is "no factual basis" of a sexual offense for any of the crimes for which he was convicted.   Instead, it is the Plaintiff who is suing the Defendants for damages for their failure to acknowledge the validity of his state court conviction, for their ad hoc attempt to rewrite the elements of the crimes for which he was convicted (in violation of the express terms of his plea bargain), and then impose unconstitutional terms of his parole.

There is no case, and the Defendants have cited no case, that holds that *Heck v. Humphrey,* 512 U.S. 477 487 (1994) means that an offender cannot challenge the constitutionality of the terms of his parole.   To the contrary, it is perfectly legitimate for a parolee to bring a 42 USC 1983 action to challenge the constitutionality of the terms and conditions of his parole.   For example, In *Warner v. Orange County Probation Dept.,*173 F.3d 120, 121 (2d Cir. 1999), *Turner v. Hickman*, 342 F. Supp. 2d 887, 897 (E.D. Cal. 2004) and *Basch v. Sumiec,* 139 F.Supp.2d 1029, 1035-6 (E.D. Wisc. 2001), the courts held that a parolee may challenge terms and conditions of parole that infringe on the parolee's First Amendment rights.   Both of these cases are post *Heck v. Humphries*.   If Mr. Walker wins this lawsuit, the verdict *will not* mean that the

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 76

Plaintiff's original state court conviction was invalid, his original sentence was invalid, or the length of his sentence was invalid. The Plaintiff is challenging none of those things in this lawsuit. Instead, he is suing the parole board and parole officers for forcing him to undergo sex offender treatment that necessarily included that he be forced to admit to and accept responsibility for false allegations of sexual misconduct.

The Defendants also complain that the Plaintiff could have filed a Rule 35(c) motion (pursuant to the Colorado Rules of Criminal Procedure), since Rule 35(c)(2)(VII) provides that a post conviction motion can allege that his parole was wrongfully revoked. This is another red herring. There is no requirement that a plaintiff in a 42 USC 1983 lawsuit exhaust state court remedies (and the Defendants do not make that claim).

The Rule 35(c)(2)(VII) state court remedy was not an adequate remedy at state law, because no damages remedy is available. Rule 35(c) motions do not provide a remedy for damages. Rule 35(c) motions are filed in the original criminal case, and the parole officers and parole board members are not parties. The state court judge in the criminal case has no jurisdiction to punish the parole officers or parole board for unconstitutional conduct.

The Rule 35(c) option was not even an adequate remedy to redress the Plaintiff's parole revocation. Each time the Plaintiff's parole was revoked, it was revoked for no more than 180 days (26 weeks) because his parole was revoked for technical violations only. See, CRS 17-2-103(11)(b)(II). Pursuant to Criminal Rule of Procedure Rule 35(c)(3)(IV), the District Court takes sixty days to

"complete its review" or it sets "a new date for completing its review."  Then, pursuant to Rule 35(c)(3)(V), the public defender is appointed, who then needs to determine whether it has a "conflict."  Then, the state court must direct the prosecution to respond to the Rule 35(c) motion, and then an evidentiary hearing is held, and then the state court has sixty days to make findings of fact and conclusions of law.  If Mr. Walker had prevailed, then the Denver District Attorney had the right to appeal to the Court of Appeals pursuant to Rule 35(c)(3)(IX).  Pursuant to the Colorado Rules of Appellate procedure, the District Attorney's Notice of Appeals would not have been due for seven weeks after the ruling appealed (Rule 4), then the Record not due for another 13 weeks (Rule 10), and then the District Attorney's Opening Brief would not have been due for another six weeks (Rule 31).

Therefore, as a practical matter, it always takes longer than 180 days for the Rule 35(c) motion to be resolved in the District court and then to become final after an appeal to the Colorado Court of Appeals.  As set forth above, the timeline exceeds 42 weeks.  This is why there has not been one single Rule 35(c)(2)(VII) motion filed to challenge a revocation of parole for alleged technical violations pursuant to  CRS 17-2-103(11)(b)(II) -- *ever in the history of Rule 35(c).*  There is not one single Colorado Appellate case construing Rule 35(c)(2)(VII) for that very reason.  Necessarily, the 180 day DOC turnaround for the alleged technical violations expires long before the Rule 35(c) timelines, including the appellate timeline, can take place.  This is why, as a practical matter, no parolee has a meaningful Rule 35(c)(2)(VII) remedy.  The only

meaningful remedy is a claim for damages, pursuant to 42 USC 1983, against the parole officer and/or parole board if the parole revocation was unconstitutional.

More importantly, because it is impossible to exhaust the Rule 35(c)(2)(VII) state court remedy, which must be brought and appealed prior to bringing a 28 USC 2254 application for a writ of habeas corpus, *Heck v. Humphrey,* 512 U.S. 477 (1994) is not a bar to bringing a 42 USC 1983 lawsuit to challenge a parole revocation that is premised on the alleged violation of unconstitutional terms and conditions of parole.   There can be **no** habeas remedy because it is necessarily impossible to exhaust the Rule 35(c) procedure and appeal in 180 days or less.  In *Butler v. Compton*, 482 F.3d 1277, 1278-81 (10th Cir. 2007), the Tenth Circuit implied in dicta that *Heck v. Humphrey* does not apply when a habeas remedy is lacking.  Other Circuits agree:  *Wilson v. Johnson*, 535 F.3d 262, 264, 267-68 (4th Cir. 2008) (holding *Heck* does not bar relief for petitioner seeking monetary damages for past confinement where it was no longer possible for petitioner to satisfy the favorable termination requirement via habeas corpus), *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 598, 601-03 (6th Cir. 2007) (holding *Heck* inapplicable where petitioner was incarcerated for less than thirty days and thus could not bring a challenge under the habeas corpus statute), *and Nonnette v. Small,* 316 F.3d 872, 874, 876 (9th Cir. 2002) (holding *Heck* does not bar parolee seeking damages for unconstitutional deprivation of good-time credits where habeas unavailable because petitioner had already served the term resulting from parole revocation).

**C.     Mr. Walker stated a claim for relief that the terms and conditions of his parole violated his constitutional rights.**

Beginning at page 11 of their Motion to Dismiss, the Defendants engage in an irrelevant analysis that Mr. Walker "fails to state a viable claim for the infringement of his First Amendment rights under the Establishment Clause." This is an irrelevant argument because Mr. Walker never claimed that his First Amendment rights were violated "under the Establishment Clause."  Nowhere in the Amended Complaint is there any claim that the terms and conditions of Mr. Walker's parole violate the "Establishment Clause" of the First Amendment. Instead, Mr. Walker alleged that the term and condition of his parole, that he must participate in Sex Offender Treatment that necessarily includes the requirement that he admit to and accept responsibility for C.D.'s false allegations of sexual assault, violated his Fifth and Fourteenth Amendment Rights. Additionally, he alleged that the term and condition of parole, that he participate in Sex Offender Treatment, violated his First and Fourteenth Amendment right to familial relationships because the "one sized fits all" sex offender treatment program requires that all sex offenders must be denied all contact with persons under the age of 18, even their own familial relations.

1.  The Fifth and Fourteenth Amendment violation

The case at bar is almost identical to the related cases of Gross v. Madrid, 10-CV-1581-RPM and Gross v. Samudio, 11-CV-2594-RPM.  This Court denied these same parole officers' and parole board members' motions to dismiss in those cases as well, and found that Mr. Gross had stated a claim for relief that

the Defendants violated his Fifth and Fourteenth Amendment rights by imposing sex offender treatment as a term and condition of his mandatory parole, when that sex offender treatment necessarily includes the requirement that he admit to and accept responsibility for the purported victim's false allegations of sexual assault. This Court remarked on the record, at the February 11 and March 10, 2011 hearings that the sex offender treatment requirement, of requiring an offender who did not commit a sex offense, to admit to and accept responsibility for something that did not happen, violates the Fifth Amendment right to not be compelled to incriminate oneself.  Mr. Walker makes the same claim here.  The right against compulsory self incrimination has been established for decades, since the US Supreme Court issued its opinion in *Miranda v. Arizona,* 384 U.S. 486 (1966).

*McKune v. Lile*, 536 U.S. 24 (2002) does not change or affect Mr. Walker's Fifth Amendment argument.  Mr. Lile argued that compulsory participation in sex offender treatment violated his Fifth Amendment rights because he was going to be required to accept responsibility for his past sexual actions.  This acceptance of responsibility could have been deemed criminal and could be brought against him thus making him a witness against himself.  The United States Supreme Court disagreed.  However, in the case at bar, Mr. Walker is not challenging the "sexual history" component of Colorado's sex offender treatment program.  He has no uncharged sex offenses in his past that he does not want to disclose.  That is not the issue.  The issue in the case at bar is the requirement in sex offender treatment that the offender take responsibility for the "index offense," --

in other words, the alleged offense that resulted in the sex offender classification. In Mr. Gross's and Mr. Walker's case, the "index offense" was not something for which they were convicted.  They were only falsely accused.  Mr. Gross was then acquitted, and Mr. Walker's prosecutor determined that the allegations were false and she stipulated that there was "no sexual basis" to the crimes for which Mr. Walker was convicted.  Thus, Mr. Walker's issue is that he will be compelled to admit to and accept responsibility for the offenses that C.D. falsely accused him of -- but that his own prosecutor previously determined were false allegations.  Thus, he will be made to bear "witness" against himself and admit to non existent crimes.  That violates the Fifth Amendment prohibition against Self Incrimination.

There is also the issue of the violation of the double jeopardy clause.  In the related cases, Mr. Gross was acquitted of any sex offenses.  In the case at bar, Mr. Walker was not convicted of any sex offenses because the District Attorney determined that C.D. had no credibility and his allegations of sexual assault were false.  Therefore, the prosecution entered into a plea bargain for conviction of non sex offenses, with a stipulation that there was no sexual basis to any of Mr. Walker's convictions and dismissed any sex offense charges.  As a result, neither Mr. Gross nor Mr. Walker is a sex offender as that term is defined by Colorado statute and the SOMB Standards.   Both Mr. Gross and Mr. Walker were on mandatory parole pursuant to their conviction for other felonies, having nothing to do with the (false) allegations of sexual misconduct.

The reason why there is a Double Jeopardy clause issue is because both men were designated by the DOC as sex offenders (based on these false

allegations made by the victim).   Because both men were designated as "sex offenders" (despite not meeting the statutory and SOMB definition of "sex offender"), the parole board defendants ordered both of them to participate in sex offender treatment as a term and condition of their parole.   This "treatment" necessarily included the requirement that they admit to and accept responsibility for the false allegations of sexual assault.    Both men refused to make this admission.   As a result, Mr. Gross was terminated from treatment, and Mr. Walker was refused admission to treatment in the first place.   Consequently, both men were returned to the DOC as a parole violator for violating the term and condition of parole that they engage in sex offender treatment.   Both men subsequently discharged their mandatory parole sentences in the DOC, both are now "off paper," and now both men have similar civil rights cases pending before this Court.   The defendant parole board members and parole officers placed both men in the position of going to prison for no reason other than the fact they refused to admit to and accept responsibility for conduct that they never engaged in -- and for which Mr. Gross was acquitted, and for which Mr. Walker's prosecutor stipulated never occurred and dismissed the charges.   This is incarcerating them, in a roundabout way, for the conduct for which they were accused of but never convicted.   This violates the Double Jeopardy clause.

The Fifth Amendment states that no person shall be subject "for the same offence to be twice put in jeopardy of life or limb."   The Double Jeopardy Clause protects an individual from being subjected to the hazards of trial and possible conviction more than once for the same offense.   In *Breed v. Jones*, 421 U.S.

519, (1975), Mr. Jones was adjudicated guilty of robbery as a juvenile offender. After the trial court determined that Mr. Jones was unfit for treatment as a juvenile, he was prosecuted for robbery as an adult.  The U.S. Supreme Court held that this violated the Double Jeopardy Clause.

The cases before this Court are not cases where Mr. Gross and Mr. Walker were convicted of a sex offense and sentenced to incarceration, then mandatory parole, and are claiming that revocation of the mandatory parole would violated the Double Jeopardy Clause.  Instead, Mr. Gross's and Mr. Walker's cases are analogous to the following:  In the *Breed* case, what if Mr. Jones was first tried as an adult for robbery and acquitted?  Could he then be tried as a juvenile and forced into "treatment" after adjudication as a juvenile offender for the same robbery charge?  Based on the reasoning in *Breed v. Jones*, it is clear that would violate the Double Jeopardy Clause.  If it violated the Double Jeopardy Clause to try Mr. Jones a second time for the same offense after he was adjudicated guilty the first time, it would certainly offend double jeopardy if he were adjudicated not guilty the first time.

However, that is exactly what the Defendants tried to do to Mr. Gross and Mr. Walker.  Mr. Gross was tried and acquitted for the charges the Adams County District Attorney chose to bring based on Ms. Kirkpatrick's false allegations for what Mr. Gross allegedly did to her on July 24, 1998.  Mr. Gross was required to engaged in at the one-sized fits all sex offender "treatment"  -- including the requirement that he admit to, accept "responsibility" for and pass a polygraph that he is being truthful in his admissions to the false allegations, or

else he will be terminated from "treatment."   The charges that were originally brought against Mr. Walker based on C.D.'s false allegations were dismissed, and the District Attorney stipulated that there was no sexual misconduct basis for any crime for which Mr. Walker was convicted.

To the extent that the Defendants are arguing that the designation of the Plaintiff as a "sex offender" does not violate the Double Jeopardy clause, the Plaintiff is not alleging that it is unconstitutional to incorrectly label him as a "sex offender."   The Defendants can affix any pejorative label on Mr. Walker that they want, including "sex offender," "short," "red-headed step child," or "convicted felon".   The Plaintiff did not sue on the theory that it was unconstitutional to defame him with the false label of "sex offender;" instead he sued because it violates the Double Jeopardy clause and other sections of the Constitution to require him to take certain actions (like admit to and accept responsibility for crimes which his prosecutor *stipulated* did NOT occur) or refrain from doing other things (like having contact with his juvenile familial relations); and it violates the Due Process clause to compel him to fulfill an impossible to comply with condition (to be enrolled in sex offender treatment) that is solely within the Defendants' control.

    2.    The First and Fourteenth Amendment violation

Requiring Mr. Walker to unnecessarily engage in sex offender treatment, when that treatment necessarily imposes a blanket prohibition against contact with persons under the age of 18 violated Mr. Walker's First and Fourteenth Amendment right to familial relationships.

The Plaintiff acknowledges that because he was a convicted felon on parole, there were some restrictions on his First Amendment rights.  But, any such restrictions must be rationally related to legitimate penological interests. *Overton v. Bazzetta*, 539 U.S. 126 (2003).   In *Warner v. Orange County Probation Dept.,* 173 F.3d 120, 121 (2d Cir. 1999), *Turner v. Hickman*, 342 F. Supp. 2d 887, 897 (E.D. Cal. 2004) and *Basch v. Sumiec,* 139 F.Supp.2d 1029, 1035-6 (E.D. Wisc. 2001), the courts held that a parolee may challenge terms and conditions of parole that infringe on the parolee's First Amendment rights.

In *NAACA v. Alabama,* 357 U.S. 449, 466 (1958), the United States Supreme Court held that there is a Fourteenth Amendment right "to pursue lawful private interests privately and to associate freely with others in doing so," and, further, that freedom to associate with organizations dedicated to the "advancement of beliefs and ideas" is an inseparable part of the Due Process Clause of the Fourteenth Amendment.  *Id.* at 466.  Therefore, Mr. Walker had a Fourteenth Amendment right to associate with his under aged siblings and nieces and nephews.   The only reason why the Defendants restricted Mr. Walker's freedom of association is because he was designated as a "sex offender."   Other offenders on parole have no automatic or blanket prohibition from associating with their under aged familial relations -- even those offenders on parole for causing a child (non sexual) physical injuries -- like breaking a child's leg with a baseball bat.

More specifically, Mr. Walker had a Fourteenth Amendment right to familial association.  *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993).  The

freedom of intimate association is a substantive due process right, as is its subset, the familial right of association.  The Tenth Circuit first recognized this right in *Trujillo v. Board of County Commissioners,* 768 F.2d 1186, 1188-89 (10th Cir. 1985) – almost thirty years before the events in the case at bar.    *Griffin, supra*, 983 F.2d at 1546.

In *Trujillo*, the plaintiffs were a mother and her adult daughter, and they alleged that that the wrongful death of their adult son and brother, Richard Trujillo, while incarcerated at the Santa Fe County Jail, deprived them of their constitutional right of familial association.  *Trujillo, supra* 768 F.2d at 1187.  Many courts have recognized liberty interests in familial relationships other than strictly parental ones.  *See, e.g., Moore v. City of East Cleveland,* 431 U.S. 494, (1977) (grandmother and grandsons who were cousins); *Smith v. Organization of Foster Families,* 431 U.S. 816 (1977) (foster parents have liberty interest in relationship with foster children); *Wilson v. Taylor,* 733 F.2d 1539 (11th Cir. 1984) (interference with dating relationship actionable under 42 USC 1983); *Rivera v. Marcus,* 696 F.2d 1016, 1024-25 (2d Cir. 1982) (half-sister who was also foster mother had protected interest in siblings); *Drollinger v. Milligan,* 552 F.2d 1220, 1226-27 (7th Cir. 1977) (deprivation of grandfather's relationship with grandchild actionable under 42 USC 1983).  See generally, *Trujillo, supra* 768 F.2d at 1188-89.

The Tenth Circuit noted that the familial relationships in *Trujillo* do not form the outer limits of protected intimate relationships.   A broad range of human relationships are subject to constitutional protection.  *Trujillo, supra* 768 F.2d at

1189 n.5.   The Tenth Circuit specifically rejected the position taken by the Seventh Circuit in *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984*), overruled by Russ v. Watts,* 414 F.3d 783 (7th Cir. 2005), that "a deliberate deprivation of any intimate associational relationship other than that of a parent, spouse, or child would not be actionable under section 1983." *Trujillo, supra,* 768 F.2d at 1190.   In other words, Mr. Walker has a constitutionally protected interest in the familial association with his half siblings, and his nieces and nephews.

However, the analysis does not end with the assertion of the familial association.   Even if a plaintiff asserts a cognizable right of familial association in a given case, the determination of whether that plaintiff's rights were violated "requires a balancing of liberty interests against the relevant state interests." *Griffin, supra, 983 F.2d at 1547* (brackets and internal quotation marks omitted). Specifically, the Tenth Circuit instructs the courts to  "weigh these interests to determine whether [the state actor's] conduct . . . constituted an undue burden on [the plaintiff's] associational rights."   *Id.*   To determine whether a person's familial association rights have been violated, the court must weigh the state's interests in, for example the "treatment" of an offender convicted of other felony offenses against that of the offender's interests in his familial right of association to his extended family.   *Trujillo, supra, 768 F.2d at 1190* (noting that the freedom of intimate association "protect[s] interpersonal relationships from *unwarranted* intrusion by the state") (emphasis added).

In the case at bar, unlike the *Trujillo* case, the Defendants' actions were clearly intended to interfere with the Plaintiff's familial relationships.[4]   He was directly and intentionally ordered to have no contact with anyone under the age of 18 -- even his under aged half siblings and his nieces and nephews. Therefore, Mr. Walker stated a constitutional claim.   The restrictions on Mr. Walker's constitutional right to associate with his under aged half siblings and his nieces and nephews, and talk to them and about them are not rationally related to any legitimate penological interest.   The sex offender "treatment" provided to Mr. Walker was the "one sized fits all" treatment given to all sex offenders – in accordance with the policy of the SOMB Defendants of treating all sex offenders alike, without regard to the age and gender of the offender or the age, gender or number of alleged victims or the nature of the offense or whether violence or a weapon was used in the commission of an offense.   This "one sized fits all" policy treats all sex offenders as serial pedophiles, who place all children in the community at risk of sexual assault, without regard to whether a particular offender has ever committed a sex assault on a child or even has pedophiliac tendencies.   Mr. Walker has never been accused (much less convicted) of a sex offense on a child, thus denying him access to all children, even his own familial relations, is an *unwarranted* intrusion by the state on his constitutionally

---

[4] In *Trujillo*, even if the defendants' intentional conduct resulted in the death of the plaintiffs' decedent, the defendants' actions were not taken with the intent to deprive the plaintiffs of the familial association with their dead family member.  In contrast, in the case at bar, the Defendants' actions were directed at the Plaintiffs with the intention to deprive Mr. Walker of the familial association of his grandchildren.  In fact, it is the SOMB Defendants' policy that all purported sex offenders, such as Mr. Walker, must necessarily be denied their familial association with their underage relatives, that is at the heart of this lawsuit.

protected familial relationships with his half siblings and nieces and nephews. To the extent the Defendants disagree, this involves disputed issues of fact and cannot be determined on a motion to dismiss.

### D.  The State Defendants are not entitled to Qualified Immunity as a matter of law

In order to be entitled to have this Complaint dismissed, the Defendants would have to be entitled to qualified immunity as a matter of law.   The Defendants would only be entitled to qualified immunity as a matter of law only if the constitutional rights that the Plaintiff claimed were violated were not clearly established at the time of the incident.

The Plaintiff does not have to cite a case dealing with an identical factual situation as the case at bar in order to defeat the claim of qualified immunity. Instead, he must merely identify legal authority that makes it "apparent" that a reasonable state official, confronted with the facts as in the case at bar, would have known that his or her actions were unconstitutional.  *Hope v. Pelzer,* 536 U.S. 730, 739 (2002).  Qualified immunity operates "to ensure that before they are subjected to suit, government officials are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206 (2001).  For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  In other words, "in the light of pre-existing law the unlawfulness must be apparent."  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

As set forth above, pursuant to the cases cited in the sections above, the law was clearly established  by 2011-2013 that while the parole board may have

broad discretion to set terms and conditions of parole, this discretion is not unfettered and may not infringe upon the parolee's ability to exercise his constitutional rights or if the term and condition are not reasonably related to the purposes of parole.

**E.   Mr. Walker alleged personal participation on behalf of all members of the parole board.**

The state defendants incorrectly assert that Mr. Walker failed to allege personal participation by several members of the parole board.   The Attorney General makes some sort of argument that the unnamed parole board members were acting in a "supervisory capacity."  Not true.  To the contrary, the decision to parole an offender, under what terms and conditions, and the decision to then revoke parole for violating those terms and conditions, are made by the entire parole board.   Therefore, the entire parole board is liable to the Plaintiff for revoking his parole because he failed to comply with an unconstitutional term and condition of his parole.

### IN THE ALTERNATIVE, THE COURT SHOULD GRANT THE PLAINTIFF LEAVE TO AMEND THE COMPLAINT

If the Court agrees with the Defendants that the Amended Complaint, as currently drafted, fails to state claims upon which relief may be granted, then Mr. Walker requests that the Court grant leave to submit another Amended Complaint, to cure any deficiencies, as the Court might identify.  The Court may only dismiss a complaint if there are no set of facts that the Plaintiff could allege upon which relief could be granted.

Rule 15(a) of the Federal Rules of Civil Procedure declares that leave to amend "should be freely given when justice so requires."  According to the United States Supreme Court, this mandate must be heeded.  *Foman v. Davis,* 317 U.S. 178, 182 (1962). In absence of reason to refuse leave to amend, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party or futility of amendment, leave to amend should be freely given.  *Triplett v. Leflore County,* 712 F.2d 444, 446 (10th Cir. 1983).

## CONCLUSION

For the reasons set forth above, Mr. Walker respectfully submits that the Defendants' motion to dismiss is without merit and should be denied.  In the alternative, Mr. Walker requests that the Court grant him leave to amend and correct any deficiencies in the Amended Complaint as set forth above.


DATED March 9, 2014.


Respectfully submitted,


/s/ Alison Ruttenberg

Alison Ruttenberg
PO Box 19857
Boulder, CO  80308
(720) 317-3834
Fax:  (888) 573-3153
Ruttenberg@me.com

**Attorney for Plaintiff**


CERTIFICATE OF SERVICE

Appellate Case: 14-1380     Document: 01019371905     Date Filed: 01/19/2015     Page: 92

I hereby certify that I have, on March 9, 2014, served the foregoing upon all parties via electronic service through the PACER ECF system, with service to:

Nichole Gellar,
Colorado Attorney General's Office
Nichole.Gellar@state.co.us

Marlon Walker
16409 Oakmoor Pl
Parker CO  80134


/s/ Alison Ruttenberg

# COLORADO SEX OFFENDER MANAGEMENT BOARD

## STANDARDS AND GUIDELINES FOR THE ASSESSMENT, EVALUATION, TREATMENT AND BEHAVIORAL MONITORING OF ADULT SEX OFFENDERS



Colorado Department of Public Safety
Division of Criminal Justice
Office of Domestic Violence &
Sex Offender Management

700 Kipling Street, Suite 3000
Denver, CO 80215
(303) 239-4442 or (800) 201-1325 (in Colorado)
website: http://dcj.state.co.us/odvsom/
email: somb@cdps.state.co.us

*Revised November 2011*

# DEFINITIONS

**Accountability:**   Accurate attributions of responsibility, without distortion, minimization, or denial.

**Adjudication:**   The legal review and determination of a case in a court of law. In criminal cases, a juvenile who is convicted of a sexual offense is deemed "adjudicated." An adult convicted of a similar offense is deemed "convicted." An adult can be adjudicated with an Imposition of Legal Disability. "Adjudication" means a determination by the court that it has been proven beyond a reasonable doubt that the juvenile has committed a delinquent act or that a juvenile has pled guilty to committing a delinquent act. In addition, when a previous conviction must be pled and proven as an element of an offense or for purposes of sentence enhancement, "adjudication" means "conviction" (refer to section 19-1-103, C.R.S.).

**Approved Supervisor:**   A person who is authorized to supervise the sex offender's contact with a specified child or children per 5.760. This person is an individual who has met the criteria described in 5.771-5.775, has been approved by the community supervision team (CST), and has signed the approved supervisor contract.

**Approved Community Support Person:**   A person who provides positive support for the sex offender's efforts to change and who may accompany the sex offender in approved activities that do not involve children. Someone significant to the offender and/or a roommate who attends treatment with the offender, has a positive relationship with the probation officer and treatment provider, and is well versed in the offender's probation and treatment requirements.

**At Risk Adult:**   An individual who is less able to protect him/herself based on diminished capacity or position of trust (refer to section 18-6.5-102, C.R.S.).

**Authorized Representative:**   An individual designated by the person receiving services, or by the parent or guardian of the person receiving services, if appropriate, to assist the person receiving services in acquiring or utilizing services and support (refer to section 27-10.5-102, C.R.S.).

**Assessment:**   The collection of facts to draw conclusions which may suggest the proper course of action. Although the term "assessment" may be used interchangeably with the term "evaluation," in this document assessment generally has the broader usage, implying

9

the collection of facts by a variety of agencies or individuals (e.g. pre-sentence investigator), while evaluation is generally used to mean the sex offense-specific evaluation conducted by a therapist (see also Evaluation).

**Behavioral Monitoring:** A variety of methods for checking, regulating and supervising the behavior of sex offenders.

**Caregiver:** Person whose primary caretaking responsibilities include meeting the various daily needs (e.g. physical, emotional, and financial) of his/her child.

**Case Management:** The coordination and implementation of the cluster of activities directed toward supervising, treating and managing the behavior of individual sex offenders.

**Child Contact Assessment:** A comprehensive evaluation conducted by a SOMB approved evaluator to assist the CST in determining the appropriateness of contact between a sex offender and his/her own child. Also known as a CCA.

**Clinical Experience:** Those activities directly related to providing evaluation and/or treatment to individual sex offenders, e.g. face-to-face therapy, report writing, administration, scoring and interpretation of tests; participation on case management teams of the type described in these *Standards and Guidelines*; and clinical supervision of therapists treating sex offenders.

**Community Centered Board (CCB):** A private non-profit corporation that provides case management services to persons with developmental disabilities. The CCB determines eligibility of such persons within a specified geographical area, serves as the single point of entry for persons to receive services, determines the needs of eligible persons, prepares and implements long-range plans, and annual updates to those plans. Other responsibilities include: establishing a referral and placement committee, obtaining or providing early intervention services, notifying eligible persons and their families regarding the availability of services and supports, and creating a human rights committee (refer to section 27-10.5-105, C.R.S.).

**Community Supervision Team:** A team of professionals including a minimum of the supervising officer, the treatment provider, and the polygraph examiner who collaborate to make decisions about the offender. Also known as the CST.

**Containment Approach:** A method of case management and treatment that seeks to hold offenders accountable through the combined use of both offenders' internal controls and external control measures (such as the use of the polygraph and relapse prevention plans). A

this manner, for the purpose of measuring physiological changes associated with deception.

**Potential Victim:**   Any person at risk of abuse or manipulation by the sex offender.

**Provider List:**   The list, published by the SOMB, identifies the treatment providers, evaluators, and polygraph examiners who meet the criteria set forth in these *Standards*. The determination that the providers meet the criteria is made by the SOMB based on an application submitted by the provider, outlining their experience, training and credentials, a criminal history check and background investigation, written references and reference checks and a review of relevant program materials and products. Placement on the list must be renewed every three years.

**Regional Center:**   A facility or program operated directly by the Department of Human Services, which provides services and supports to persons with developmental disabilities (refer to Section 27-10.5-102, C.R.S.).

**Safety Plan**:   A written document derived from the process of planning for community safety. The document identifies potential high-risk situations and addresses ways in which situations will be handled without the offender putting others at risk. The plan requires the approval of the community supervision team.

**Secondary Victim:**   A **s**econdary victim is a relative or other person closely involved with the primary victim who is impacted emotionally or physically by the trauma suffered by the primary victim.

**Sex Offender:**   The following definition is based on Section 16-11.7-102, C.R.S. For purposes of this document a sex offender is:

(1) Any (adult) person convicted of a sex offense (defined below) in Colorado on or after January 1, 1994, or;
(2) Any person convicted in Colorado on or after July 1, 2000, of any criminal offense with the underlying factual basis being a sex offense, or;
(3) Any person who is adjudicated as a juvenile or who receives a deferred adjudication on or after July1, 2002, for an offense that would constitute a sex offense if committed by an adult or for any offense, the underlying factual basis of which involves a sex offense, or;
(4) Any person who receives a deferred judgment or deferred sentence for the offenses specified in below is deemed convicted, or;
(5) Any (adult) person convicted of any criminal offense in Colorado on or after January 1, 1994, and;

      a) who has previously been convicted of a sex offense in Colorado, or;

15

093

b) who has previously been convicted in any other jurisdiction of any offense which would constitute a sex offense in Colorado, or;

c) who has a history of any sex offenses as defined in the *Sex Offense* definition below.

The determination of the legal status of a sex offender as either an adult or a juvenile is defined by statute.

A sex offender is also referred to as an "offender" in the body of this document; a sex offender is also referred to as a "client" and an "examinee" in sections relating to treatment and polygraph examinations respectively.

**Sex Offense:**
The following definition is based on statute.[2] For the purposes of this document, a sex offense is:

(1) Sexual Assault;

(2) Sexual Assault in the first, second and third degree as it existed prior to July 1, 2000;

(3) Unlawful Sexual Contact;

(4) Sexual Assault on a child;

(5) Sexual Assault on a child by one in a position of trust;

(6) Sexual Assault on a client by a psychotherapist;

(7) Enticement of a child;

(8) Incest;

(9) Aggravated Incest;

(10) Trafficking in children;

(11) Sexual Exploitation of children;

(12) Procurement of a child for sexual exploitation;

(13) Indecent Exposure;

(14) Soliciting for child prostitution;

(15) Pandering of a child;

---

[2] Section 16-11.7-102 (3), C.R.S., 2006. It is important to refer to the most current edition of the Colorado Revised Statutes.

(16)    Procurement of a child;

(17)    Keeping a place of child prostitution;

(18)    Pimping of a child;

(19)    Inducement of child prostitution;

(20)    Patronizing a prostituted child;

(21)    Internet luring of a child;

(22)    Internet sexual exploitation of a child, or;

(23)    Criminal attempt, Conspiracy, or Solicitation to commit any of the above offenses.

**Sex Offender Polygraph:**    A criminal specific-issue polygraph examination of a suspected or convicted sex offender. Refer to section 6.000 for details.

**Sex Offense-Specific Treatment:**    Consistent with current professional practices, sex offense-specific treatment is a long term comprehensive set of planned therapeutic experiences and interventions to change sexually abusive thoughts and behaviors. Such treatment specifically addresses the occurrence and dynamics of sexually deviant behavior and utilizes specific strategies to promote change. Sex offense-specific programming focuses on the concrete details of the actual sexual behavior, the fantasies, the arousal, the planning, the denial and the rationalizations.    Due to the difficulties inherent in treating sex offenders and the potential threat to community safety, sex offense-specific treatment should continue for several years, followed by a lengthy period of aftercare and monitoring.  Much more importance is given to the meeting of all treatment goals than the passage of a specific amount of time, since offenders make progress in treatment at different rates. The primary treatment modality for sex offense specific treatment is group therapy for the offenders. Adjunct modalities may include partner or couples therapy, psycho-education, and/or individual therapy. However, such adjunct therapies by themselves do not constitute sex offense-specific treatment. Refer to section 3.000 for details.

**Sexual Paraphilias/ Sexual Deviance:**    A subclass of sexual disorders in which the essential features are "recurrent intense sexually arousing fantasies, sexual urges, or behaviors generally involving (1) nonhuman objects, (2) the suffering or humiliation of oneself or one's partner, or (3) children or other non-consenting persons that occur over a period of at least 6 months. The behavior, sexual urges or fantasies cause clinically significant distress or impairment in social,

17

095

occupational, or other important areas of functioning. Paraphiliac imagery may be acted out with a non-consenting partner in a way that may be injurious to the partner. The individual may be subject to arrest and incarceration. Sexual offenses against children constitute a significant proportion of all reported criminal sex acts" (DSM-IV, pages 522-523). This class of disorders is also referred to as "sexual deviations." Examples include pedophilia, exhibitionism, frotteurism, fetishism, voyeurism, sexual sadism, sexual masochism and transvestic fetishism. This classification system includes a category labeled "Paraphilia Not Otherwise Specified" for other paraphilias which are less commonly encountered.

**Shared Living Arrangement:**   A separately contained living unit in which more than one adult sex offender in treatment resides for the purpose of increased public safety, increased accountability, intensive containment, and more consistent treatment interventions, provided by treatment providers who are approved by the SOMB. Also known as a SLA. Refer to section 3.170 for details.

**SOMB:**   The Colorado Sex Offender Management Board.

**Special Populations:**   Persons subject to federally mandated protections and accommodations under the *Americans with Disabilities Act (1990*), *Section 504 of the Rehabilitation Act (1973),* or who were subject to the *Education of All Handicapped Act (1975)* and the subsequent *Individuals with Disabilities Education Act (1990)* and *Individuals with Disabilities Education Improvement Act (2004),* are clearly identified as special populations according to those legislative guidelines.

**Standard:**   Criteria set for usage or practices; a rule or basis of comparison in measuring or judging.

**Standards and Guidelines:**   The S*tandards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders.*

**Supervising Officer:**   The probation or parole officer or community corrections case manager to whom the offender's case is assigned.

**Treatment:**   According to Section 16-11.7-102(4), C.R.S. treatment means therapy, monitoring and supervision of any sex offender which conforms to the *Standards* created by the SOMB (see also Sex offense-specific treatment).

**Treatment Provider:**   A person who provides sex offense-specific treatment to sex offenders according to the *Standards and Guidelines* contained in this document.

18

096

**Victim:**

Any person against whom sexually abusive behavior has been perpetrated or attempted.

**Victim Clarification Process:**

A process designed for the primary benefit of the victim, by which the offender clarifies that the responsibility for the assault/abuse resides with the offender. The process will clarify that the victim has no responsibility for the offender's behavior. It also addresses the damage done to the victim and the family. This is a lengthy process that occurs over time, including both verbal and written work on the part of the offender. Although victim participation is never required and is sometimes contraindicated, should the process proceed to an actual clarification meeting with the victim, all contact is victim centered and based on victim need. Refer to section 5.000 for details.

19

# 5.000
# STANDARDS AND GUIDELINES FOR MANAGEMENT OF SEX OFFENDERS ON PROBATION, PAROLE AND COMMUNITY CORRECTIONS

**5.100    ◆    Establishment of an Interagency Community Supervision Team (CST)**

**5.110**    As soon as possible after the conviction and referral of a sex offender to probation, parole, or community corrections, the supervising officer should convene a (CST) to manage the offender during his/her term of supervision:[12] When offenders are placed in institutions, "community" refers to the institutional setting and there is a modified CST. See 5.120 for details.

    A.    Community and victim safety, and risk management are paramount when making decisions about the management and/or treatment of offenders.

    B.    The purpose of the team is to staff cases, share information, ensure consistency, and make informed decisions related to risk assessment, treatment, behavioral monitoring, and management of each offender. The team should use the sex offense-specific evaluation and pre-sentence investigation as a starting point for determining the best treatment match.

    C.    Supervision and behavioral monitoring is a joint, cooperative responsibility of the supervising officer, the treatment provider, and the polygraph examiner.[13]

---

[12] Petersilia, J., & Turner, S. (1993). Intensive Probation and Parole. In M.H. Tonry, ed., *Crime and Justice: A Review of Research.*Chicago: University of Chicago Press.; Gendreau, P., Goggin, C., & Fulton, B. (2000). Intensive probation in probation and parole settings. In C. R. Hollin (Ed.), *Handbook of Offender Assessment and Treatment.* 195-204. Chichester, UK: John Wiley & Sons Ltd.; Cumming, G., &Buell, M. (1997). *Supevision of the Sex Offender.* Brandon, VT: Safer Society Press.; Kercher, G., & Long, L. (1991). *Supervision and Treatment of Sex Offenders.* Huntsville, TX.: Sam Houston Press.; O'Connell, M., Leberg, E., & Donaldson, C. (1990). *Working with Sex Offenders: Guidelines for Therapist Selection.* Thousand Oaks, CA: Sage Publications, Inc.; English, K., Pullen S., and Jones, L. (eds.). (1996). *Managing Adult Sex Offenders: A Containment Approach.* American Probation and Parole Association.; Center for Sex Offender Management (CSOM). (January 2000). *Community Supervision of the Sex Offender: An Overview of Current and Promising Practices.* Retrieved from: http://www.csom.org/pubs/supervision2.pdf; CSOM. (October 2000). *The Collaborative Approach to Sex Offender Management.* Retrieved from: http://www.csom.org/pubs/collaboration.pdf; Baker, D.K., Skolnick, J., Doucette, G., Levitt, G., & O'Connor, C. (2005). Intensive Parole Supervision of the Sex Offender—Putting the Containment Approach Into Practice. In B. Schwartz, ed. *The Sex Offender: Issues in Assessment, Treatment, & Supervision of Adult and Juvenile Populations, Volume V.* Kingston, NJ: Civic Research Institute.

[13] McGrath, R. J., Hoke, S. E., & Vojtisek, J. E. (1998). Cognitive-behavioral treatment of sex offenders: A treatment comparison and long-term follow-up study. *Criminal Justice and Behavior.* 25. 203-225.; Abrams, S., & Abrams, J. (1993). Polygraph Testing of the Pedophile. Ryan Gwinner Press. ; Scott, L.K. (1997). Community Management of Sex Offenders. In B. Schwartz, ed. *The Sex Offender: New Insights, Treatment Innovations and Legal Developments, Volume II.* Kingston, NJ: Civic Research Institute.; English, K., Pullen S., and Jones, L. (eds.) (1996) *Managing Adult Sex Offenders: A Containment Approach.* American Probation and Parole Association.; Center for Sex Offender Management (CSOM). (January 2000). *Community Supervision of the Sex Offender: An Overview of Current and Promising Practices.* Retrieved from: http://www.csom.org/pubs/supervision2.pdf; CSOM. (October 2000). *The Collaborative Approach to Sex Offender*

- The offender demonstrates noncompliance or resistance with treatment or supervision;

- The offender has approved victim contact and is reporting or demonstrating difficulties;

- The collapse of the offender's social support;

- The offender demonstrates emotional collapse;

- The offender's sexual deviance increases;

- The offender demonstrates hostility;

- The offender is sexually preoccupied.

9. Offender access to populations identified by the CST as being vulnerable should be restricted.

   *Discussion: In rare cases when the sentencing Court orders treatment conditions that do not meet the Standards and Guidelines and the treatment provider believes a variance is clinically indicated, it shall be sought by the treatment provider through application to the SOMB. For these offenders, the supervising officer should maximize the use of surveillance, monitoring and containment methods including more frequent use of polygraphs.*

**5.620** In addition to general conditions imposed on all offenders under supervision, the supervising agency should impose the following special conditions on sex offenders under supervision.

**A.** Pursuant to §16-22-106(1)(a), C.R.S. and §16-22-108, C.R.S., offenders must register as a sex offender with the local law enforcement agency within **5 business days** after being given notice to register. If they move, they must re-register within **5 business days** following their move. They must also fill out an address change form with the law enforcement office they last registered. Regardless of whether or not the offender moves, they must register annually on their birth date or per statute.

**B.** If convicted of any Felony, or Misdemeanor offense involving unlawful sexual behavior or if granted a deferred sentence for an offense involving unlawful sexual behavior, offenders shall be required to submit to and pay for a test of their biological substance to determine genetic markers (DNA) in accordance with §16-11-102.4, C.R.S.

**C.** Offenders shall have no contact with any children under the age of 18, including their own children, nor attempt contact except under circumstances approved in advance and in writing by the supervising officer in consultation with the CST. Contact includes correspondence, written or verbal, telephone contact, or any communication through a third party.

   1. The offender shall not engage in any activities to purposefully entice

89

children.

**D.** If an offender has incidental contact with children, they will be civil and courteous to the children and <u>immediately</u> remove themselves from the situation. The offender will discuss the contact at their next treatment session and their next supervision appointment.

**E.** Offenders shall not reside or be in a residence with any children under the age of 18, including their own children, unless ordered by the Court.

**F.** Offenders shall have no contact with any victim (the victim of the current offense or a victim from any other offense) including correspondence, telephone contact, or communication through a third party except under circumstances approved in advance and in writing by the supervising officer in consultation with the CST. They shall not enter onto the premises, travel past or loiter near where the victim resides.

**G.** Offenders shall not go to or loiter near schoolyards, parks, playgrounds, swimming pools, arcades or other places primarily used by children under the age of 18.

**H.** Offenders must inform their supervising officer of all their significant relationships and they may be required by the supervising officer to inform certain people of their present offense and restrictions. Offenders shall not date or marry anyone who has children under the age of 18, unless approved in advance and in writing by the supervising officer in consultation with the CST.

**I.** Offenders shall not be employed or participate in any volunteer activity where they have contact with children under the age of 18 except under circumstances approved in advance and in writing by the supervising officer in consultation with the CST.

**J.** Offenders shall not access, possess, utilize, or subscribe to any sexually oriented material or material related to their offending behavior to include, but not limited to, mail, computer, television, or telephone, nor patronize any place where such material or entertainment is available.

  1. The offender may not place or respond to any personal ads in any media (e.g. newspapers, magazines, telephonic, Internet). The offender shall not solicit any escort service.

**K.** Any change of residence must receive prior approval by the supervising officer and those with whom the offender resides must know that they are a sex offender.

  1. The offender must secure advanced approval from the supervising officer if anyone moves into their residence or stays at their residence. This includes people staying on a permanent or temporary basis (including overnight visitors). Offenders must notify their supervising officer immediately if someone moves out of their residence. The offender shall disclose to anyone staying in their residence that they are a sex offender.

**L.** Offenders shall abide by any curfew imposed by the supervising officer.

**M.** Offenders shall not hitchhike or pick up hitchhikers.

**Y.** The offender shall allow their supervising officer to search their personal residence or vehicle. Offender's personal property is subject to seizure if it violates any of the terms and conditions of their supervision.

**Z.** Offenders may be subject to location monitoring using Electronic Home Monitoring (EHM), Global Position Satellite (GPS), or other forms of electronic monitoring.

**AA.** Offenders shall not utilize, by any means, any social networking forums offering an interactive, user-submitted network of friends, personal profiles, blogs, chat rooms, or other environment which allows for real-time interaction with others without permission from the supervising officer and the CST.

**5.621** These conditions are subject to modification/waiver when an offender is identified as low risk via the adult sex offender LRP by a unanimous decision from the CST.

### 5.700 ◆ Sex Offenders' Contact with Victims, Minor Children, and At Risk Adults

Contact is restricted until more is known about an offender's risk for recidivism, and even when an offense specific evaluation and CCA have been completed accurate risk prediction is limited. The offense for which the offender was charged and convicted likewise is not the only indicator of risk to offend against minor children.[20] Additional information may be discovered at anytime and should be incorporated into assessments and team decisions regarding offender management. An important aspect of ongoing risk assessment is measuring an offender's ability to comply with the requirements of treatment and supervision.[21]

A growing body of research indicates most sex offenders supervised by the criminal justice system have more extensive sex offending histories, including multiple victim and offense types, than is generally identified in their criminal justice records[22]. Some of this research has been conducted with convicted sex offenders in Colorado.[23] Minor children are particularly vulnerable and unlikely to report abuse. Research suggests that adult and minor child victims are also unlikely to report or re-report abuse.[24]

---

[20] Knopp, F.H. (1984); Freeman-Longo, R., Blanchard, G. (1998); Ahlmeyer, S., Heil, P., McKee, B., and English, K. (2000); English, K. (1998); Heil, P., Ahlmeyer, S., Simons, D. (2003); Ahlmeyer, S. (1999); Becker, J., and Coleman, E. (1987); Abel, G., Rouleau, J. (1990); Office of Research and Statistics, Division of Criminal Justice, Colorado Department of Public Safety (2000); Tanner, J. (1999); Hanson, R., Harris, A. (1998); Hindman, J. (1989).
[21] Hanson, R.K., Harris, A. (1998).
[22] Knopp, F.H. (1984); Freeman-Longo, R., Blanchard, G. (1998); Ahlmeyer, S., Heil, P., McKee, B., and English, K. (2000); English, K. (1998); Heil, P., Ahlmeyer, S., Simons, D. (2003); Ahlmeyer, S. (1999); Becker, J., and Coleman, E. (1987); Abel, G., Rouleau, J. (1990); Office of Research and Statistics, Division of Criminal Justice, Colorado Department of Public Safety (2000); Weinrott, M. & Saylor, M. (1991).
[23] Heil, P. & Simons, D. (2008). Multiple paraphilias: Prevalence, etiology, assessment and treatment. In R. Laws & Donohue, W. (Eds). *Sexual deviance* (2ⁿᵈ ed.). New Yor,: Guilford Publications, Inc.; Heil, P., Simons, D., & Burton, D. (2010). Using the polygraph with female sexual offenders. In T. Gannon & F. Cortoni (Eds), *Female sexual offenders: Theory, assessment, and treatment*. Chichester, UK: John Wiley & Sons, Ltd.
[24] Marshall, W. (1998) ; Hanson, R.F., et al. (1999); (1992). *Rape in America: A Report to the Nation*; Underwood, R., Patch, P., Cappelletty, G., Wolfe, R. (1999); Hindman, J. (1989); Colorado Coalition Against Sexual Assault (1998); Cardarelli, A. (1998).

Research indicates that sex offenders often engage in physical and sexual abuse of their intimate partners.[25] It is critical that the CST investigate and assess a sex offender's history of physical and sexual abuse and stalking behaviors of partners and/or family members. It is also critical to assess for the potential of violence in the offender's current relationship. Domestic violence is difficult to detect and it is incumbent upon the CST to rule out its occurrence prior to allowing any contact with minors or approving of an Approved Supervisor as it is unlikely a victim of domestic violence would report issues of concern to the CST.

This section addresses the restrictions and methods to approve supervised contact with minor children, victims, and at risk adults (pursuant to 5.740 – 5.757). Before an offender can have contact with any minor child(ren), he/she must meet the criteria stated in 5.740. An offender who wants contact with his/her own minor child(ren) prior to meeting the criteria in 5.740 may submit to a CCA to determine if contact is appropriate. An offender who has ever victimized any of his/her own minor children, regardless of the victim's age, is ineligible for the CCA. This assessment will result in a recommendation regarding the level and type of contact, if any, with the offender's own child(ren). The CST shall utilize the CCA to inform decisions regarding contact with an offender's own child(ren). Standard 5.750 and 5.756 address criteria for contact with victims and at risk adults.

Offenders residing in a SLA shall not have contact with their child(ren) at the SLA location or with their SLA roommate present.

## 5.710    Definitions

- **Own Minor Child** is a minor child with whom the offender has a parental role, including but not limited to, biological, adoptive, and step-child(ren).

- **Approved Supervisor** is a person who can supervise the offender's contact with a specified minor child or children per 5.760. This person is an individual who has met the criteria described in 5.771-5.775, has been approved by the CST, and has signed the contract.

- **Approved Community Support Person** provides positive support for change efforts and may accompany the offender in approved activities that do not involve minor children. Someone significant to the offender and/or a roommate who attends treatment with the offender, has a positive relationship with the supervising officer and treatment provider, and is well versed in and supportive of the offender's supervision and treatment requirements.[26]

- **At Risk Adult** is an individual who is less able to protect him/her self based on diminished capacity or position of trust pursuant to Section 18-6.5-102, C.R.S.

## 5.720    No Contact with Minor Children

Sex offenders shall have no contact with any minor child under the age of 18 or any victim until the CST unanimously agrees that the offender has either met the corresponding criteria listed in Standard 5.740 or with regard to an offender's own child(ren) under the age of 18, the offender

---

[25] Simons, D. A., & Davies, A. M. (2009, October). Intimate partner rape: Prevalence and characteristics among domestic violence and sexual offenders. Paper presented at the 28th Annual Association for the Treatment of Sexual Abusers Research and Treatment Conference in Dallas, TX.

[26] Colorado Department of Public Safety, Division of Criminal Justice, (2004). *Report on safety issues raised by living arrangements for and location of sex offenders in the community.*

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 106

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 13-cv-02142-RPM

MARLON WALKER,

     Plaintiff,

v.

SUSAN WHITE, DOC Division of Adult Parole, in her personal capacity for damages;
GUILLERMO SAMUDIO, DOC Division of Adult Parole, in his personal capacity for damages;
DANA MADRID, DOC Division of Adult Parole, in her personal capacity for damages;
BRIAN STRUZESKI, DOC Division of Adult Parole, in his personal capacity for damages;
ED THOMAS, Member of the Parole Board, in his personal capacity for damages;
DENISE BALAZIC, Member of the Parole Board, in her personal capacity for damages;
PATRICIA VAN WAAK, Member of the Parole Board, in her personal capacity for damages;
JOHN O'DELL, Member of the Parole Board, in his personal capacity for damages;
MICHAEL ANDERSON, Member of the Parole Board, in his personal capacity for damages;
REBECCA OAKES, Member of the Parole Board, in her personal capacity for damages;
ANTHONY YOUNG, Member of the Parole Board, in his personal capacity;
BRANDON SHAFFER, Member of the Parole Board, in his personal capacity;
ALFREDO PENA, Member of the Parole Board, in his personal capacity;
JOE MARTIN MORALES, Member of the Parole Board, in his personal capacity;
BECKY LUCERO, Member of the Parole Board, in her personal capacity for damages; and
JOHN DOE, Arkansas Valley Correctional Facility, in his personal capacity for damages,

     Defendants.

_____

ORDER FOR DISMISSAL
_____

To overcome the appearing defendants' claim of qualified immunity in their

motion to dismiss and proceed with his claims for damages under 42 U.S.C. § 1983,

Marlon Walker must show that there is clearly established law that would make them

aware that they were violating the First, Fifth and Fourteenth Amendments to the United

States Constitution by their actions that resulted in his additional incarceration for

violating conditions of parole related to his classification as a sex offender.  He has

failed to meet this requirement.

The plaintiff's complaint and response to the motion to dismiss raise serious questions concerning the restrictions placed on persons classified as sex offenders under Colorado law.  The named defendants, parole board members and parole officers acted under color of that law.  There is no showing that their interpretations of their authority to take the actions complained about were constitutionally prohibited.  Indeed, the Fifth Amendment claim is comparable to that made by a prisoner in *McCune v. Lile,* 536 U.S. 24 (2002) a plurality opinion with a strong dissent by four justices.

Admittedly this case is different because the plaintiff's refusal to admit to any sex offense caused his re-incarceration for parole violations but the uncertainty as to the scope of the privilege in these circumstances prevents the exposure of these defendants to a claim for damages.

This case is not materially different from *Gross v. Samudio, et al.,* Civil Action No. 11-cv-02594-RPM which is now on appeal from this Court's Order of Dismissal.

The defense of the constitutionality of Colorado's statutory and regulatory requirements limiting the liberty of those classified as sex offenders cannot be put on the backs of these defendants as individuals.

Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), it is

ORDERED that this civil action is dismissed.

DATED: August 18th, 2014

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior Judge

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 108

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02142-RPM

MARLON WALKER,

      Plaintiff,

v.

SUSAN WHITE, DOC Division of Adult Parole, in her personal capacity for damages;
GUILLERMO SAMUDIO, DOC Division of Adult Parole, in his personal capacity for damages;
DANA MADRID, DOC Division of Adult Parole, in her personal capacity for damages;
BRIAN STRUZESKI, DOC Division of Adult Parole, in his personal capacity for damages;
ED THOMAS, Member of the Parole Board, in his personal capacity for damages;
DENISE BALAZIC, Member of the Parole Board, in her personal capacity for damages;
PATRICIA VAN WAAK, Member of the Parole Board, in her personal capacity for damages;
JOHN O'DELL, Member of the Parole Board, in his personal capacity for damages;
MICHAEL ANDERSON, Member of the Parole Board, in his personal capacity for damages;
REBECCA OAKES, Member of the Parole Board, in her personal capacity for damages;
ANTHONY YOUNG, Member of the Parole Board, in his personal capacity;
BRANDON SHAFFER, Member of the Parole Board, in his personal capacity;
ALFREDO PENA, Member of the Parole Board, in his personal capacity;
JOE MARTIN MORALES, Member of the Parole Board, in his personal capacity;
BECKY LUCERO, Member of the Parole Board, in her personal capacity for damages; and
JOHN DOE, Arkansas Valley Correctional Facility, in his personal capacity for damages,

      Defendant.

---

## FINAL JUDGMENT

---

      In accordance with the orders filed during the pendency of this case, and

pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

      Pursuant to the Order for Dismissal of Judge Richard P. Matsch entered on

Appellate Case: 14-1380   Document: 01019371905   Date Filed: 01/19/2015   Page: 109

August 18, 2014 it is

ORDERED that Plaintiff MARLON WALKER recovers nothing, and the action is

dismissed on the merits.


Dated at Denver, Colorado this 18th day of August, 2014.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK

By:  s/   D. Kalsow
_____
Deputy Clerk

Appellate Case: 14-1380    Document: 01019371905    Date Filed: 01/19/2015    Page: 110

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No.  Civil Action No.  13-cv-2142-RPM

MARLON WALKER
            Plaintiff
v.

SUSAN WHITE, DOC Division of Adult Parole, in her personal capacity
for damages; GUILLERMO SAMUDIO, DOC Division of Adult Parole, in
his personal capacity for damages; DANA MADRID, DOC Division of
Adult Parole, in her personal capacity for damages; BRIAN STRUZESKI,
DOC Division of Adult Parole, in his personal capacity for damages; ED
THOMAS, Member of the Parole Board, in his personal capacity for
damages; DENISE BALAZIC, Member of the Parole Board, in her personal
capacity for damages; PATRICIA VAN WAAK, Member of the Parole
Board, in her personal capacity for damages; JOHN O'DELL, Member of
the Parole Board, in his personal capacity for damages; MICHAEL
ANDERSON, Member of the Parole Board, in his personal capacity for
damages; REBECCA OAKES, Member of the Parole Board, in her personal
capacity for damages; ANTHONY YOUNG, Member of the Parole Board,
in his personal capacity; BRANDON SHAFFER, Member of the Parole
Board, in his personal capacity; ALFREDO PENA, Member of the Parole
Board, in his personal capacity; JOE MARTIN MORALES, Member of the
Parole Board, in his personal capacity;  BECKY LUCERO, Member of the
Parole Board, in her personal capacity for damages; and JOHN DOE,
Arkansas Valley Correctional Facility, in his personal capacity for damages,
            Defendants.

---

## NOTICE OF APPEAL

---

Notice is hereby given that Marlon Walker, Plaintiff, in the above named case, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the final judgment entered in this action on August 18, 2014 (Document Number 50) re Order on Motion to Dismiss (Document Number 49) entered on August 18, 2014. The Plaintiff appeals the Order dismissing the Amended Complaint and entering judgment on behalf of Susan White, Guillermo Samudio, Ian Sweeney, Dana Madrid, Brian Struzeski, Anthony Young, Ed Thomas, Denise Balazic, Patricia Ban Waak, John O'Dell, Michael Anderson, Rebecca Oakes, Brandon Shaffer, Alfredo Pena, Joe Martin Morales and Becky Lucero who were all sued in their personal capacity for damages.

DATED September 17, 2014.

Respectfully submitted,

/s/ Alison Ruttenberg

Alison Ruttenberg
PO Box 19857
Boulder, CO  80308
(720) 317-3834
Fax:  (888) 573-3153
Ruttenberg@me.com

**Attorney for Plaintiff**

CERTIFICATE OF SERVICE

I hereby certify that I have, on September 17, 2014, served the foregoing upon all parties via electronic service through the PACER ECF system, with service to:

Nichole Gellar,
Colorado Attorney General's Office
Nichole.Gellar@state.co.us

Marlon Walker
16409 Oakmoor Pl
Parker CO  80134

/s/ Alison Ruttenberg